**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN CLOUTIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01146 |
| | ) | |
| TRANS STATES HOLDINGS, INC., | ) | |
| and GOJET AIRLINES, LLC | ) | |
| | ) | |

---

# EXHIBIT LIST

# DEFENDANT GOJET'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

---

| | |
|---|---|
| Exhibit A | Declaration of Captain Randy L. Bratcher |
| **Exhibits to Bratcher Declaration:** | |
| Exhibit 1 | Collective Bargaining Agreement |
| Exhibit 2 | June 2014 Emails |
| Exhibit 3 | Plaintiff John Cloutier's Grievance |
| Exhibit 4 | Plaintiff John Cloutier's Request for System Board Arbitration |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN CLOUTIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01146 |
| | ) | |
| TRANS STATES HOLDINGS, INC., | ) | |
| and GOJET AIRLINES, LLC | ) | |
| | ) | |

---

# EXHIBIT A

# to

# DEFENDANT GOJET'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

---

23687790.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN CLOUTIER,                      ) | |
|            ) | |
|      Plaintiff,           ) | |
|            ) | |
| v.                              ) | Case No. 1:16-cv-01146 |
|            ) | |
| TRANS STATES HOLDINGS, INC.,    ) | |
| and GOJET AIRLINES, LLC        ) | |
|            ) | |

## DECLARATION OF CAPTAIN RANDY L. BRATCHER

I, Randy L. Bratcher, hereby state and affirm as follows:

1.     I am over eighteen (18) years of age and of sound mind, capable of making this Declaration and personally acquainted with the facts herein stated.

2.     I am currently employed by GoJet Airlines, LLC ("GoJet") as Director of Operations. Prior to obtaining the role of Director of Operations, I was the Chief Pilot at GoJet from June 2014 through December 2015. While GoJet operates in Illinois out of O'Hare Airport, and has employees based at O'Hare, as well as other airports throughout the United States, GoJet's principal place of business is in Bridgeton, Missouri. As Director of Operations and previously as Chief Pilot, I have always been located in Bridgeton, Missouri. GoJet's executives, company records, including employment records, are likewise all located in Bridgeton, Missouri.

3.     John Cloutier was continuously employed by GoJet as a pilot based in Chicago, Illinois from August of 2008 to August 15, 2014.

4.     During the period of time relevant to these proceedings, as a pilot, John Cloutier reported to me in my capacity as Chief Pilot.

1

5.      At no time during his employment was John Cloutier ever employed by or paid by Trans States Holdings, Inc.

6.      As a GoJet pilot, John Cloutier was a member of and represented by the International Brotherhood of Teamsters, Airline Division.

7.      Effective July 19, 2007, through the present, there has been a collective bargaining agreement ("CBA") between GoJet and the pilots in the service of GoJet Airlines, which governs the terms and conditions of pilot's employment including but not limited to leaves of absence under the FMLA, discipline and discharge, grievances and arbitration.    A true and correct copy of the relevant portions of the CBA are attached as Exhibit 1.    At all times during his employment, the terms and conditions of John Cloutier's employment were governed by the CBA.

8.      Section 15.F. of the CBA expressly governs FMLA claims by GoJet Pilots, and requires the Company to comply with the FMLA. Additionally, Section 15 dictates the procedure for pilots to return from medical leave.

9.      Section 22 of the CBA governs when a pilot may be required to undertake a medical examination and states that every pilot must maintain an appropriate Federal Aviation Administration ("FAA") medical certificate.

10.      The grievance and arbitration procedures contained in the CBA are typical of those in the airline labor relations context. Sections 24 and 25 of the CBA establishes the procedures for filing grievances "arising under the terms of this agreement."

11.      Grievances that are not resolved earlier in the process may be appealed to arbitration, *i.e.,* to the System Board of Adjustment ("System Board").

12.     The Union may submit the matter to arbitration before the System Board chaired by a neutral arbitrator in addition to the two company and two union board members.

13.     In June of 2014, John Cloutier and my supervisor at the time, Steve Briner, exchanged emails concerning GoJet's request that Plaintiff see the company's doctor pursuant to Section 22 of the CBA. At the time, Mr. Briner was the Director of Operations. He was located in GoJet's corporate office in Bridgeton, Missouri. A copy of the emails is attached as Exhibit 2.

14.     On August 22, 2014, I sent a letter to John Cloutier notifying him that he was deemed to have voluntarily resigned his job after he failed to return to work following the end of his approved FMLA leave.

15.     On August 29, 2014, IBT filed a grievance over Plaintiff's termination, alleging that GoJet had violated Section 15.F. of the CBA by constructively discharging him and by failing to provide him with the proper notice and time required by the FMLA for recertification, and that GoJet knew of his disability and need for reasonable accommodation at the time of his discharge. The grievance specifically claims that GoJet violated, among other provisions, Section 15.F. of the CBA, which requires the company to grant family and medical leave in compliance with the FMLA. The IBT Local, and its President at the time, Mike Foster, were located in St. Louis, Missouri. A true and correct copy of the grievance is attached as Exhibit 3.

16.     After being unable to resolve the grievance at earlier stages, the IBT requested that the matter be submitted to the System Board chaired by a neutral chairman/arbitrator, where it is currently awaiting scheduling for a hearing in St. Louis, Missouri. A true and correct copy of the request to arbitrate is attached as Exhibit 4.

17.     Trans States Holdings, Inc. does not control the operations of GoJet Airlines, LLC. GoJet Airlines, LLC sets, disseminates, and enforces its own human resources policies,

including FMLA policies and policies forbidding discrimination based on disability and age. At the time of Plaintiff's termination, GoJet had the sole and ultimate authority to hire, fire, discipline, and direct the work of GoJet's employees, including Plaintiff John Cloutier. Currently, GoJet has the sole and ultimate authority to hire, fire, discipline, and direct the work of GoJet's employees.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this _29_ th day of January, 2016.

Randy L. Bratcher

23674175.1

4

\IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN CLOUTIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01146 |
| | ) | |
| TRANS STATES HOLDINGS, INC., | ) | |
| and GOJET AIRLINES, LLC | ) | |
| | ) | |

---

# EXHIBIT 1

## to

# DEFENDANT GOJET'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

---

23687790.1

# AGREEMENT

between

# GOJET AIRLINES, LLC

and the

# PILOTS

in the service of

# GOJET AIRLINES, LLC

as represented by the

# INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION

EXHIBIT
1

GO JET 000149

## TABLE OF CONTENTS

Page

SECTION 1 RECOGNITION AND SCOPE.................................................1
SECTION 2 DEFINITIONS...................................................................4
SECTION 3 MANAGEMENT RIGHTS....................................................7
SECTION 4...................................................................................8
SECTION 5 COMPENSATION..............................................................9
SECTION 6 TRAVEL EXPENSES.........................................................14
SECTION 7 HOURS OF SERVICE........................................................17
SECTION 8 SCHEDULING.................................................................21
SECTION 9 RESERVES.....................................................................33
SECTION 10 NEW AIRCRAFT TYPE....................................................36
SECTION 11 SENIORITY...................................................................37
SECTION 12 PROBATION..................................................................39
SECTION 13 VACATION....................................................................40
SECTION 14 SICK LEAVE.................................................................43
SECTION 15 LEAVES OF ABSENCE.....................................................44
SECTION 16 FILLING OF VACANCIES.................................................47
SECTION 17 FURLOUGH AND RECALL................................................51
SECTION 18 TIME OFF WITHOUT PAY................................................52
SECTION 19 TRANSFER TO MANAGEMENT OR NON-FLYING DUTY.......53
SECTION 20 TRAINING....................................................................54
SECTION 21...................................................................................59
SECTION 22 MEDICAL STANDARDS...................................................60
SECTION 23 DISCIPLINE AND DISCHARGE..........................................63
SECTION 24 GRIEVANCES................................................................65
SECTION 25 SYSTEM BOARD OF ADJUSTMENT....................................66
SECTION 26 GENERAL.....................................................................71
SECTION 27 INSURANCE AND OTHER BENEFITS...................................76
SECTION 28 UNION REPRESENTATION................................................78
SECTION 29 UNION SECURITY..........................................................80
SECTION 30 NO STRIKE/NO LOCKOUT................................................82

GO JET 000150

# TABLE OF CONTENTS
(continued)

|  | Page |
|---|---|
| SECTION 31 AGREEMENT | 83 |
| SECTION 32 EFFECTIVE DATE AND DURATION | 84 |
| GROWTH OPPORTUNITIES | 86 |
| TRANSFER OF AIRCRAFT | 88 |
| JET AIRCRAFT WITH FEWER THAN 55 PASSENGER SEATS | 90 |
| REVISED LINE GUARANTEE | 92 |

GO JET 000151

## SECTION 15

## LEAVES OF ABSENCE

.A    Personal Leave

Upon written request specifying the reason for such request, the Company may, at its discretion, provide a Pilot an unpaid leave of absence for a specific period not to exceed twelve (12) months. Requests for time off without pay for less than 30 days will be dealt with on a case-by-case basis at Company discretion.

.B    Medical Leave of Absence

.1      Upon written request, a Pilot who is unable to perform his assigned duties due to illness or injury may be placed on unpaid medical leave of absence, following exhaustion of sick leave, for a period not to exceed 36 months.

.2      A Pilot on medical leave may be required to provide physician's statements verifying the medical disability and/or approving a return to normal duties.

.3      A Pilot on medical leave must notify the Company in writing of his ability to return to duty following medical clearance.

.C    Military Leave

A Pilot shall be granted military leave in accordance with applicable law.

.D    Bereavement Leave

.1      In the event of a death in the Pilot's immediate family, the Pilot will be granted leave from all duties with the Company and the Company will reimburse the employee, if he has completed six (6) months of active service; by crediting him for up to a maximum of three (3) consecutive working days. A line Pilot will be credited for scheduled average time not to exceed four (4) hours per day. A Reserve will be credited with four (4) hours per day. An employee's immediate family is defined as: Spouse, Children, Brothers, Sisters, Parents, Step-parents, Step-children, Mother-in-Law, Father-in-Law, Grandparents, and Grandchildren.

44

GO JET 000195

.2      Additional time needed, or leave for individuals other than immediate family members will be addressed on a case-by-case basis.

.E      Jury Duty

When a Pilot is called for jury duty, he shall notify the Company immediately and the Company may request the court to release him from such jury duty. If the Pilot is not released, the Company will release him from all Company duties on such days as he is called for selection or actively serves as a juror. Total compensation to the Pilot, when called for selection or while actively serving on a jury, will equal that which he would normally have earned during such period, less fees received for such services (excluding mileage and expenses), for up to fourteen (14) calendar days. Following jury duty, the Pilot will be returned to his trip when feasible or, if not, will stand reserve for any duty days of his original trip. Should jury duty extend beyond one (1) bid period, the Pilot shall bid for the following month and resume such schedule upon conclusion of jury duty.

.F      Family and Medical Leave (FMLA)

The Company shall grant family and medical leaves in accordance with applicable law.

.G      General

    .1      Following the first thirty (30) days of absence, the Pilot shall be entitled to continue insurance coverage at his own expense in accordance with the provisions of COBRA, and the Company shall notify the Pilot that the coverage is available to him.

    .2      Requests for leave shall be made as far in advance as possible. Granting or denying leave in any specific case shall not constitute a precedent for future cases.

    .3      A Pilot shall retain and accrue seniority while on leave of absence, and accrue longevity for the first 30 days of said leave of absence.

    .4      A Pilot who was on leave of absence will serve any remaining portion of his probationary period.

    .5      A Pilot on a leave of absence may request pass privileges to travel to a medical appointment or to care for a family member if on FMLA. Such request will be granted or denied on a case-by-case basis.

GO JET 000196

.H    Union Leave

.1    Requests for Union leave-of-absence shall be made in writing to the Director of Operations or his designee, by the Union Business Representative. These requests shall be transmitted to the Company as far in advance as practical.

.2    Requests for Union leave of absence will be approved or denied at the Company's discretion based on operational considerations.

.3    Scheduled Line Pilots: The Union will reimburse the Company at the full hourly rate applicable to that Pilot for each day he is on leave for the scheduled time dropped, plus the appropriate override specified in paragraph 5, below.

.4    Reserve Pilots: The Union will reimburse the Company at the full hourly rate applicable to that Pilot using the formula of hour hours (4:00) times the number of days dropped, plus the appropriate override specified in paragraph 5, below.

.5    Twenty-three (23%) will be added to the amount of Union reimbursement to cover the cost to the Company for such benefits as vacation, insurance, workers' compensation, etc. Such fringe benefits shall hereafter be referred to as fringe override.

.6    The Union agrees to reimburse the Company within forty-five (45) days after receipt of the Company's bills. Such billings shall be submitted to the Union no later than forty-five (45) days following the month in which the flight pay loss was incurred.

.7    When the Company receives multiple requests for the same period of leave and all the requests cannot be accommodated, leave shall be granted according to the priority assigned by the Union Representative.

46

GO JET 000197

## SECTION 22
## MEDICAL STANDARDS

.A      Medical Examinations

A Pilot will not be required to submit to a medical examination in addition to those required by the FAA unless the Company believes that the Pilot's medical condition is impaired and believes the Pilot may not be fit to fly as a result thereof.

   .1      When an additional medical examination is required, the Pilot will be notified in writing of the reason. A Company required medical examination shall be performed by a Company designated examiner.

   .2      Any additional medical examination or tests required by the Company shall be paid for by the Company. However, a Pilot asking to return to duty after being medically disqualified by his own medical examiner will, upon request, provide a medical examiner's statement as to fitness for duty at the Pilot's expense.

   .3      A medical examiner's report of examination shall include a determination as to whether the Pilot is able to perform Pilot duties, from a medical standpoint. A copy of the report of such examination shall be furnished to the Pilot, upon request.

   .4      The Company shall notify the Pilot of any medical matters concerning the Pilot that it intends to initiate with the FAA.

.B      FAA Medical Certificates

   .1      New hire Pilots will be required to hold a First Class medical certificate.

   .2      Every Pilot shall maintain the FAA medical certificate required by the FAA for the position he holds (e.g., Captain, First Officer).

   .3      The Company may require a First Officer to maintain the medical standards for a first class medical certificate in order to be eligible to bid for a Captain position.

GO JET 000211

.4   Each Pilot must have a copy of his FAA medical certificate on file in the Training Records Department by the 25th day of the due month.

.C   Medical Review Process

A Pilot who has been medically disqualified from performing Pilot duties as the result of a Company required examination may, at his option, have the case reviewed in the following manner:

.1   The Pilot may employ a qualified medical examiner of his own choosing and at his own expense to perform a medical examination of the same type as the medical examination required by the Company.

.2   A copy of the findings of the medical examiner chosen by the Pilot will be furnished to the Company's medical examiner. If the findings of the Pilot's medical examiner verify the findings of the Company's medical examiner, the findings of the Company's medical examiner shall be final and binding upon the Pilot and Company.

.3   In the event that the findings of the Pilot's chosen medical examiner and those of the Company's medical examiner are not in agreement, the Company will, at the written request of the Pilot, ask that the two medical examiners agree upon and appoint a third medical examiner for the purpose of making a further examination of the Pilot, after conferring with the two medical examiners.

.4   Copies of the third, impartial, medical examiner's report will be furnished to the Company and the Pilot. The findings of the third medical examiner shall be final and binding upon the Pilot and the Company.

.5   The expense of employing the third, impartial, medical examiner will be borne one-half by the Pilot and one-half by the Company.

.6   If a Pilot is removed from flying status by the Company pending resolution of his medical qualification to perform Pilot duties, he shall be paid the credit hours for lost trips and his bid period guarantee shall not be reduced until the Company receives its medical examiner's report finding that the Pilot is not fit to fly.

GO JET 000212

.a    If a Pilot refuses to submit to a medical examination requested by the Company, or causes delay in the process, he may be removed from pay status during such period.

.b    If it is found that such removal from pay status was unnecessary, either as the result of an appeal under this medical review process, or a finding under the grievance and arbitration procedure of this Agreement that the Company had not based its requirement for a medical examination of the Pilot on a reasonable determination that the Pilot may not be fit to fly, he shall be paid for all time lost.

62

GO JET 000213

SECTION 23

DISCIPLINE AND DISCHARGE

.A    Representation

.1    A Pilot is entitled to have a Union representative or any other Company employee accompany him to any meeting concerning discipline or discharge, provided the selection of a specific representative does not cause an unreasonable delay in the proceedings.

.2    The Company may withhold a Pilot from duty without pay pending an investigation. If a Pilot is held out of service without pay pending investigation and is subsequently exonerated of the charges, he will be made whole as it pertains to wages, seniority, longevity and benefits, and his personnel file will be cleared of all references to the charges.

.B    Notices and Decisions

.1    All notices of disciplinary action or discharge shall be in writing and shall state the reason(s).

.2    Copies of all such notices will be provided to the Pilot and the Union.

.C    Pilot Hearing

If the Union or Pilot requests a hearing within seven (7) days of when the Pilot received notice of the disciplinary action or discharge, the Company will hold a hearing within three (3) business days to discuss the disciplinary action or discharge.   Within seven (7) days following the hearing and any further review prompted thereby, the Company will provide the Pilot and the Union written notice of its decision to void, modify, or maintain its original disciplinary action, and where the Company elects to administer disciplinary action, it will set forth the facts upon which the decision is based.

.D    Step 1.  Union Appeal

.1    If the Union disputes the Company's disciplinary action, the Union may file a grievance.  In order to be timely, such grievance must be filed within thirty (30) days following the date the Pilot receives the Company's

63

written disciplinary notice. The Union shall submit the written grievance, setting forth a statement of facts and relief sought, to the Director of Operations or his designee.

.2      The Director of Operations or his designee will evaluate the grievance and render a decision not later than fourteen (14) days after receipt of the grievance.

.E      Step 2. Board of Adjustment

If the Company's decision at Step 1 is not satisfactory to the Union, it may be appealed by the Union to the Board of Adjustment within thirty (30) days after receipt of the decision.

.F      If the Union fails to comply with the time limits prescribed in this Section, the decision of the Company will be final and binding. If the Company fails to comply with the time limits prescribed in this Section, the dispute will be deemed automatically appealed to the next step. All time limits in this Section may be extended, in writing, by mutual agreement.

64

GO JET 000215

## SECTION 24

### GRIEVANCES

.A      A grievance is a dispute between the parties arising under the terms of this Agreement.

.B      Prior to the filing of a grievance, the affected Pilot will discuss the matter with his Chief Pilot in an effort to resolve it.

.C      If the dispute is not resolved under paragraph B., above, written grievances must be submitted to the Director of Operations, or his designee, within 45 days after the grievant has, or reasonably should have had, knowledge of the matter giving rise to the grievance. The written grievance shall contain a reference to the provisions of the Agreement alleged to have been breached, a short, concise statement of the facts involved and the relief requested.

.D      The Director of Operations, or his designee, will give his decision in writing within fourteen (14) days after presentation of the written grievance.

.E      If the decision in paragraph D, above, is not satisfactory to the Union, it may be appealed by the Union to the Board of Adjustment within thirty (30) days after receipt of the decision.

GO JET 000216

## SECTION 25

### SYSTEM BOARD OF ADJUSTMENT

.A     Establishment and Purpose

In compliance with Section 204, Title II of the Railway Labor Act, as amended, there is hereby established a System Board of Adjustment for the purpose of adjusting and deciding disputes which may arise under the terms of this Agreement and which are properly submitted to it.   This Board shall be known as the GoJet Airlines Pilots' System Board of Adjustment.

.B     Composition of the Board

Except when a neutral member has been added, each Board shall be composed of four (4) members: two selected by the Company; and two selected by the Union. Either party may appoint an alternate member, if desired.  The alternate member may serve on the Board at the discretion of the party appointing him.

.1     The Company and Union members of the Board shall continue to serve until such time as the party selecting the member shall select a successor, which may be done at any time except during the consideration of the case.

.2     Whenever a five (5) member Board will be required for a case, the Company and the Union will promptly attempt to agree on a neutral member to sit on the Board.  If the parties are unable to agree on a neutral arbitrator, either party may request selection by the alternate strike method from the list of neutrals selected pursuant to paragraph F.

.a     Under the alternate strike method, each party shall alternately strike the name of an arbitrator from the list of neutrals with the last remaining neutral being the one selected.

.b     The parties will alternate in striking first; if there are an even number of arbitrator's on the list of neutrals at the time one is being selected, the party who strikes first shall strike two names on the first strike.

66

GO JET 000217

.3    The Company and Union members of the Board shall alternate as Chairman and Vice-Chairman of the Board on a yearly basis with the Chairman position being held by the Union member in even-numbered years.

.4    By mutual agreement, the Company and Union members of the Board may appoint the neutral arbitrator to hear the case alone and render the final and binding decision of the Board.

.C    Jurisdiction of the Board

The Board and/or arbitrator shall have jurisdiction only over any dispute which arises out either (1) the discipline (including discharge) of the grievant(s), or (2) an alleged violation of the terms of this Agreement, or the interpretation or application of any of the terms of this Agreement, as it affects the grievant. The Board shall consider any dispute as defined above which is properly submitted to it when such dispute has not been previously settled in accordance with the terms provided for in the Agreement.

.1    The jurisdiction of the Board shall not extend to proposed changes in hours of employment, rates of compensation, or working conditions covered by the existing agreements between the parties.

.2    Every grievance shall be heard first by a four-Member Board, unless the Company and the Union agree to have the dispute heard directly by the five-Member Board, or the neutral arbitrator, alone.

67

GO JET 000218

D    Decisions of the Board

.1    A majority vote of the Board shall be competent to make a finding or decision with respect to any dispute submitted to it in accordance with this Agreement. Such finding or decision shall be final and binding upon the parties to the dispute.

.2    If a four-Member Board is unable to agree upon a finding or decision, it shall forthwith provide written notification to the Company and the Union. In such event, the Union may appeal the grievance to the full Board within 30 days following notification of the deadlock.

E    Procedural Rules

.1    When a time limit in this procedure or the grievance procedure is measured from the date of receipt of a document and the document is sent by U.S. mail the date of receipt shall be seven (7) days after the date the document was placed in the U.S. mail, as established by the postmark on the envelope, postage prepaid, to the address of the addressee last provided to the party who is doing the mailing.

.2    A grievance submitted to the Board shall include:

.a    The Grievant's name, address, status and date of hire;

.b    Union's statement of question(s) at issue;

.c    Union's statement of facts;

.d    Union's position;

.e    Union's statement of Company position (or copy of Company's grievance response);

.f    Copy of grievance;

.g    Two (2) copies of the material shall be submitted to the Board.

.3    The four (4) Member Board shall meet during March, July and November of each year, providing that at such times there are cases filed with the

68

Board for its consideration. The Board will continue in session until all matters before it have been decided, deadlocked, or by mutual agreement of the Board, deferred for later action, unless the parties otherwise mutually agree. In the case of a submission arising from discharge, the four-Member Board will hear the case within 60 days of its submission, unless extended by mutual agreement of the parties.

.4     Board hearings shall be conducted in the city where the general offices of the Company are located, unless the Company and the Union agree to an alternate location.

.5     Pilots covered by the Agreement may be represented at Board hearings by a Union Representative, or the designee of the grievant if approved by the Union, and the Company may be represented by such person or persons as it may choose and designate. Evidence may be presented either orally or in writing, or both. Where the grievant selects a representative other than the Union, the grievant shall bear the costs associated with his case.

.6     Findings and decisions of the Board shall be stated in writing and in each case a copy of the findings and decision shall be furnished to the Company, the Union, and such Pilot or Pilots as are parties to the dispute.

.7     If a dispute arises as to the interpretation of the findings or decision of the Board, then upon request of the Company or the Union, the Board shall interpret the findings and decision in light of the facts stated as evidence presented in connection with its record and hearing in the case.

.8     Expenses of the Board for meeting places, if any, and those expenses incurred by reason of the participation of the arbitrator shall be borne one-half by the Company and one-half by the Union, except as set forth in paragraph E.5., above. Board members shall continue to receive their normal wages.

.9     Each party shall bear its own respective expenses in the presentation of any case to the Board and/or arbitrator, except as set forth in paragraph E.5., above. Union Representative and witnesses who are Company employees may travel space available over the Company's system to attend Board proceedings to the extent permitted by law. Such Company employees shall be provided time off to attend Board proceedings; however time off shall be without pay, but the Company will cooperate in facilitating trip trades, rescheduling, etc. The number of witnesses summoned at any one time shall not be greater than the number which can be reasonably spared from the operation without interference with the service of the Company.

69

.10    The Board shall keep a complete and accurate record of all matters submitted for its decision and of all findings and decisions made.

.11    When the parties mutually agree, the record of all proceedings before an arbitrator or five-member Board shall be made by a Court Reporter whose fee shall be borne one-half by the Company and one-half by the Union. If the parties do not mutually agree, either party may arrange for a record of such proceeding by court reporter at its own expense. Should the other party then request a copy of the record, the Court Reporter fees will be shared as provided above.

F    Neutral Arbitrator List

The Company and the Union shall select a panel of nine (9) neutral arbitrators who will serve as the fifth member of the Board or sole arbitrator, as applicable. The panel is set forth in Appendix B of the Agreement.

.1    The selection of the panel shall be by mutual agreement between the Company and the Union.

.2    Once established, the Company and the Union may mutually agree to change the membership of the panel at any time.

70

GO JET 000221

\IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN CLOUTIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01146 |
| | ) | |
| TRANS STATES HOLDINGS, INC., | ) | |
| and GOJET AIRLINES, LLC | ) | |
| | ) | |

# EXHIBIT 2

## to

# DEFENDANT GOJET'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO DISMISS

23687790.1

**From:** John Cloutier [mailto:Misterata@aol.com]
**Sent:** Thursday, June 26, 2014 4:40 PM
**To:** Steven Briner
**Cc:** Randy Bratcher; Jeffrey Flicker
**Subject:** Re: FMLA

Steve,

With all due respect I am not trying to make a federal case out of this. I have no problem at all following what the contract says in paragraph 22A.

However, any directive at this point is premature. First of all I will not be returning on Aug 1; I have to be on the medicine 60 days as a minimum. I have to have 30 days of blood readings and the other tests.
Once all the data is collected the FAA Aerospace Medical Certification Division has to evaluate the data and may require more tests. Once they approve me I then have to go back to the FAA medical examiner for another exam and he may then issue me a First Class Medical. That will take about 2 more months minimum.

Once that is completed we would then be to the point where paragraph 22A would apply.

Currently 14 C.F.R. § 61.53 applies and prohibits me from flying.

Sincerely,

John Cloutier


On Jun 25, 2014, at 6:57 PM, Steven Briner <SBriner@gojetairlines.com> wrote:


John
You failed to respond to my question by the deadline I set.
Steve

Sent from my iPhone5 on the NOW Network from Sprint!

On Jun 25, 2014, at 4:58 PM, "John Cloutier" <Misterata@aol.com> wrote:

> Hi Steve,
>
> I did not see the email from Tracy or your email from Monday until today.
>
> My condition grounds me from flying until the FAA approves my return.

**EXHIBIT**

**2**

GO JET 000460

The approval is not done by a local Faa authorized examiner; the decision is made by the AMCD and may not be made by the examiner.

In order to get the AMCD approval there must be a report from the treating physician containing a statement regarding the medication used, dosage, the absence or presence of side effects and clinically significant episodes. It must contain an A1C hemoglobin test and a determination of the presence of cardiovascular, neurological, renal, and/or ophthalmological disease. I will be having to see several specialists to rule out any of these problems.

Once the AMCD decides that re-issuance is appropriate, the Examiner may again be given the authority to re-issue the medical certificate.

In the mean time I'm available to help with any of your pilot recruiting that may be coming up. I would be more than happy to attend the shows. I think Gojet has some things to offer that the others may not. As I told you in recurrent earlier this month, things have improved by 10 times since you took over and made some changes. I think you need to stress the positive changes. There is no pilot shortage out there, just a shortage of pilots willing to work for 20k a year. I have sent emails out to guys who I flew with in the Air Force who are just sitting at home and none have seemed interested. I think flexibility in scheduling might help too. You might find a few pilots in Chicago, or RDU if they could do turns and be home most nights. We are at the bottom of the priority for putting our families on non-rev flights. That makes the privileges basically worthless. If United and Delta want regional pilots they might consider making some changes to that. I know Comair was treated much better in the past than they treat the regional pilots now.

Sincerely,

John Cloutier


On Jun 23, 2014, at 3:16 PM, Steven Briner
<SBriner@gojetairlines.com> wrote:

John
Tracey is out on vacation, and I want to ensure continuity.
I have not see a response from you following her directive to provide her with a yes/no answer.
Please respond to me by Close of Business on 6/25/14 with a yes, you will comply or no, you have elected not to comply.
Steve

3

GO JET 000461

**From:** Tracey Ryan
**Sent:** Wednesday, June 18, 2014 4:10 PM
**To:** John Cloutier
**Cc:** Steven Briner
**Subject:** RE: FMLA

John
Are you going to see Dr. Miriani as directed, prior to your return from
FMLA on 8/1/14?
Yes, or No?
Regards,
Tracey

**From:** John Cloutier [mailto:John@jcloutierlaw.com]
**Sent:** Tuesday, June 17, 2014 10:30 PM
**To:** Tracey Ryan
**Subject:** Re: FMLA

Hi Tracey,

What 22.A of the CBA says is the following:

"A Pilot will not be required to submit to a medical
examination in addition to those required by the FAA
unless the Company believes that the Pilot's medical
condition is impaired and believes the Pilot may not be fit
to fly as a result thereof."

In order to require me to go to the company's examiner the
Company would have to believe that my medical condition is
impaired after the FAA has cleared me. It would also have to
believe that I may not be fit to fly as a result of that medical
condition. Since you are telling me now that I will be required to
submit for a medical examination, in what way does the company
believe that I am impaired? Who has told you that they feel that
my medical condition is impaired? What evidence is there that I
am at all impaired?

Obviously the company could not believe that my
medical condition is impaired when we are 2 months from me even
coming back to work. Thus, paragraph 22.A of the CBA could not
apply and I will not be going to the company doctor.

Airlines were the biggest abusers of medical exams in order
to discriminate against people, mainly in an attempt to keep their
future medical costs down. American Airlines would not hire
pilots who had cholesterol readings above 180 because it didn't
want people who might get heart disease in 20 years. American
would make you fill out a family tree back 3 generations and
required a detailed description of each relative's health and the

4

GO JET 000462

reasons for their death. It wanted to weed out anyone with cancer in the family, diabetes, heart disease, or any other heredity disease. Delta required you to be coming out of the military and married because they did not want any gay pilots or anyone who might pass aids throughout the company. Delta, NW, American, and others required pilots to have 20/20 vision so that they could avoid hiring older pilots and therefore could keep their medical costs down. United would bring you in for 2 medicals when they were hiring. The first was merely to check your blood pressure, vision, and race and nationality. They had quotas to fill and wanted to make sure people were not lying about their race or national origin. These were some of the main reasons we were able to push through the Americans With Disabilities Act.

Thanks,

John

Attorney John Cloutier
120 W. Madison #1407
Chicago, IL 60602
847-275-6358 Fax 727-865-5272
John@jcloutierlaw.com


On Jun 17, 2014, at 6:28 PM, Tracey Ryan
<TRyan@gojetairlines.com> wrote:

Hi John,

Thank you for your FMLA paperwork, I did receive it today. I will have your schedule updated for FMLA leave from 6/11/14 – 7/31/14.

Because you are on FAA regulatory medication and Pursuant to Section 22.A of the GoJet Pilot Collective Bargaining Agreement, due to GoJet's concern about your fitness to fly, you are required to submit for a medical examination at the office of Dr. Matthew Miriani for your return. Dr. Miriani's office is located at 2024 Dorsett Village Maryland Heights, MO 63043.

Please let me know if you have any further questions and let's touch base by COB on July 18th .

Take care of yourself and I hope you are feeling better soon!

Tracey Ryan
Chicago Base Manager
GoJet Airlines
Ph. 314-266-4813
Cell. 314-498-9186

5

GO JET 000463

\IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN CLOUTIER, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01146 |
| | ) | |
| TRANS STATES HOLDINGS, INC., | ) | |
| and GOJET AIRLINES, LLC | ) | |
| | ) | |

---

# EXHIBIT 3

## to

# DEFENDANT GOJET'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

---

23687790.1

GOJET PILOT GRIEVANCE FORM
TEAMSTERS LOCAL UNION NO. 618

Name: John F. Cloutier _____ Phone #: 847-275-6358

Home address: 8652 Carmen, Apt. 1, Norridge, Illinois 60706

Date of Hire: August 18, 2008          Job Status: Captain

State Grievance or complaint: Unjust Constructive Discharge

Date it occurred: August 15, 2014          Date discussed with chief pilot: August 27, 2014

Provision(s) of the Contract Violated: Section 3; Section 15.B&F; Section 22.A; Section 23

Statement of facts as to complaint: While on company approved Family Medical Leave through July 31, 2014, the grievant notified the company that his leave would need to be extended to near the end of August, 2014. With this notice, the company then canceled grievant's healthcare benefits and sent an email to the grievant setting August 15, 2014 as a deadline date to receive updated medical information on the grievant, but the email was not received by grievant until after August 15, 2014., The company then constructively discharged the grievant on August 15, 2014 and refused to accept any subsequent medical information as to the grievant's leave time and ability to return to work. The company discharged the Grievant prior to giving him the minimum time required by the FMLA to get a recertification. The Company knew of the Grievant's medical disability, diabetes, and the need for reasonable accommodations, leave until getting FAA approval to return to work.

Union's Statement of Issue: Whether company had just cause to constructively discharge the grievant on August 15, 2014 after receiving notice in June of 2014 that grievant's medical leave would be extended to near the end of August 2014 and if not, what shall the remedy be?

Union's Position: The company did not have just cause to constructively discharge the grievant on August 15, 2014 and violated the above sections of the contract in doing so as well as well as the Americans with Disabilities Act.



EXHIBIT
3

GO JET000281

Relief Requested: <u>Grievant should be reinstated to his employment with GoJet with full back pay, benefits and no loss of seniority.</u>

Employee: *John F Cloutier*
_____
Please sign your name

Date: 10/1/2014

Shop Steward _____ (or) Witness *Mike Foster*

GO JET000282

\IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN CLOUTIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01146 |
| | ) | |
| TRANS STATES HOLDINGS, INC., | ) | |
| and GOJET AIRLINES, LLC | ) | |
| | ) | |

# EXHIBIT 4

## to

# DEFENDANT GOJET'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

23687790.1



# Teamsters Local 618

*"Affiliated with the International Brotherhood of Teamsters"*

MARVIN KROPP
*Chief Executive Officer*
*Secretary-Treasurer*

MIKE FOSTER
*President*

DEREK KROPP
*Vice President*

TOM COLE
*Recording Secretary*

*Trustees*
Clint Hankins
Mike Ham
Marc Emshoff

Local 618 - Suite A
9040 Lackland Road
St. Louis, Missouri 63114

314-426-4618
Fax: 314-426-4339
www.teamsterslocal618.org

October 20, 2014

Mr. Steve Briner
Director of Operations
Go-Jet Airlines
11495 Navaid Road STE 340
Bridgeton, Mo. 63044

RE:     IBT Grievance GJSI2014104

Dear Mr. Briner,

Please be advised that Teamsters Local 618 is requesting that grievance GJSI2014104 (John Cloutier) be processed to the Go-Jet Airlines Pilot System Board of Adjustments, Section 24 Grievance and Section 25 System Board of Adjustments.

I may be contacted at 314-426-4618.

Sincerely,

Mike Foster

Mike Foster
President and
Business Representative

MF: sc

Certified Mail No. 7008 1830 0003 7862 7039
Return Receipt Requested



EXHIBIT
4

"Automotive, Petroleum, Allied Industries and Airline Employees Union Local No. 618  St. Louis, St. Louis County, St. Charles County, Jefferson County and Franklin County, Missouri"