IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN CLOUTIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16 C 1146 |
| | ) |
| TRANS STATES HOLDINGS, INC., | ) |
| and GOJET AIRLINES, LLC, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant GoJet Airlines, LLC's (GoJet) and Defendant Trans States Holdings, Inc.'s (TSH) motions to dismiss. For the reasons stated below, the motions to dismiss are granted in part and denied in part.

### BACKGROUND

Plaintiff John Cloutier (Cloutier) allegedly worked as a pilot for GoJet and TSH. Cloutier was allegedly diagnosed with Diabetes Millitus and was prohibited from operating an aircraft until the Federal Aviation Administration's (FAA) Aerospace Medical Certification Division reviewed certain medical tests to verify that the Diabetes was well controlled. On June 12, 2014, Cloutier allegedly submitted a request for leave under the Family and Medical Leave Act (FMLA), 29

1

U.S.C. § 2601 *et seq.* The FMLA leave was allegedly approved from June 11, 2014 to July 31, 2014. Cloutier claims that he was unable to return to work on August 1, 2014, because of the time needed to pass the FAA certification process. GoJet also allegedly instructed Cloutier to go to a physician designated by GoJet for a medical evaluation. On August 27, 2014, Cloutier allegedly received a letter from GoJet indicating that his employment had been terminated due to his failure to return to work from leave. Cloutier includes in his complaint a series of FMLA interference claims (Counts I-IX, XI), FMLA retaliation claims (Count X), claims alleging discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* (Count XII), and claims alleging discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (Count XIII). Defendants removed the instant action to federal court and now move to dismiss all claims.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) (Rule 12(b)(1)) requires a court to dismiss an action when it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), the court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). When subject matter jurisdiction is not apparent on the face of the complaint and is contested, "the district court may properly look beyond the

jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists." *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999)(internal quotations omitted)(quoting *United Transportation Union v. Gateway Western Railway Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)). The burden of proof in regards to a Rule 12(b)(1) motion is on the party asserting that the court has subject matter jurisdiction. *Id.*

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party can move to dismiss claims for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). When the court adjudicates a motion to dismiss brought pursuant to Rule 12(b)(2) based on written materials submitted to the court, "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)(internal quotations omitted). In determining whether the plaintiff has met his burden, the "court accepts all well-pleaded allegations in the complaint as true." *Hyatt Int'l. Corp. v. Coco*, 302 F.3d 707, 712-13 (7th Cir. 2002). In addition, "the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Research Found.*, 338 F.3d at 782; *see also Leong v. SAP America, Inc.*, 901 F. Supp. 2d 1058, 1061-62 (N.D. Ill. 2012)(explaining that "when the defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff has an obligation to

3

go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction").

## DISCUSSION

Defendants argue that Cloutier was a member of a union and under the terms of the collective bargaining agreement (CBA), he agreed to resolve claims relating to medical leave in binding arbitration.

I.  GoJet's Motion to Dismiss

GoJet argues that Cloutier is obligated to pursue his claims in arbitration, and that one claim is preempted by the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.*

A.  Arbitration Exception

GoJet argues that the CBA requires Cloutier to pursue his FMLA, ADA, and ADEA claims relating to medical leave pursuant to the arbitration process set forth in the CBA.  The Supreme Court has stated that although there is a presumption that favors arbitration where there is an arbitration agreement, "[t]hat presumption, however, does not extend beyond the reach of the principal rationale that justifies it, which is that arbitrators are in a better position than courts to interpret the terms of a CBA."  *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78-79 (1998).   In an

instance where a dispute "ultimately concerns not the application or interpretation of any CBA, but the meaning of a federal statute" that presumption no longer exists. *Id.* Generally, an arbitration provision in a CBA does not have a "preclusive effect in later litigation" on claims brought under anti-discrimination statutes. *Coleman v. Donahoe*, 667 F.3d 835, 854 (7th Cir. 2012). There is, however, an exception to that general rule "where a clause in a collective bargaining agreement has explicitly mandated that 'employment-related discrimination claims would be resolved in arbitration.'" *Id.* (quoting *14 Penn Plaza v. Pyett*, 556 U.S. 247 (2009))(noting that the Supreme Court "recognized the continuing vitality of *Gardner-Denver* . . . where the CBA did not clearly and unmistakably require[ ] union members to arbitrate claims arising under federal anti-discrimination laws")(internal quotations omitted)(quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53-54 (1974)).

Section 15B of the CBA addresses medical leaves of absence. (DE 8-1: 11). Section 15F of the CBA, which is entitled "Family and Medical Leave (FMLA)," provides that GoJet "shall grant family and medical leaves in accordance with applicable law." (DE 8-1: 12). Section 24 of the CBA provides a procedure by which a grievance can be submitted for a dispute "arising under the terms of" the CBA. (DE 8-1: 19). Section 25 of the CBA provides that a dispute can be submitted to the System Board of Adjustments (Board) for the purpose of "adjusting and deciding disputes which may arise under the terms" of the CBA. (DE 8-1: 20).

In this case the CBA falls far short of the need to clearly and unmistakably require union members to arbitrate claims arising under federal anti-discrimination

5

laws. There is no language identified by GoJet that states that the arbitration process is the exclusive alternative available to union members. The CBA merely provides that such administrative steps are available to union members. Had GoJet desired it to be the exclusive remedy, GoJet could have stated so easily in one concise sentence, but it is not present in the CBA. Thus, there is no "explicit[] mandate" that employment-related discrimination claims would be resolved in arbitration that the Seventh Circuit has stated must be present in order to bar future litigation. *Coleman*, 667 F.3d at 854.

 Nor is there any specific reference in the CBA that would place union members on notice that they were signing away their rights for employment discrimination actions under anti-discrimination statutes such as the FMLA, ADA, and ADEA. There is one isolated reference to the "FMLA" in a heading, and no specific reference to the ADA or ADEA in the CBA. The vague reference in the CBA to the requirement that Defendants will provide medical leave "in accordance with applicable law," is anything but a clear statement informing union members that they were forever barred from suing for employment discrimination that violates "applicable law" such as anti-discrimination statutes. GoJet is a sophisticated party and there is no reason why it could not have made it perfectly clear in one concise sentence that union members were waiving certain statutory rights. The vague reference in the CBA to abiding by "applicable law" is similar to the CBA at issue in *Wright*, which expressed that it was the "intention and purpose of all parties . . . that no provision or part of [the] Agreement shall be violative of any Federal or State

Law." 525 U.S. at 79 (stating that the CBA did "not incorporate the ADA by reference" and that "[e]ven if it did so, however-thereby creating a contractual right that is coextensive with the federal statutory right-the ultimate question for the arbitrator would be not what the parties have agreed to, but what federal law requires"). To the extent that it could even be argued that there is any conceivable interpretation of the CBA that is in line with GoJet's reading of the CBA, it would at best show that the CBA is ambiguous and would not meet the requirement for the exception under *Pyett.* GoJet argues repeatedly that the court should follow *Pyett*, but in that case the CBA at issue provided the following:

> NO DISCRIMINATION. There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any other characteristic protected by law, including, but not limited to, claims made *pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act*, the New York State Human Rights Law, the New York City Human Rights Code, . . . or any other similar laws, rules, or regulations. All such claims shall be subject to the grievance and arbitration procedures (Articles V and VI) as the *sole and exclusive remedy* for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

556 U.S. at 252 (emphasis added). In *Pyett*, unlike in the instant action, the CBA specifically stated that arbitration would be the exclusive remedy to union members and specifically referenced the civil rights statutes that would no longer be available to the union members. The CBA in *Pyett* is a far cry from the one in the instant action with its vague reference to GoJet following applicable law.

      The court also notes that although GoJet failed to mention it in their

memorandum in support of their motion, a federal district court in another district has already been presented with the same CBA in an action brought against GoJet and same issue and that court has likewise concluded that the CBA does not contain a clear mandate for arbitration of statutory claims. *See South v. GoJet Airlines, LLC*, 2013 WL 6253582, at *4 (S.D. Iowa 2013)(finding that the "CBA does not 'clearly and unmistakably' require arbitration of statutory claims, including claims under the FMLA"). The Supreme Court stated that a court should "not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is explicitly stated" and that the "waiver must be clear and unmistakable." *Wright*, 525 U.S. at 80. No such waiver is present in the CBA in this case relating to the FMLA, ADA, or ADEA claims brought in the instant action. Therefore, this court has subject matter jurisdiction in this case.

   The court notes, that according to Defendants, Cloutier has pursued initial relief in the arbitration process asserting violations of the CBA and of his FMLA rights. The parties have indicated that the arbitration proceedings are stayed and they are awaiting the ruling in this action to determine what claims are subject to arbitration. (G Reply 3 n.3). If Cloutier elects to proceed further in the arbitration proceedings seeking a vindication of his FMLA rights, the FMLA claims in the instant action will be dismissed since he cannot seek the same relief in two separate forums.

   B. Pre-emption under RLA

GoJet argues that the claim in Count IX is preempted under the RLA. A claim is preempted under the RLA "when the success of the claim is dependent upon an interpretation of the collective bargaining agreement's terms." *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 757 (7th Cir. 2008)(internal quotations omitted)(quoting *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 524 (7th Cir. 2008)). GoJet argues that in Count IX, Cloutier is arguing that Defendants violated return to work provisions which are set forth in the CBA, and that such claims required an interpretation of the CBA. Cloutier has not opposed the dismissal of the claims in Count IX, and GoJet's motion to dismiss the claim brought against GoJet in Count IX is granted.

II. TSH's Motion to Dismiss

TSH argues that this court lacks personal jurisdiction over TSH. Personal jurisdiction involves consideration of both federal and state law. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 756-57 (7th Cir. 2010)(stating that the Court was "still unable to discern an operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction")(internal quotations omitted)(quoting *Hyatt Int'l Corp.*, 302 F.3d at 715). A court has general personal jurisdiction over a defendant if the defendant has "continuous and systematic" contacts with the forum that are "sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The court has specific personal jurisdiction over a defendant if "(1) the defendant has purposefully directed his activities at the forum state or purposefully

9

availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* at 702 (citation omitted); *see also Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp.2d 898, 910 (N.D. Ill. 2003)(stating that "[w]ith regard to minimum contacts, courts have recognized that one who commits tortious acts against an Illinois business should reasonably anticipate being haled into court there")(internal quotations omitted)(quoting *Digital Merch. Sys., Inc. v. Oglesby*, 1999 WL 1101769, at *3 (N.D. Ill. 1999)).

In the instant action Cloutier argues that TSH is subject to general and specific personal jurisdiction in Illinois. In regard to general jurisdiction, Cloutier offers nothing more than speculation as to TSH's activities in Illinois. Courtier, who has the burden to establish personal jurisdiction merely offers questions to the court such as asking the court to ponder why TSH would have a regional manager in Illinois if it did not conduct extensive business in Illinois. While that is a question that Cloutier might have sought to answer during jurisdictional discovery, it is not a sufficient basis to meet his burden to show personal jurisdiction. Cloutier has not shown that TSH is subject to general personal jurisdiction in this case. Nor has Cloutier pointed to any specific contacts with Illinois relating to the claims in this action that would subject TSH to specific personal jurisdiction.

Cloutier also argues that TSH is an integrated employer, which could be a basis for personal jurisdiction. Joint or integrated employers are recognized in

certain instances for FMLA, ADA, and ADEA claims. 29 C.F.R. § 825.106(a) (stating that "[w]here two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA"); *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 361 (7th Cir. 2016)(stating in ADEA case that factors to consider for joint employer determination include: "(1) the extent of the putative employer's control and supervision over the putative employee; (2) the kind of occupation and nature of skill required; (3) the putative employer's responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment"); *Whitaker v. Milwaukee Cty., Wisconsin*, 772 F.3d 802, 810 (7th Cir. 2014)(stating in ADA case that "[f]actors to consider in determining joint employer status are (1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions").

 In the instant action, Cloutier has presented evidence and allegations indicating that there is a common management team, including, for example, the same President. Cloutier has also shown that the two companies' operations are closely integrated and that maintenance personnel perform work for both companies. Cloutier has also shown that after his termination, he inquired further regarding the personnel action and it was the TSH regional manager who dealt with him to address the personnel inquiry. Cloutier has alleged sufficient facts and presented sufficient

evidence at this juncture to proceed against TSH as a joint/integrated employer. Nor is there a requirement that Cloutier allege any specific legal terminology in his complaint to state a claim against TSH. Cloutier clearly alleges in his complaint that he was employed by both Defendants. (Compl. Par. 4). At the summary judgment stage however, Cloutier will have to point to sufficient evidence regarding the joint/integrated employer status of TSH. The cases that TSH itself references involved rulings at the summary judgment stage rather than the motion to dismiss stage. (T Reply 7-9). Therefore, TSH's motion to dismiss the claims brought against it, except for the claim in Count IX is denied. TSH's motion to dismiss the claim brought against it in Count IX is dismissed for the reasons stated above.

## CONCLUSION

Based on the foregoing analysis, Defendants' motions to dismiss the claims in Count IX is granted, and the motions to dismiss the remaining claims are denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 8, 2016