**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN CLOUTIER, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:16-cv-01146 |
| v. | ) | |
| | ) | Hon. Samuel Der-Yeghiayan |
| GOJET AIRLINES, LLC, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT GOJET AIRLINES, LLC'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... II

TABLE OF AUTHORITIES .............................................................................................. IV

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF THE CASE ................................................................................... 1

III.    FACTUAL BACKGROUND ...................................................................................... 3

        A.      Cloutier sought FMLA Leave ................................................................... 3

        B.      Cloutier Required a Special FAA Medical Clearance to Fly Which Would Take Longer than
                60 Days to Complete. ................................................................................ 4

        C.      Once Cloutier's FMLA was Approved Problems began Immediately ....................... 5

        D.      GoJet Stopped Communicating After Cloutier Offered to Help goJet ................. 6

        E.      GoJet Sought Re-Certification from Cloutier ............................................... 7

        F.      GoJet Alleges Inconsistent Facts with Regard to Cloutier's Separation ............. 7

ARGUMENT ........................................................................................................................ 8

I.      CLOUTIER SHOULD SUCCEED ON HIS ADA CLAIMS ........................................ 8

        A.      The ADA Is to Be Construed Broadly ....................................................... 8

        B.      Cloutier Has a Valid Claim Against GoJet for Failing to Reasonably Accommodate Him
                Under the ADA ........................................................................................ 9

        C.      Cloutier Has a Disability That Is Covered by the Act ................................ 10

        D.      Cloutier Requested a Reasonable Accommodation for His Known Limitations ........ 13

        E.      Cloutier was Qualified for His Position ................................................... 14

        F.      Cloutier Could Perform the Essential Functions of His Job ........................ 15

        G.      GoJet Caused a Breakdown in the Interactive Process and then Failed to Reasonably
                Accommodate Cloutier ........................................................................... 15

1. GoJet's Director of Operations Directed Everyone to Stop Talking to Cloutier and GoJet Failed to Engage in the Interactive Process ............................................................. 16

2. GoJet Failed to Accommodate Cloutier ..................................................... 17

H. *Cloutier Suffered an Adverse Employment Action When GoJet Terminated His Employment Due to Him Having Diabetes* .................................................................... 18

I. *A Genuine Issue of Material Fact Exists as to Whether GoJet's Reasons for Termination are Pretextual* .............................................................................................. 18

II. **CLOUTIER SHOULD SUCCEED ON HIS FMLA INTERFERENCE CLAIM** .............................. 19

A. *Defendant Interfered with Cloutier's FMLA Rights* ............................................. 19

1. Cloutier was Eligible for FMLA's Protections ....................................... 19

2. GoJet was Covered by the FMLA ....................................................... 20

3. Cloutier was Entitled to Leave under the FMLA ...................................... 20

4. Cloutier Provided Sufficient Notice of his Need for FMLA Leave ................... 20

5. Cloutier was denied FMLA Benefits to which he was Entitled ...................... 22

B. *Defendant's Interference Resulted in Harm/Prejudice to Cloutier* ......................... 23

III. **CLOUTIER SHOULD SUCCEED ON HIS FMLA RETALIATION CLAIM** ................................ 25

A. *Defendant Retaliated Against Cloutier for Exercising his FMLA Rights* ................... 25

B. *Defendant's Purported "Legitimate Reasons" are Pretextual* ............................... 27

1. The Defendant has Offered Shifting and Inconsistent Explanations for its Termination of Cloutier ................................................................................. 27

2. GoJet Regularly Places Pilots "on the Bench" when a Medical License is Not Current, but Chose Not to Do So for Cloutier ...................................................... 28

IV. **CONCLUSION** ............................................................................................. 28

## TABLE OF AUTHORITIES

### CASES

*Ammons v. Aramark Uniform Services, Inc.*,
    368 F.3d 809 (7th Cir. 2004) ................................................................................................ 15

*Arnold v. United Parcel Serv., Inc.*,
    136 F.3d 854 (1st Cir. 1998)................................................................................................... 9

*Bell v. Marseilles Elem. Sch.*,
    160 F. Supp. 2d 883 (N.D. Ill. 2001)......................................................................... 1, 3, 25

*Bultemeyer v. Fort Wayne Cmty. Sch.*,
    100 F.3d 1281 (7th Cir.1996) ........................................................................................ 13, 14

*Burnett v. LFW Inc.*,
    472 F.3d 471 (7th Cir. 2006) ........................................................................................ 18, 19

*Burrage v. United States*,
    134 S.Ct. 881 (2014) .............................................................................................................. 17

*Castro v. DeVry Univ., Inc.*,
    786 F.3d 559 (7th Cir. 2015) ............................................................................................... 26

*Cloe v. City of Indianapolis*,
    712 F.3d 1171 (7th Cir. 2013) ............................................................................................. 10

*Conoshenti v. Public Service Elec. & Gas Co.*,
    364 F.3d 135 (3rd Cir. 2004) ............................................................................................... 21

*Culver v. Gorman & Co.*,
    416 F.3d 540 (7th Cir. 2005) ............................................................................................... 25

*Curran v. Se. Pennsylvania Transp. Auth.*,
    CIV.A. 13-5919, 2015 WL 1542290 (E.D. Pa. Apr. 7, 2015) ......................................... 11

*E.E.O.C. v. LHC Group, Inc.*,
    773 F.3d 688 (5th Cir. 2014) ........................................................................................ 18, 26

*E.E.O.C. v. Sears, Roebuck & Co.*,
    417 F.3d 789 (7th Cir. 2005) ............................................................................................... 17

*EEOC v. Chevron-Phillips Co.*,
    570 F.3d 606 (5th Cir. 2009) ............................................................................................... 15

*EEOC v. UPS Supply Chain Solutions*,
    620 F.3d 1103 (9th Cir. 2010) ............................................................................................. 15

*Evans v. Tex. Dep't of Transp.*,
    547 F.Supp.2d 626 (E.D. Tex. 2007) *aff'd*, 273 Fed. Appx. 391 (5th Cir. 2008) .............. 18, 26

*Fink v. New York City Dep't of Pers.*,
    53 F.3d 565 (2nd Cir. 1995) ................................................................................................ 14

*Finley v. Pennsylvania Dept. of Corr.*,
    3:12·CV·2194, 2015 WL 1967262 (M.D. Pa. Apr. 30, 2015) ....................................... 21

*Fjellestad v. Pizza Hut of America, Inc.*,
    188 F.3d 944 (8th Cir. 1999) ............................................................................................... 14

*Fleishman v. Cont'l Cas. Co.*,
    698 F.3d 598 (7th Cir. 2012) ............................................................................................... 10

*Flowers v. S. Reg'l Physician Servs. Inc.*,
    247 F.3d 229 (5th Cir. 2001) ................................................................................................. 8

iv

*Fraser v. Goodale*,
    342 F. 3d 1032 (9th Cir. 2003) ................................................................. 11

*Garcia-Ayala v. Lederle Parenterals, Inc.*,
    212 F.3d 638 (1st Cir. 2000)..................................................................... 13

*Goelzer v. Sheboygan County, Wis.*,
    604 F.3d 987 (7th Cir. 2010) ..................................................................... 25

*Goldstein v. Fidelity & Guar. Ins. Underwriters*,
    86 F.3d 749 (7th Cir. 1996) .............................................................. 1, 3, 25

*Gonzales v. City of New Braunfels*,
    176 F.3d 834 (5th Cir. 1999) ..................................................................... 11

*Griffin v. UPS*,
    661 F.3d 216 (5th Cir. 2011) ..................................................................... 10

*Haschmann v. Time Warner Entm't Co.*,
    151 F.3d 591 (7th Cir. 1998) ............................................................... 12, 13

*Higgins v. New Balance Athletic Shoe, Inc.*,
    194 F.3d 252 (1st Cir. 1999)..................................................................... 10

*Humphrey v. Mem'l Hosps. Ass'n*,
    239 F.3d 1128 (9th Cir.2001) .................................................................... 15

*Jones v. State Farm Mut. Auto. Ins. Co.*,
    653 Fed. Appx. 598 (10th Cir. 2016) ......................................................... 1

*Karczewski v. DCH Mission Valley LLC*,
    862 F.3d 1006 (9th Cir. 2017) ..................................................................... 9

*Lawson v. CSX Transp., Inc.*,
    245 F.3d 916 (7th Cir. 2001) ..................................................................... 11

*Lewis v. School Dist. #70*,
    523 F.3d 730 (7th Cir. 2008) ..................................................................... 25

*Loulseged v. Akzo Nobel Inc.*,
    178 F.3d 731 (5th Cir. 1999) ..................................................................... 17

*Luckett v. Dart*,
    14-CV-6089, 2017 WL 3386117 (N.D. Ill. Aug. 7, 2017) ......................... 10

*Lupyan v. Corinthian Colleges Inc.*,
    761 F.3d 314 (3rd Cir. 2014) ............................................................... 21, 22

*McAlindon v. County of San Diego*,
    192 F.3d 1226 (9th Cir. 1999) .................................................................... 15

*McCollum v. Livingston*,
    4:14-CV-3253, 2017 WL 608665 (S.D. Tex. Feb. 3, 2017)........................ 11

*Menkowitz v. Pottstown Mem'l Med. Ctr.*,
    154 F.3d 113 (3rd Cir. 1998) ....................................................................... 9

*Mzyk v. N.E. Indep. Sch. Dist.*,
    397 F. Appx 13 (5th Cir. 2010) .................................................................. 10

*Noel v. New York City Taxi & Limousine Comm'n*,
    687 F.3d 63 (2d Cir. 2012) ........................................................................... 9

*Pagel v. TIN Inc.*,
    695 F.3d 622 (7th Cir. 2012) ..................................................................... 25

*PGA Tour, Inc. v. Martin*,
    532 U.S. 661, 675 (2001) ............................................................................. 8

*Rachid v. Jack in the Box,*
    376 F.3d 305 (5th Cir. 2004) ............................................................. 18, 26
*Rager v. Dade Behring, Inc.,*
    210 F.3d 776 (7th Cir. 2000) ........................................................ 21, 22, 24
*Ralph v. Lucent Techs., Inc.,*
    135 F.3d 166 (1st Cir. 1998) .................................................................... 15
*Serwatka v. Rockwell Automation, Inc.,*
    591 F.3d 957 (7th Cir. 2010). ................................................................. 17
*Severson v. Heartland Woodcraft, Inc.,*
    872 F.3d 476 (7th Cir. 2017) .................................................................. 12
*Silva v. City of Hidalgo, Tex.,*
    575 Fed.Appx. 419 (5th Cir. 2014) ......................................................... 17
*Simpson v. Office of the Chief Judge of the Circuit Court of Will County,*
    559 F.3d 706 (7th Cir. 2009) .................................................................. 24
*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*
    298 F.3d 955 (10th Cir. 2002) ................................................................ 13
*Tadder v. Bd. of Regents of Univ. of Wisconsin Sys.,*
    15 F. Supp. 3d 868 (W.D. Wis. 2014) .................................................... 11
*Taylor v. Phoenixville Sch Dist.,*
    184 F.3d 296 (3rd Cir.1999) ......................................................... 14, 15, 16
*Tcherepnin v. Knight,*
    389 U.S. 332 (1967) ............................................................................... 9
*Testerman v. Procter & Gamble Mfg. Co.,*
    CV CCB-13-3048, 2015 WL 5719657 (D. Md. Sept. 29, 2015) ............... 11
*Townsend-Taylor v. Ameritech Services, Inc.,*
    523 F.3d 815 (7th Cir. 2008) .................................................................. 18
*U.S. Airways, Inc. v. Barnett,*
    535 U.S. 391 (2002) .............................................................................. 15
*U.S. E.E.O.C. v. UPS Supply Chain Sols.,*
    620 F.3d 1103 (9th Cir. 2010) ................................................................ 15
*Vannoy v. Fed. Reserve Bank of Richmond,*
    827 F.3d 296 (4th Cir. 2016) .................................................................. 24
*Verkade v. U.S. Postal Serv.,*
    378 Fed.Appx. 567 (6th Cir. 2010) ......................................................... 23
*Wilson v. Dollar Gen. Corp.,*
    717 F.3d 337 (4th Cir. 2013) .................................................................. 10
*Wink v. Miller Compressing Co.,*
    845 F.3d 821 (7th Cir. 2017) .................................................................. 23
*Wood v. Green,*
    323 F.3d 1309 (11th Cir. 2003) .............................................................. 15
*Zayas v. Rockford Mem'l Hosp.,*
    740 F.3d 1154 (7th Cir. 2014) ................................................................ 18

## STATUTES

29 U.S.C. § 2611(11)...................................................................................... 20
29 U.S.C. § 2611(2)(B) ................................................................................... 19

29 U.S.C. § 2611(4)(A) ........................................................................................... 19
29 U.S.C. § 2612(a)(1)(D) ..................................................................................... 19
29 U.S.C. § 2617(a)(1)(A)(iii) ............................................................................... 23
42 U.S.C. § 12102 .................................................................................................. 10
42 U.S.C. § 12102(1)(A) ....................................................................................... 11
42 U.S.C. § 12102(4)(A) ......................................................................................... 9

## OTHER AUTHORITIES

154 Cong. Rec. S8354 (daily ed. Sept. 11, 2008) .................................................. 9
2 EEOC Compliance Manual, Enforcement Guidance for Psychiatric Disabilities at 19 .............................. 15
Pub.L. No. 110–325, § 2, 122 Stat. 3553, 3554 (Sept. 25, 2008) ......................... 8

## REGULATIONS

29 C.F.R. § 1630.2(j)(3)(ii), ................................................................................... 11
29 C.F.R. § 1630.2(j)(3)(iii) (2012) ...................................................................... 11
29 C.F.R. § 825.300(e) ........................................................................................... 23
29 C.F.R. § 825.301(e) ........................................................................................... 23
29 C.F.R. § 825.302 .......................................................................................... 20, 21
29 C.F.R. § 825.304 ................................................................................................ 21
29 C.F.R. § 825.305(b) ........................................................................................... 21
29. C.F.R. § 825.308(d) .......................................................................................... 22

I.      **INTRODUCTION**

Defendant's motion for summary judgment asserts there are no material factual disputes which a reasonable jury could possibly resolve in Plaintiff's favor. Furthermore, Defendant GoJet Airlines, LLC ("GoJet" or "Defendant") ignores additional undisputed material facts which require partial summary judgment (as to liability) in favor of the Plaintiff, John Cloutier ("Plaintiff" or "Cloutier"). Defendant's motion for summary judgment should be denied because there are facts which the Defendant failed to cite which are material to Plaintiff's claims. As explained in more detail below, Defendant engaged in a deliberate plan; master-minded by Steve Briner, covered up by Randy Bratcher, and finally exposed when Briner's email showed his intent to terminate Cloutier.

In this case, there **are** undisputed facts, but in Cloutier's favor. Accordingly, Cloutier is entitled to summary judgment on his FMLA interference claim[1] and his ADA reasonable accommodation claim. *Bell v. Marseilles Elem. Sch.*, 160 F. Supp. 2d 883, 886 (N.D. Ill. 2001); *Goldstein v. Fidelity & Guar. Ins. Underwriters*, 86 F.3d 749 (7th Cir. 1996) (discussing the Court's ability to grant summary judgment in favor of the non-movant); *Jones v. State Farm Mut. Auto. Ins. Co.*, 653 Fed. Appx. 598, 608 (10th Cir. 2016).

II.     **STATEMENT OF THE CASE**

John Cloutier was a commercial airline pilot who was employed by the Defendant, GoJet Airlines, LLC between August 2008 and August 15, 2014. He was diagnosed with Diabetes Mellitus in early June of 2014 and began taking Metformin to control his blood sugar levels. Under the rules and regulations of the Federal Aviation Administration ("FAA"), and in light of this diagnosis, Cloutier could not remain working as a commercial airline pilot unless and until he received a special medical clearance from the FAA.

Cloutier complied with these rules and sought the proper clearance from the FAA. On June 12, 2014, in order to have the time to obtain this FAA medical clearance and monitor any side effects from his

---

[1] As explained more fully herein, Cloutier is seeking summary judgment on some, but not all, of his FMLA interference counts in the Complaint. He is not contesting Defendant's motion for summary judgment as it relates to Counts III (regarding medical certification) and VI (Re-certification when there was no change in status).

Diabetes, Cloutier applied for medical leave from his employer. Cloutier's leave was granted on June 17, 2014 and his schedule was adjusted for FMLA leave between June 12, 2014 and July 31, 2014.

Thereafter, a dispute arose between Cloutier and GoJet. GoJet requested that Cloutier see a physician, who was chosen by GoJet, before he returned to work. On June 25, 2014, Cloutier emailed GoJet's decision maker, Steve Briner, and reiterated that he would comply with the collective bargaining agreement's return to work practices, but that he first needed to complete the FAA medical clearance process. Also, on June 25, 2014 Cloutier offered to work before he returned to flying in an assignment that would not require him to fly an airplane, such as recruiting new pilots.

However, GoJet responded by ceasing all communications with him and ignoring Cloutier's reminders that he would need at least 60 days of leave in order to receive the FAA certification. On June 26, 2014, Steve Briner instructed GoJet employees not to communicate with Cloutier and specifically indicated his intent to terminate Cloutier when his FMLA leave expired.

On August 1, 2014, GoJet informed Cloutier that he was required to provide re-certification FMLA paperwork no later than 5:00 p.m. CST on August 15, 2014. GoJet never notified Cloutier what paperwork he was required to complete, that he had to return to work by a date certain, or the consequences for not timely responding to Ryan's email. After sending that email, no one from GoJet reached out to Cloutier to confirm he received it. Nor did GoJet defer the granting of the additional FMLA leave until it received the certification paperwork.

Cloutier did not receive GoJet's email until August 19, 2014 for three primary reasons: (1) he was not expecting a response from GoJet, (2) it was sent through an account that Mr. Cloutier primarily used for junk; and (3) emails often got lost because he would get 50 to 70 junk emails a day. Once Cloutier received the August 1, 2014 email, he diligently worked to get the medical certification completed and advised GoJet on multiple occasions of the status of the certification process. Nevertheless, on August 15, 2014, Cloutier's employment with GoJet was terminated.

2

Cloutier brings two (2) claims to this court comprising of 13 counts.[2] First, he claims that the Defendant violated the ADA by refusing to allow him additional days of leave in order to obtain the FAA medical clearance or place him in alternate position.[3] Second, Cloutier claims that GoJet violated the FMLA by retaliating against him for exercising his rights under the FMLA and interfering with his exercise of rights under the FMLA.[4]

The Defendant has filed a Motion for Summary Judgment in which it seeks the dismissal of Cloutier's claims. (Dkt. No. 102). Cloutier respectfully submits that GoJet's Motion for Summary Judgment omits and even misrepresents "undisputed facts." (see Plaintiff's Rule 56.1 response). Moreover, where there are undisputed facts, they relate to GoJet's failure to communicate with Cloutier including failing to ensure that he actually received GoJet's requests for certification and specifically directing GoJet employees not to even speak to Cloutier.

GoJet has not shown that it is entitled to summary judgment. Accordingly, its Motion for Summary Judgment should be denied. Moreover, Cloutier respectfully submits that that this court should enter summary judgment *sua sponte* in favor of Cloutier as to liability, in the event that this court finds that there are no genuine issues of material fact, but disagrees with GoJet's interpretation of the law. *Goldstein,* 86 F.3d 749); *Bell*, 160 F.2d 883.

## III.   FACTUAL BACKGROUND

### A.   CLOUTIER SOUGHT FMLA LEAVE

Cloutier was first diagnosed with diabetes in early June 2014, at which time he began taking metformin to control his blood-sugar levels. Defs. SOMF ¶19.  Between June 3rd and June 10th, Cloutier completed training simulations for GoJet in St. Louis and spoke with Dr. Kitslaar, his personal Aviation Medical Examiner ("AME"), about the procedure for obtaining a special medical permit to fly a commercial

---

[2] Counts IX and XIII were dismissed previously.
[3] Counts XII in the complaint.
[4] Counts I-VIII, X, and XI in the Complaint.

aircraft in light of his diagnosis. Pls. Facts, ¶1. On Friday, June 12, 2014, Cloutier sought advice from Tracey Ryan ("Ms. Ryan"), GoJet's Chicago Base Manager, regarding GoJet's policy for short-term disability leave. Defs. SOMF, ¶26. This action was consistent with GoJet's policies. Pls. Facts, ¶37. That same day, Ms. Ryan directed Cloutier to GoJet's FMLA forms to seek FMLA leave. Defs. SOMF, ¶27. Cloutier did not read the email until June 17th, which is the date on which Ms. Ryan requested that the FMLA certification be returned. Accordingly, Cloutier reached out to his physician to complete the certification to be returned that day. Pls. Facts, ¶2. Cloutier did not have adequate time to review the certification from his physician. Pls. Facts, ¶3. If he had, Cloutier would have asked his doctor to change his return-to-work date to a later date that was consistent with the FAA process and GoJet would have approved the later date. Pls. Facts, ¶4. Cloutier didn't think much of it at the time because Defendant led Cloutier to believe that his return to work date was set by his clearance from the FAA — a date that would be well into August. Pls. Facts, ¶4. When approving Cloutier's FMLA leave, GoJet never provided him the requisite notices under the law. As a result, Cloutier was never informed of: (i) his return to work date; or (ii) the consequences of not returning to work on said date. Pls. Facts, ¶6.

**B. CLOUTIER REQUIRED A SPECIAL FAA MEDICAL CLEARANCE TO FLY WHICH WOULD TAKE LONGER THAN 60 DAYS TO COMPLETE.**

While Cloutier was seeking protective leave from GoJet, he was also working with his AME to obtain his special license medical clearance from the FAA. Pls. Facts, ¶7. Prior to applying for the waiver from the FAA for his medical license, Cloutier was required to take Metformin for 60-days and to complete a number of medical tests. Pls. Facts, ¶8. Plaintiff was required to maintain a strict diet to avoid possible complications including, hypoglycemia, annual exams at the ophthalmologists, and other common side effects to diabetes. Plaintiff also had to be alert at all times to the possibility of becoming hypoglycemic and developing related symptoms. *Id*. Cloutier was not eligible to fly a commercial aircraft without the special license from the FAA and he told GoJet on numerous occasions the deadlines associated with receiving his

4

certification from the FAA so he could not return to fly an airplane until receiving it. Pls. Facts, ¶9. If Cloutier had known that he was required to return to work on a certain date (which was never told to him when his FMLA was approved) rather than tied to his FAA clearance, he would have completed the testing earlier. As a result, the FAA would have likely cleared him sooner. Pls. Facts, ¶¶ 6 &10.

The FAA medical license must be renewed either every 6-months or 12-months depending on the license and age of the pilot.  Defs. SOMF, ¶9. When a GoJet pilot's medical license is expiring, it reminds its pilots to complete the certification by the 25th of the month preceding the expiration of the license. Pls. Facts, ¶11. GoJet Base managers - like Ms. Ryan - are responsible for ensuring their pilots' certifications are up to date, including following up with pilots whose licenses have not been updated by the 25th of the month. Pls. Facts, ¶12. If a pilot doesn't have the required medical clearance, he is not terminated but rather temporarily prohibited from flying and required to participate in a "graduated disciplinary process." Pls. Facts, ¶13. It is not until the pilot has refused to complete the medical license for "a long time" that the pilot is potentially subject to termination. Pls. Facts, ¶14. Cloutier never received any progressive discipline for not having a medical certification or otherwise refusing to have it renewed in light of his medical condition. Pls. Facts, ¶13, 31.

### C.    ONCE CLOUTIER'S FMLA WAS APPROVED PROBLEMS BEGAN IMMEDIATELY

Cloutier's FMLA leave was approved by Steve Briner – Director of Operations. Pls. Facts, ¶15.[5] Following that approval a string of emails and events occurred that led to Briner deciding to terminate Cloutier 9-days later.

- Briner dictated an email to Ryan to send to Cloutier advising him that his FMLA leave was approved and that he needed to go see the company's medical examiner for his return to work. Pls. Facts, ¶16.

- In response, Cloutier advised Ms. Ryan that any medical exam by the Company doctor was premature until he received his medical clearance, and that he was confident that he would be able to return to GoJet.. Pls. Facts, ¶17.

---

[5] Bratcher was not in his role as Chief Pilot at the time Cloutier's FMLA request was approved.

- Briner than dictated another email to Ryan, that she sent to Cloutier on 6/18 at 4:10 pm asking Cloutier directly whether he would go see the doctor before returning to work. Pls. Facts, ¶18.

- Because he did not see this email in his inbox, Cloutier did not immediately respond to Ryan's email, and as a result, Briner sent a follow up on June 23rd.[6] Pls. Facts, ¶19.

- On June 24, 2014, Bratcher sent himself an email questioning Briner's request: "[Cloutier] should be allowed to fly unless there is something extraordinary that would lead us to believe otherwise." Pls. Facts, ¶20

- Because Briner was getting upset with Cloutier, on June 25, 2014, Bratcher called Cloutier to tell him that he needed to comply with Briner's request. Pls. Facts, ¶21.

- Shortly after the call with Bratcher, at 4:58 PM on June 25th, Cloutier emailed Briner and (1) reiterated that he was waiting on the FAA to clear him, (2) explained the FAA process and relevant deadlines, and (3) offered to help Gojet in other ways while he was grounded. Pls. Facts, ¶22.

- In response, Briner sent two emails. The first was to Cloutier telling him he "failed to respond to my question by the deadline I set." The second email was directed to Bratcher and Ryan to stop talking with Cloutier and to "terminate his employment for noncompliance with the law" when he returned from FMLA leave - which they followed.. Pls. Facts, ¶23.

- Cloutier responded to Briner the following day and reiterated that he would comply with the return to work practices, but that he first needed to go through the FAA medical process. Pls. Facts, ¶24.

### D. GOJET STOPPED COMMUNICATING AFTER CLOUTIER OFFERED TO HELP GOJET

In the string of emails, Cloutier offered to help GoJet in other ways, including recruiting. Pls. Facts, ¶¶22 & 24. But GoJet responded by stopping all communications with Cloutier and unilaterally ending the discussion about his return to work. Pls. Facts, ¶¶22 & 25. GoJet's Chief Pilot, Bratcher, admitted that he never engaged in an interactive process with Cloutier and was never even trained in this process. Pls. Facts, ¶26. Accordingly, GoJet never considered **or** offered any alternative positions to Cloutier, including recruiter or training. Pls. Facts, ¶27.

---

[6] Briner sent the email himself because Ryan had left on vacation.

### E. GOJET SOUGHT RE-CERTIFICATION FROM CLOUTIER

The next time GoJet communicated with Cloutier was on July 31st. On this date, Cloutier called back GoJet Scheduling and Ms. Ryan, reiterating that he was off until the FAA medical process was complete. Defs. SOMF, ¶39. During Ms. Ryan's call with Cloutier, she never advised him that he would be required to recertify his FMLA leave. Pls. Facts, ¶28. Cloutier followed up that call with an email stating that he expected the FAA tests would be done in two weeks. Defs. SOMF, ¶41. In response, after the close of business, on August 1st, Ms. Ryan - at the direction of Briner or Bratcher - advised Cloutier that he was required to "provide the re-certification FMLA paperwork no later than 5 p.m. CST on August 15, 2014". Pls. Facts, ¶29; Defs. SOMF ¶43. When requesting recertification, GoJet never notified Cloutier: (i) of what paperwork he was required to complete, (ii) that he had to return to work by a date certain, or (iii) the consequences for not timely responding to Ryan's email.[7] Pls. Facts, ¶30. No one from GoJet reached out to Cloutier to confirm that he received GoJet's request for recertification. Pls. Facts, ¶31

Cloutier did not read Ms. Ryan's email until August 19th for three primary reasons: (1) he was not expecting a response from GoJet, (2) it was sent through an account that Cloutier primarily used for junk; and (3) emails often got lost because he would get 50 to 70 junk emails a day. Pls. Facts, ¶32; Defs. SOMF, ¶44. As soon as he *did* receive the email, he diligently worked to get the certification done, keeping GoJet advised throughout the process and ultimately providing a second FMLA certification on August 25, 2014. Defs. SOMF, ¶¶48-50.

### F. GOJET ALLEGES INCONSISTENT FACTS WITH REGARD TO CLOUTIER'S SEPARATION

On August 15, 2014, Cloutier was terminated. Defs. SOMF, ¶47. The termination was processed by Bratcher on August 16th as a "Termination." Pls. Facts, ¶33. The next day - Bratcher changed it to a

---

[7] In letters to the Union, Briner represented that Cloutier's FMLA leave was approved through August 15th and was told to return by August 15th. In his deposition he acknowledged that both of these representations were false. Pls. Facts, ¶40.

"voluntary resignation."  Pls. Facts, ¶34. Bratcher ultimately sent a letter that GoJet believed Cloutier's departure was a "Voluntary Resignation". Defs SOMF, ¶47.  Throughout the duration of this lawsuit, GoJet has characterized it as a "voluntary resignation," and Bratcher testified in his deposition that it was never a termination  Pls. Facts, ¶35. However, further discovery revealed that Steve Briner possessed the intent to terminate Cloutier on June 26, 2014, within 9 days of Cloutier taking FMLA leave. Pls. Facts, ¶23. At that point, GoJet began referring to Cloutier's separation as a "termination" again.. See Defs. SOMF ¶47.  Thus, not only has GoJet flip-flopped with regard to its "legitimate reason" for terminating Cloutier, but also with regard to whether he was terminated at all. Further, Briner is an admitted liar and has been shown to lie under oath to serve his own interests in this case.  Pls. Facts, ¶36.

## ARGUMENT

## I.   CLOUTIER SHOULD SUCCEED ON HIS ADA CLAIMS

GoJet's motion for summary judgment on his ADA claims should be denied because there is a genuine issue of material fact as to each of the required elements. There is no question that John Cloutier suffers from a disability. Diabetes is *per se* a disability. GoJet's argument to the contrary fails as it relies on case law prior to the 2008 ADAAA. GoJet then fails to address the next two elements: whether he was qualified, and whether he was able to perform the essential functions of a pilot. Additionally, it cannot be credibly disputed that it was GoJet who broke off the interactive process leading to a failure to reasonably accommodate Cloutier — when Steve Briner directed all communications with Cloutier to cease and clearly indicated GoJet's intent to terminate Cloutier' employment.

### A.   THE ADA IS TO BE CONSTRUED BROADLY

By enacting the ADAAA, Congress directed that courts should construe the ADA broadly to prevent discrimination. The ADA is a "broad mandate" of "comprehensive character" and "sweeping purpose," intended "to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life."  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (internal

8

quotes and citations omitted) (Title III).  The ADA has a "[b]road remedial framework designed to eradicate disability discrimination." *Flowers v. S. Reg'l Physician Servs. Inc*., 247 F.3d 229, 233–34 (5th Cir. 2001).

The ADAAA was designed to "reinstat[e] a broad scope of protection to be available under the ADA."  Pub.L. No. 110–325, § 2, 122 Stat. 3553, 3554 (Sept. 25, 2008).  The ADAAA explicitly mandates that "disability" be interpreted as broadly as the statutory language allows. 42 U.S.C. § 12102(4)(A). *See also* 154 Cong. Rec. S8354 (daily ed. Sept. 11, 2008) (statement by Sen. Orrin Hatch) ("the bill directs that the definition of disability be construed in favor of broad coverage.  *This reflects what courts have held about civil rights statutes in general*") (emphasis added).

It is also a "familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes." *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967).  The ADA is remedial legislation and should be broadly construed. *Arnold v. United Parcel Serv., Inc*., 136 F.3d 854, 861 (1st Cir. 1998); *Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012); *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1011–12 (9th Cir. 2017).  "Indeed, there is little doubt that Congress intended the ADA as a comprehensive remedial statute with broad ramifications." *Menkowitz v. Pottstown Mem'l Med. Ctr*., 154 F.3d 113, 118 (3d Cir. 1998).

**B.    CLOUTIER HAS A VALID CLAIM AGAINST GOJET FOR FAILING TO REASONABLY ACCOMMODATE HIM UNDER THE ADA**

In this case, Plaintiff is asserting two independent discrimination claims against GoJet arising under the ADA: (1) GoJet failed to provide him with a reasonable accommodation by failing to grant him additional days of leave after his FMLA expired, and failing to place him in a position he was capable of performing such as a recruiter or trainer while he awaited FAA medical clearance; and (2) GoJet terminated him because he had diabetes. With respect to the first, Cloutier is entitled to summary judgment and the later should proceed to trial because there are material disputes of fact on each claim.

To prove a prima facie case for failure to accommodate under the ADA, a Plaintiff must prove that (a) he is disabled; (b) that he is qualified- meaning that he has the requisite skill, training education or experience and that he can perform the essential functions of his position with or without reasonable accommodations;[8] (c) that an adverse employment action has been taken against the employee; that (d) his disability and resulting limitations were known by the covered employer; and (e) that the employer failed to make reasonable accommodations for these limitations. See *Griffin v. UPS*, 661 F.3d 216, 222 (5th Cir. 2011); *Mzyk v. N.E. Indep. Sch. Dist.,* 397 F. Appx 13, 16 n3 (5th Cir. 2010); *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 335 (4th Cir. 2013); and *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013); *Riel v. Electronic Data Systems Corp*., 99 F.3d 678 (5th Cir. 1996).. A failure to accommodate claim does not require the Plaintiff to show intentional discrimination. *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999). Cloutier respectfully submits that he has proven all elements of this claim.

### C.    CLOUTIER HAS A DISABILITY THAT IS COVERED BY THE ACT

42 U.S.C. § 12102 of the ADA defines the term disability:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.
>
> ". . . a major life activity also includes . . . neurological [and] brain. . ." functions. *Id.*

Surprisingly, the Defendant asserts that Cloutier is not disabled within the meaning of the ADA. To reach its conclusion, Defendant relies on outdated case law that simply isn't applicable under the current Americans with Disabilities Act Amendments Act ("ADAAA"). When Congress passed the ADAAA it did so to "include a wider range of impairments that substantially limit a major life activity." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 606 (7th Cir. 2012). In this context, "[a]n impairment no longer needs "to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially

---

[8] Riel v. Electronic Data Systems Corp., 99 F.3d 678 (5th Cir. 1996).

limiting." *Luckett v. Dart*, 14-CV-6089, 2017 WL 3386117, at *13 (N.D. Ill. Aug. 7, 2017). Accordingly, cases which related to events prior to January 1, 2009 are simply not applicable and rely on the old standard which Congress firmly disapproved. One of the most significant changes in the analysis was within the statute itself which requires the analysis to disregard mitigating measures including medication:

> The determination of whether an impairment substantially limits a major life activity **shall be made without regard to the ameliorative effects of mitigating measures** such as—(I) **medication**. . .

42 U.S.C.A. § 12102 (West). In fact, the EEOC regulations specifically adopt diabetes as substantially limiting a major life activity: "it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: …. diabetes substantially limits endocrine function" 29 C.F.R. § 1630.2(j)(3)(iii) (2012). See also *Tadder v. Bd. of Regents of Univ. of Wisconsin Sys.*, 15 F. Supp. 3d 868, 884 (W.D. Wis. 2014) ("This would appear to generally establish diabetes as an impairment imposing a substantial limitation on a major life activity.") *Curran v. Se. Pennsylvania Transp. Auth.*, CIV.A. 13-5919, 2015 WL 1542290, at *5 (E.D. Pa. Apr. 7, 2015) ("Looking to the regulations accompanying this provision, it is clear that "diabetes substantially limits endocrine function," and therefore almost certainly meets the definition of disability."). See also *Testerman v. Procter & Gamble Mfg. Co.*, CV CCB-13-3048, 2015 WL 5719657, at *13 (D. Md. Sept. 29, 2015), *appeal dismissed* (Feb. 4, 2016)("The ADA defines "disability" to include "a physical or mental impairment that substantially limits one or more major life activities.... " 42 U.S.C. § 12102(1)(A).

Because "diabetes substantially limits endocrine function," 29 C.F.R. § 1630.2(j)(3)(iii), it will "virtually always be found to impose a substantial limitation on a major life activity," *id*. § 1630.2(j)(3)(ii), and is thus nearly always a "disability" under the ADA."); *McCollum v. Livingston*, 4:14-CV-3253, 2017 WL 608665, at *33 (S.D. Tex. Feb. 3, 2017) ("If a jury did find that McCollum suffered from diabetes, that jury could also conclude that "diabetes substantially limits endocrine function" and is a qualifying disability").

Further, several federal Courts of Appeals have found diabetes to be a physical impairment. See, for *e.g.,* *Gonzales v. City of New Braunfels*, 176 F.3d 834, 837 (5th Cir. 1999) (describing diabetes as a "serious impairment"); *Fraser v. Goodale*, 342 F. 3d 1032, 1038 (9th Cir. 2003); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923 (7th Cir. 2001).

Accordingly, the question of whether Cloutier's diabetes substantially limits a major life activity must be done in the context of its impact ***without*** the assistance of medication and major diet changes. When this question is viewed in the correct framework there is little doubt that diabetes is a disability under the ADAAA. In this case, Cloutier's diabetes was causing him significant weight loss, uncontrolled bladder functioning, uncontrolled endocrine functioning, and being at risk of a hypoglycemic event. Pls. Facts, ¶8. Here, Cloutier's additional limitations were those placed upon him by the FAA. That is, he was required to be on Metformin for a period of about sixty (60) days, so that the effects of this medicine could be evaluated. After that evaluation period, were those effects determined to be within acceptable limits – the FAA could then issue him a medical certification. Def's SOMF ¶ 24.

Morever, GoJet's own powerpoint presentations consider diabetes a disability under the new changes.

> Example:
> If Diabetes under control, employee is still disabled.

Pls Facts, ¶39. Accordingly, GoJet's claims that Cloutier's diabetes does not constitute a disability is without merit.

D. **CLOUTIER REQUESTED A REASONABLE ACCOMMODATION FOR HIS KNOWN LIMITATIONS**

In *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017), the Seventh Circuit recently held that:

> . . . [A] brief period of leave to deal with a medical condition could be a reasonable accommodation in some circumstances. 328 F.3d at 381; *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 602 (7th Cir. 1998). For example, we noted that "[t]ime off may be an apt accommodation for intermittent conditions. Someone with arthritis or lupus may be able to do a given job even if, for brief periods, the inflammation is so painful that the person must stay home" . . . Intermittent time off or a short leave of absence—say, a couple of days or even a couple of weeks—may, in appropriate circumstances, be analogous to a part-time or modified work schedule. . .

Other federal courts of appeal have held that providing an employee with leave for necessary medical treatment is a reasonable accommodation under the ADA. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.* 298 F.3d 955, 967 (10th Cir. 2002). Additionally the court in *Garcia-Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638, 650 (1st Cir. 2000) set forth a test for determining if the requested leave is unreasonable. Those factors are (a) where the employee gives no indication as to when he can return to work, but demands the employer hold his job open indefinitely, (b) where the employee has "erratic" and "unexplained absences;" (c) where the employer hired the employee to complete a specific task; or (d) where the employer had a policy to permit additional leave rather than hire and train a new employee. *Id.* The First Circuit further noted that "[t]hese are difficult, fact intensive, case-by-case analyses, ill-served by per se rules." *Id.* at 650. None of these factors exist here and support Cloutier's need for a short period of time off under the ADA.

In the case at bar, Cloutier requested FMLA leave in order to obtain his required FAA medical clearance and because of the limitations placed upon him by his diabetes. Pls. facts ¶¶ 4, 6, & 38. This FMLA leave was further necessary so that the effects of Metformin could be evaluated. Pls. facts ¶ 8. This type of leave has been recognized as form of reasonable accommodation under the ADA. *Haschmann v.*

13

*Time Warner Entm't Co.*, and *Smith v. Diffee Ford-Lincoln-Mercury, Inc., supra.* Further, Cloutier was regularly questioned about when he would return to work, and he routinely provided GoJet with updates as to his expected return date (which it knew would take at least 60 days), even though he was on continuous FMLA leave for this period of time. Pls. Facts, ¶¶9, 17, 22, & 24.

### E.   CLOUTIER WAS QUALIFIED FOR HIS POSITION

A plaintiff must furnish probative evidence that [he] is a qualified individual with a disability. *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1284 (7th Cir.1996). To satisfy the "qualified individual" prong, the employee must demonstrate that, with or without reasonable accommodations, he can perform the essential functions of the employment position. *Id.* at 1284. The fact that Cloutier competently performed the duties of a commercial airline pilot for Defendant for at least six (6) years (August 2008 – August 2014) that he was qualified in terms of his skill, training, education, and experience. Defs. SOMF, ¶11; *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 950-51 (8th Cir. 1999). See also *Taylor v. Phoenixville Sch Dist.*, 184 F.3d 296, 311 (3rd Cir.1999) (because Taylor was able to successfully perform her job as a secretary for years, she satisfied the prerequisites of the position). Defendant does not appear to address the issue of whether Cloutier was "qualified", and instead remains stuck on the issue of whether Cloutier was disabled.

Additionally, whether a reasonable accommodation exists presents a genuine issue of material fact as to whether Cloutier is qualified. *Fink v. New York City Dep't of Pers.*, 53 F.3d 565, 567-568, 4 AD 641 (2nd Cir. 1995). In *Fink*, the Second Circuit held that recording assistants, tape recorded exams, tape recorders, and ***extra time*** were reasonable accommodations for visually impaired Civil Service examinees. Extra time is precisely what Cloutier requested. His accommodation request was for extra time to obtain his required FAA medical clearance and evaluate the impact of his diabetes.

14

### F.    CLOUTIER COULD PERFORM THE ESSENTIAL FUNCTIONS OF HIS JOB

Here, GoJet does not appear to brief the issue of whether Cloutier could perform the essential functions of his job. Thus, it appears undisputed that Cloutier could perform the essential functions of his position as a pilot for GoJet. Cloutier contends that had he been given the amount of FMLA time needed to obtain his FAA medical certification, he would have indeed been able to perform the essential functions of a pilot.

### G.    GOJET CAUSED A BREAKDOWN IN THE INTERACTIVE PROCESS AND THEN FAILED TO REASONABLY ACCOMMODATE CLOUTIER

A request for a reasonable accommodation need not be in writing, use certain language, mention the ADA, or even state that it is a request for a reasonable accommodation. 2 EEOC Compliance Manual, Enforcement Guidance for Psychiatric Disabilities at 19, 21; *Taylor v. Phoenixville School Dist*, supra. at 313. The employer's duty to provide reasonable accommodations pursuant to the ADA is a continuing one. That duty "is not exhausted by one effort." *McAlindon v. County of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 1999) (quoting *Ralph v. Lucent Techs., Inc.,* 135 F.3d 166, 172 (1st Cir. 1998)).

> An ineffective 'modification' or 'adjustment' will not accommodate a disabled individual's limitations." *Barnett*, 535 U.S. at 400, 122 S.Ct. 1516. Ineffective modifications therefore are not accommodations. Cf. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir.2001) ("An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position.")

*U.S. E.E.O.C. v. UPS Supply Chain Sols.,* 620 F.3d 1103, 1110 (9th Cir. 2010) "Prior accommodations do not make an accommodation reasonable." *Wood v. Green*, 323 F.3d 1309 (11th Cir. 2003). "The word accommodation . . . conveys the need for effectiveness." *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 400 (2002). What the employee requires may change over time. *EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1111-12 (9th Cir. 2010). In *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 820 (7th Cir. 2004), the court held that the ADA requires a flexible interactive process by which employer and employee determine reasonable accommodations. A covered employer unlawfully discriminates against an

15

employee with a disability if it fails to provide the employee with a reasonable accommodation "to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer can show that the accommodation would pose an undue hardship. *Taylor,* 184 F.3d at 311.

"Once an employee makes such a request, however, the employer is obligated by law to engage in an 'interactive process': a meaningful dialogue with the employee to find the best means of accommodating that disability." *EEOC v. Chevron-Phillips Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (internal citation omitted).

> Neither party should be able to cause a breakdown in the process for the purpose of inflicting liability. Rather, the courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary... a party that fails to communicate, by way of initiate or response, may also be acting in bad faith.

*Taylor v. Phoenixville Sch. Dist.*, supra at 312.

### 1. GoJet's Director of Operations Directed Everyone to Stop Talking to Cloutier and GoJet Failed to Engage in the Interactive Process

Nevertheless, GoJet argues that Cloutier's claim for reasonable accommodations must fail because "Plaintiff failed to engage in the interactive process with GoJet." Def. Memo p. 13. This characterization of the facts is simply wrong. On June 26, 2014 Steve Briner sent an email to Ms. Ryan and Bratcher directing them not "to reach out this man again either via phone or e-mail." Pls. Facts, ¶23. Briner's decision to ***stop*** all communications with Cloutier was in response to Cloutier's email that he sent offering to provide additional help to GoJet in other ways while he was grounded.

> In the mean time I'm available to help with any of your pilot recruiting that may be coming up. I would be more than happy to attend the shows. I think Gojet has some things to offer that the others may not. As I told you in recurrent earlier this month, things have improved by 10 times since you took over and made some changes. I think you need to stress the positive changes. There is no pilot shortage out there, just a shortage of pilots willing to work for 20k a year. I have sent emails out to guys who I flew with in the Air Force who are just sitting at home and none have seemed interested. I think flexibility in scheduling might help too. You

Rather than accept Cloutier's offer to do other work for GoJet, Briner shut down all further communications with Cloutier - halting any interactive process. To suggest that Cloutier broke down the communications is simply ignoring the facts and Briner's directive for GoJet to stop talking with Cloutier.

### 2. GoJet Failed to Accommodate Cloutier

In this case, GoJet had no bases upon which to terminate Cloutier - his leave was protected under the FMLA. Moreover, GoJet was under an obligation to provide a reasonable accommodation to Cloutier while the impact of his diabetes diagnosis was evaluated. That accommodation in this case could have been any of the following: (a) additional days of leave after his FMLA expired; (b) helping GoJet recruit pilots; or (c) helping train pilots while he awaited FAA medical clearance. A failure to engage in the interactive process violates the ADA if, as in this case, it leads to a failure to provide a reasonable accommodation. *Silva v. City of Hidalgo, Tex.*, 575 Fed.Appx. 419, 424 (5th Cir. 2014) (citing *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)). All three would have accommodated his need to not to fly a commercial aircraft while he was waiting for his special medical certification from the FAA. Additionally, other accommodations could have been identified had GoJet participated in an interactive process with Cloutier.

GoJet never evaluated any of these accommodations because Briner directed his subordinate employees to execute his plan to cut Cloutier off from all communications with GoJet and as a result they never engaged in the interactive process with Cloutier. Pls. Facts, ¶26; See *E.E.O.C. v. Sears, Roebuck & Co.,* 417 F.3d 789, 806 (7th Cir. 2005) ("the employer may not simply reject it without offering other suggestions or at least expressing a willingness to continue discussing possible accommodations.") When Cloutier offered to help - Briner shut him down. In fact all three were reasonable accommodations under the circumstances.

### H. CLOUTIER SUFFERED AN ADVERSE EMPLOYMENT ACTION WHEN GOJET TERMINATED HIS EMPLOYMENT DUE TO HIM HAVING DIABETES

Defendant asserts that Plaintiff must show that his disability was the "but for" cause of his termination, citing *Serwatka v. Rockwell Automation, Inc.,* 591 F.3d 957, 964 (7th Cir. 2010). However, sole cause is not required. In 2014, the Supreme Court decided *Burrage v. United States*, 134 S.Ct. 881, 888 (2014), holding that even "but for" causation does not require proof that an unlawful motive was the sole cause of the challenged action. In a decision replete with citations to discrimination and retaliation cases, the Supreme Court held: "the same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so - if, so to speak, it was the straw that broke the camel's back." Moreover, Defendant's own authority at p. 14 cites the necessity of having a fact finder determine the cause of Plaintiff's termination - *Zayas* v. Rockford Mem'l Hosp., 740 F.3d 1154, 1158 (7th Cir. 2014). A question of fact would necessarily preclude summary judgment. Defendant then continues *ad nauseum* to cite Plaintiff's deposition testimony about why plaintiff felt he was terminated, and plaintiff's testimony that he was terminated in part because of high medical costs incurred by him and his family. However, as previously noted, but-for causation does not mean sole cause.

### I. A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER GOJET'S REASONS FOR TERMINATION ARE PRETEXTUAL

If Defendant can offer evidence of some legitimate, non-discriminatory reason for Plaintiff's termination, Plaintiff can rebut this defense by offering sufficient evidence to create a genuine issue of material fact that Defendant's reason for termination is false or pretextual. Alternatively, Plaintiff must offer sufficient evidence that if Defendant's reason for termination is true, it is only one of the reasons for the termination, and another reason is plaintiff's protected characteristic. *E.E.O.C. v. LHC Group, Inc.,* 773 F.3d 688, 702 (5th Cir. 2014) citing *Rachid*, 376 F.3d at 312 ), *Evans v. Tex. Dep't of Transp*., 547 F.Supp.2d 626, 640 (E.D. Tex. 2007) *aff'd,* 273 Fed. Appx. 391 (5th Cir. 2008). Here, the facts clearly show Briner

intentionally decided to terminate Cloutier when his FMLA leave was up, and that he had no intent to engage in interactive process. Pls facts ¶¶ 23, 26-27

## II.   CLOUTIER SHOULD SUCCEED ON HIS FMLA INTERFERENCE CLAIM

### A.   DEFENDANT INTERFERED WITH CLOUTIER'S FMLA RIGHTS

An employee asserting an FMLA interference claim must establish the following elements:

> (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.

*Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).

The Seventh Circuit has concluded that "to provide an employee with misleading instructions that cause him to miss a critical deadline for seeking FMLA leave" constitutes FMLA interference. *Townsend-Taylor v. Ameritech Services, Inc.*, 523 F.3d 815, 817 (7th Cir. 2008). As will be demonstrated, this is exactly what took place in the instant case. GoJet improperly handled Cloutier's FMLA request and denied him benefits required by law, in violation of federal regulations, which resulted in Cloutier losing his job.

### 1.   Cloutier was Eligible for FMLA's Protections

For purposes of the first element, an employee is eligible for the FMLA's protections if he "has been employed":

> (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
>
> (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.

29 U.S.C. § 2611(2)(B).

Here, Cloutier is clearly eligible for these protections, as he worked for GoJet for approximately six (6) years, and worked full time during his final year of employment. Further, Cloutier's eligibility for FMLA benefits have not been disputed. Thus, the first element is satisfied.

### 2. GoJet was Covered by the FMLA

As for the second element of an FMLA interference claim, the term "employer" includes "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A).

Here, GoJet is clearly covered by the FMLA, as it employs more than 50 people in a 75 miles radius of Plaintiff's worksite and its business affects interstate commerce. Further, GoJet's status as an FMLA "employer" has not been disputed. Thus, the second element is satisfied.

### 3. Cloutier was Entitled to Leave under the FMLA

"An employee is entitled to FMLA leave if (1) he is afflicted with a 'serious health condition' and (2) that condition renders him temporarily unable to perform the functions of his job." *Burnett*, 472 F.3d at 477–78, citing 29 U.S.C. § 2612(a)(1)(D). For purposes of the first requirement, a "serious health condition" includes "an illness, injury, impairment, or physical or mental condition that involves [...] continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Here, Cloutier was diagnosed with diabetes mellitus in June of 2014. Defs. SOMF ¶19. This required him to take the medication Metformin indefinitely to control his blood sugar levels. It also required regular monitoring by a physician, including blood tests, as well as dietary and exercise restrictions. This certainly qualifies as "continuing treatment," meaning that his diabetes was a "serious health condition." Further, it is clear that Cloutier's condition left him "unable to perform the functions of his job," as the FAA temporarily prohibited him from flying. Thus, the third element is met, as both of the requirements of *Burnett* are satisfied.

### 4. Cloutier Provided Sufficient Notice of his Need for FMLA Leave

With respect to the fourth factor, an "employee's notice obligation is satisfied so long as he provides information sufficient to show that he likely has an FMLA-qualifying condition." *Burnett*, 472 F.3d

at 479. GoJet argues Cloutier did not meet this obligation. However, for the reasons below, the Defendant's argument is without merit.

Defendant argues that Cloutier's notification was untimely because he knew of his diagnoses of diabetes on June 2, 2014 but did request leave until June 12, 2014. Federal regulations require that an employee give reasonable notice of foreseeable FMLA leave. 29 C.F.R. § 825.302. This generally requires notice thirty (30) days prior to anticipated leave, unless thirty (30) days' notice is "not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency[.]" *Id.* In such cases, notice must be given "as soon as practicable." *Id.* Here, the Plaintiff respectfully submits that thirty (30) days' notice was not practicable. He received his diagnosis in early June, 2014, and informed Defendant on June 12, 2014, which was less than two (2) weeks later, and as soon as he learned that his diagnosis may affect his work. Pls. Facts, ¶1. At this point, he did not have thirty (30) days before he was prohibited from flying. Thus, the Plaintiff respectfully submits that notice was practicable and reasonable under § 825.302.

Further, in the event that notice is not timely, an employer's only options are to: (1) delay granting the leave or (2) waive the notice period and grant the FMLA. 29 C.F.R. § 825.304.[9] Here, GoJet chose to retroactively grant the leave. Defs. SOMF ¶32. The law is clear that notice requirements are waived if the FMLA leave is retroactively granted. *Finley v. Pennsylvania Dept. of Corr.,* 3:12-CV-2194, 2015 WL 1967262, at *22 fn. 2 (M.D. Pa. Apr. 30, 2015). Thus, GoJet waived the notice requirement and cannot thereafter assert this argument on summary judgment.

Therefore, the fourth element has been satisfied.

---

[9] GoJet provides no evidence that it met is notice obligations under § 825.304 and therefore Cloutier was not notified of the notice requirements. Pls. Facts, ¶¶6 & 30.

**5.** **Cloutier was denied FMLA Benefits to which he was Entitled**

GoJet violated a number of requirements under the FMLA. The key violations, the facts of which

are undisputed, are as follows:

- GoJet provided Cloutier only five (5) days to complete the necessary FMLA medical certification (between June 12th and June 17th) instead of the fifteen (15) days required by 29 C.F.R. § 825.305(b) and *Rager v. Dade Behring, Inc.*, 210 F.3d 776, 778 (7th Cir. 2000). Defs. SOMF, ¶27; Pls. Facts, ¶2
- The FMLA requires employers to "inform employees of their rights under the Act […] to ensure that employers allow their employees to make informed decisions about leave." *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 318 (3rd Cir. 2014), citing *Conoshenti v. Public Service Elec. & Gas Co.*, 364 F.3d 135, 144 (3rd Cir. 2004). GoJet never provided Cloutier any FMLA designation notice. See Pls. Facts, ¶¶6 & 30.
- The law requires an employer to "provide written notice detailing the employee's obligations under the FMLA and explaining any consequences for failing to meet those obligations." *Lupyan,* 761 F.3d at 318. GoJet never informed Cloutier of the consequences of not returning by his return-to-work date.[10] Pls. Facts, ¶¶6 & 30.
- GoJet never ensured that Cloutier received a request for re-certification, when the law is clear that the employer bears the risk of not having sufficient proof of delivery of required FMLA notice. Pls. Facts, ¶¶31 & 32. *Lupyan*, 761 F.3d at 322.

The **employer's** notification requirement includes informing the employee of the consequences of

failing to return the certification within the fifteen (15) day deadline. *Rager*, 210 F.3d at 777-78.  Here,

GoJet gave Cloutier five (5) days for the original certification.

GoJet continued to violate the FMLA when it sought recertification from Cloutier on August 1, 2014

at 6:28 pm and demanded that the paperwork be returned by August 15, 2014 at 5:00 pm. The fifteen (15)

day period for re-certification does not begin to run until the employee **receives** notice of the need for

recertification. 29. C.F.R. § 825.308(d); *Lupyan*, 761 F.3d at 322.[11] Here, Cloutier received this notice on

---

[10] There is a dispute as to whether Cloutier was ever told when he was to return to work in the first instance. Pls. Facts, ¶6. Cloutier was led to believe that his leave was approved until he received his FAA medical clearance.  Pls. Facts, ¶5.
[11]  In *Gardner v. Detroit Entm't, LLC*, 12-14870, 2014 WL 5286734, at *7 (E.D. Mich. Oct. 15, 2014), the Court concluded that notice for re-certification via email was insufficient as proof of actual notice and receipt of the employer's request for recertification. Such "notice" is only evidence of "constructive notice" and insufficient to overcome summary judgment where the Plaintiff testified that he never saw the email and never opened it. Id.

August 19, 2014, [12] which is when the clock began to run. However, he was only given until August 15, 2014 to complete the recertification. Thus, even if Cloutier had received the request *immediately* upon its sending on August 1, 2014, thereby starting the clock, he would only have had 13 days, 22 hours, and 32 minutes to provide the recertification. This would still violate the requirements of the FMLA regulations described above, which mandate a period of fifteen (15) days.

Further, Cloutier was not informed of the consequences for not complying with the deadline. Thus, GoJet's request for recertification failed to comply with the requirements of *Rager* in both respects. Nonetheless, on August 15, 2014 Briner executed his plan to terminate Cloutier for "noncompliance with the law" upon his return. Defs. SOMF, ¶¶46 & 47; Pls. Facts, ¶23. Once Cloutier received the request on August 19, 2014, he quickly moved to get the medical certification completed and followed up with GoJet and finally sent his recertification to GoJet on August 25th. Defs. SOMF ¶¶ 48-50. Thus, Cloutier met all of his obligations, but was terminated anyway. Therefore, the Plaintiff respectfully submits that GoJet interfered with his rights under the FMLA, and that he is therefore entitled to summary judgment in his favor.

### B. DEFENDANT'S INTERFERENCE RESULTED IN HARM/PREJUDICE TO CLOUTIER

A plaintiff is entitled to relief under the FMLA if he "has been prejudiced by [his employer's] violation," such as being "terminated, disciplined, or demoted." *Verkade v. U.S. Postal Serv.*, 378 Fed.Appx. 567, 575 (6th Cir.2010). The employer is then liable "for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered." 29 C.F.R. §§ 825.300(e), 825.301(e). Further, the law is clear that an employer who violates the FMLA is liable for "double damages" (twice the amount of damages actually sustained) "unless

---

[12] Cloutier didn't read the email until August 19th for three primary reasons: (1) he was not expecting a response from GoJet, (2) it was sent through an account that Cloutier primarily used for junk e-mail; and (3) emails often got lost because he would get 50 to 70 junk e-mails a day. Pls. Facts, ¶32; Defs. SOMF, ¶44

the employer can show that it acted in good faith." *Wink v. Miller Compressing Co.*, 845 F.3d 821, 823–24 (7th Cir. 2017), citing 29 U.S.C. § 2617(a)(1)(A)(iii).

Here, Cloutier alleges that he was harmed because:

1. If he had been given adequate time to review his initial certification, as was required by the FMLA, he would have requested the estimated return date be changed to reflect the FAA clearance process (to at least 60 days).[13]   Pls. Facts, ¶4.

2. GoJet would have approved Cloutier's FMLA leave into late August if his initial medical certification sought it. Pls. Facts, ¶4.

3. If Cloutier's leave had been approved to coincide with the time frame necessary for his FAA medical clearance (as Cloutier understood it to be in the first instance), GoJet would likely not have terminated him or declared that he had "voluntarily resigned."

Thus, Cloutier was **harmed** as a result of GoJet's noncompliance with federal regulations, which clearly constitutes interference under *Verkade.* See also *Simpson v. Office of the Chief Judge of the Circuit Court of Will County*, 559 F.3d 706, 712 (7th Cir.2009) ("[f]iring an employee to prevent her from exercising her right to return to her prior position can certainly interfere with that employee's FMLA rights").

Further, the Court of Appeals for the Fourth Circuit has held that "[p]rejudice may be gleaned from evidence that had the plaintiff received the required (but omitted) information regarding his FMLA rights, he would have structured his leave differently." *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016). Here, the facts demonstrate that if Cloutier had received the required information, he would have handled the situation differently.

Cloutier was prohibited from flying for at least sixty (60) days. Defs. SOMF, ¶24. Cloutier understood this to mean that he was to complete all of his testing within sixty (60) days of his initial diagnosis, which would have given the FAA twenty-four (24) days **after** the testing to approve his special license. Pls. Facts, ¶¶8 & 10. Cloutier was unaware that he was required to return to work on a certain

---

[13] This is exactly what happened with the  second certification. See evidence supporting, Defs SOMF ¶50.

date, but believed that his return to work was governed by the FAA clearance process. As a result, he did not receive his clearance to fly until two (2) days after his FMLA leave had ended. Defs. SOMF, ¶52; Pls. Facts, ¶¶8-10.

GoJet argues that it was therefore justified in firing Cloutier, as he allegedly had exercised all of his rights under the FMLA. However, there is little doubt that, had GoJet provided sufficient notice to Cloutier of applicable deadlines (including when he was to return to work) as well as the consequences of failing to meet said deadlines, as is *required* by the Code of Federal Regulations and *Rager, supra.,* Cloutier would have made sure to complete the process two (2) days earlier. The facts that Cloutier expressed a willingness to return to work, and that he was operating based on an incorrect timeline due to a lack of information, strongly support this proposition. Thus, these facts represent further evidence of prejudice.

Given these facts, summary judgment is appropriate in Cloutier's favor on his interference claim in the event that this Honorable Court, upon review of the record, concludes that there are no genuine issues of material fact, but disagrees with GoJet's interpretation of the law. See *Bell,* 160 F. Supp. 2d at 886; *Goldstein*, 86 F.3d at 750).

### III. CLOUTIER SHOULD SUCCEED ON HIS FMLA RETALIATION CLAIM

#### A. DEFENDANT RETALIATED AGAINST CLOUTIER FOR EXERCISING HIS FMLA RIGHTS

The law is clear that an "employer cannot use an employee's use of FMLA leave as a negative factor in promotion, termination, and other employment decisions." *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). According to the Seventh Circuit, "[t]he difference between a retaliation and interference theory is that the first requires proof of discriminatory or retaliatory intent while an interference theory requires only proof that the employer denied the employee his or her entitlements under the Act." *Goelzer v. Sheboygan County, Wis.*, 604 F.3d 987, 995 (7th Cir. 2010) (internal quotations omitted). The Goelzer court further explained that:

> To succeed on a retaliation claim, the plaintiff does not need to prove that "retaliation was the only reason for her termination; she may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision".' *Lewis*, 523 F.3d at 741–42 (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir.2005)).

*Id.,* citing *Lewis v. School Dist. #70*, 523 F.3d 730 (7th Cir. 2008). Accordingly, summary judgment is not appropriate where there is a triable issue of fact of whether the termination was the result of discriminatory motivation. See *Id,; Lewis,* 523 F.3d at 741 ("A plaintiff can avert summary judgment on an FMLA retaliation claim either by proffering direct or circumstantial evidence of her employer's discriminatory motivation."). The question on summary judgment "is whether a jury could find that the [employer] did not reinstate [the employee] because [he] exercised [his] right to take FMLA leave." *Goelzer*, 604 F.3d at 993.

Briner's email regarding Cloutier's termination clearly expressed the intent to terminate Cloutier due to his actions with respect to the FMLA process and his request for leave, stating: "[a]fter his FML ends, our intent is to terminate his employment for noncompliance with the law." Pls. Facts, ¶23. Since phrase "the law" can only be understood to refer to the FMLA, it is apparent that Briner incorrectly believed that Cloutier's actions were not in compliance with the FMLA. However, as demonstrated above, Cloutier met all of his obligations under the FMLA and it was in fact GoJet that violated the law. Thus, Cloutier's actions, for which Briner clearly expressed the intent to terminate him, were entirely lawful and constituted "protected conduct" under the FMLA. Therefore, the Plaintiff respectfully submits that this represents compelling direct evidence of retaliatory intent. At the very least, Cloutier has created a genuine issue of fact as to whether he was terminated due to protected conduct, which is all that is required at this stage.

For these reasons, the Plaintiff respectfully submits that he has made the necessary showing of retaliation to defeat summary judgment.

## B.     DEFENDANT'S PURPORTED "LEGITIMATE REASONS" ARE PRETEXTUAL

If a defendant can offer evidence of some legitimate, non-discriminatory reason for a plaintiff's termination, the plaintiff can rebut this defense by offering sufficient evidence to create a genuine issue of material fact that: (i) the defendant's reason for termination is false or pretextual; or (ii) if true, that it is only **one** of the reasons for the termination, and that another reason is the plaintiff's protected characteristic. *LHC Group, Inc., supra.* at 702, citing *Rachid,* 376 F.3d at 312, *Evans*, 547 F.Supp.2d at 640 .  As demonstrated below, there are numerous reasons by which a jury may conclude that GoJet's purported reason for terminating Cloutier was pretextual.

### 1.     The Defendant has Offered Shifting and Inconsistent Explanations for its Termination of Cloutier

The Seventh Circuit has held that, "[a]s a general rule, a reasonable trier of fact can infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 577 (7th Cir. 2015). As demonstrated below, GoJet's contradictory testimony alone is sufficient to create a genuine issue of fact as to pretext.

The Defendant stated that Cloutier was terminated due to "noncompliance with the law." Pls. Facts, ¶33. Hours later, GoJet attempted to characterize his separation as a "voluntary resignation." Pls. Facts, ¶34. Once discovery was nearing its completion in this case, GoJet once again began referring to it as a "termination."  Pls. Facts, ¶35.  Finally, GoJet has proffered the following two (2) reasons for Cloutier's termination in its motion for summary judgment: (i) Cloutier's alleged failure to respond to GoJet's request for recertification; and (ii) alleged insubordination relating to his obligation to return to work after being cleared by the FAA. GoJet's flip-flop decision making is itself evidence of pretext and as a result it is not entitled to summary judgment.

2.    **GoJet Regularly Places Pilots "on the Bench" when a Medical License is Not Current, but Chose Not to Do So for Cloutier**

As Bratcher explained, GoJet's practice with a pilot that has not yet renewed his medical license from the FAA is not to *fire* them, but to put to "sideline" them, during which time (i) GoJet collaborates with the pilot to make sure the licensing process is completed; and (ii) the pilot is assigned work that does not involve flying. Pls. Facts, ¶13. Generally, GoJet will only consider termination if the pilot is not fulfilling his duties in this process and is subjected to a "graduated disciplinary process." Pls. Facts, ¶13. In this case, GoJet did not follow the same procedure, but treated Cloutier differently. The Plaintiff respectfully submits that this unequal treatment represents further evidence of GoJet's animus against the Plaintiff, which is based on retaliatory intent, and by which a reasonable jury could infer pretext.

IV.    **CONCLUSION**

For the foregoing reasons, the Plaintiff, John Cloutier, respectfully submits that the Defendant's motion for summary judgment should be denied.

Respectfully submitted;

/s/ *Walker R. Lawrence*_____
Aaron B. Maduff
Atty. No. 6226932
Walker R. Lawrence
Atty. No. 6296405
MADUFF & MADUFF, LLC
205 N. Michigan, Ave., Suite 2050
Chicago, Illinois 60601
(312) 276-9000

J. Arthur Smith, III (La. #07730)
(*pro-hac vice*)
SMITH LAW FIRM
830 North Street
Baton Rouge, La  70802
(225) 383-7716
jasmith@jarthursmith.com
*Counsel for Plaintiff, John Cloutier*

28

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that the foregoing was this day electronically filed with the U.S. District Court for the Northern District of Illinois, Eastern Division, and that a copy of this filing has been sent to all counsel by operation of the court's ECM/ECF filing system.

     Chicago, Illinois, this <u>21st </u>day of December, 2017.

<u>  /s/ Walker R. Lawrence  </u><br>
Walker R. Lawrence