**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN CLOUTIER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16 C 1146** |
| | ) | |
| **GOJET AIRLINES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

John Cloutier has sued his former employer, GoJet Airlines, for alleged violations of the Family and Medical Leave Act (FMLA) (counts 1-8, 10-11) and the Americans with Disabilities Act (ADA) (count 12). GoJet has moved for summary judgment on all of Cloutier's claims. For the reasons stated below, the Court grants GoJet's motion in part and denies it in part.

**Background**

GoJet is a commercial airline that operates flights on behalf of United Airlines and Delta Airlines. Cloutier began working as a pilot for GoJet in 2008, and he became a full-time captain in 2009. On May 31, 2014, Cloutier visited his primary care physician, Dr. Camelia Pop; Cloutier believed he might have diabetes because he was thirsty and losing weight. On June 2, 2014, Dr. Pop confirmed that Cloutier did, in fact, have diabetes mellitus. She instructed Cloutier to start taking Metformin that same day and told him that he should not fly.

Cloutier testified during his deposition that he participated in simulator training from June 3 through June 9.  He also testified that he contacted Dr. Kitslaar, the FAA medical examiner, after learning of his diabetes diagnosis.  Dr. Kitslaar e-mailed Cloutier the FAA protocol for pilots who have been newly prescribed Metformin for diabetes.  Under this protocol, Cloutier was required to undergo testing by an Aviation Medical Examiner after taking Metformin for sixty days.  He was prohibited from flying until the FAA evaluated his test results and approved the special issuance of a first class medical certificate (Cloutier was required to hold an up-to-date first class medical certificate in order to fly).  Cloutier testified during his deposition that he "probably" contacted Dr. Kitslaar about his diagnosis on June 3, when he first learned of it.  Def.'s Statement of Undisputed Material Facts (Def.'s SUMF), Ex. B (Cloutier Dep.) at 96:22.  Cloutier later stated, however, that he might not have called Dr. Kitslaar until after his June 10 appointment with Dr. Pop, after he finished training in the simulator.  *See id.* at 97:17-98:13.

Cloutier was scheduled to fly starting on June 11.  On June 10, he called the crew scheduling department to inform them that he could not fly because he had begun taking Metformin and would need to undergo testing before the FAA issued him a new medical certificate.  On June 12, Cloutier e-mailed Tracey Ryan, GoJet's Chicago Base Manager, to let her know that it looked like he would need to go on short-term disability leave.  He explained that he would need to be on Metformin for sixty days and then send his blood tests to the FAA before he could be cleared to fly.  Cloutier sent the email from his misterata@aol.com e-mail address.  Ryan responded by e-mail the same day.  She told Cloutier to "fill out the FMLA paperwork and have your doctor fax it over

to me by Tues of next week," which was June 17.  Cloutier Dep., Ex. 6.

Ryan directed Cloutier to obtain the necessary FMLA forms from the GoJet Intranet.

Cloutier testified that he probably read Ryan's e-mail on June 17—the day she stated

the FMLA paperwork was due—so he "rushed to get the stuff back to her."  Cloutier

Dep. at 118:5-118:15.  Cloutier obtained the necessary certification from Dr. Pop and

submitted it, along with the other required forms, to GoJet.  Dr. Pop's certification

estimated that Cloutier would be unable to work from May 31, 2014 to July 31, 2014.

Cloutier Dep., Ex. 8.

On the evening of June 17, Ryan sent Cloutier an e-mail to another one of his e-

mail addresses—John@jcloutierlaw.com—confirming that she received his completed

FMLA paperwork.  It is undisputed that either Steve Briner, GoJet's director of

operations at the time, or then-Chief Pilot Randy Bratcher dictated the contents of the

email to Ryan.  The e-mail said, "I will have your schedule updated for FMLA leave from

6/11/14 – 7/31/14."  Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. (Pl.'s Resp.), Ex. 5.

The e-mail went on to state "[b]ecause you are on FAA regulatory medication and

Pursuant to Section 22.A of the GoJet Pilot Collective Bargaining Agreement, due to

GoJet's concern about your fitness to fly, you are required to submit for a medical

examination at the office of Dr. Matthew Miriani for your return."  *Id.*  Cloutier responded

by e-mail that same evening.  In his response, Cloutier quoted Section 22.A of the

Collective Bargaining Agreement (CBA) as follows:  "A Pilot will not be required to

submit to a medical examination in addition to those required by the FAA unless the

Company believes that the Pilot's medical condition is impaired and believes the Pilot

may not be fit to fly as a result thereof."  Cloutier Dep., Ex. 9 at 3.  Cloutier then stated

the following:

> In order to require me to go to the company's examiner the Company
> would have to believe that my medical condition is impaired after the FAA
> has cleared me. It would also have to believe that I may not be fit to fly as
> a result of that medical condition. Since you are telling me now that I will
> be required to submit for a medical examination, in what way does the
> company believe that I am impaired? Who has told you that they feel that
> my medical condition is impaired? What evidence is there that I am at all
> impaired?

> Obviously the company could not believe that my medical condition is
> impaired when we are 2 months from me even coming back to work.
> Thus, paragraph 22.A of the CBA could not apply and I will not be going to
> the company doctor.

> Airlines were the biggest abuser of medical exams in order to discriminate
> against people, mainly in an attempt to keep their future medical costs
> down. . .

*Id.* At Briner's direction, Ryan responded to Cloutier by e-mail the following day and asked him, "Are you going to see Dr. Miriani as directed, prior to your return from FMLA on 8/1/14? Yes, or No?" *Id.* Briner was cc'ed on the e-mail. On June 23, Briner himself e-mailed Cloutier. Briner explained that Ryan was on vacation and he had not seen a response from Cloutier; he instructed Cloutier to "[p]lease respond to me by Close of Business on 6/25/14 with a yes, you will comply or no, you have elected not to comply." *Id.* at 2.

On June 25, after receiving a call from Bratcher about his failure to respond to Briner, Cloutier e-mailed Briner from his misterata@aol.com e-mail account, but he did not state whether or not he would see Dr. Miriani. Instead, Cloutier reiterated "[m]y condition grounds me from flying until the FAA approves my return" and detailed the steps that would need to be taken before he obtained FAA approval. *Id.* at 1-2. Cloutier then noted that he would be happy to help with any of GoJet's pilot recruiting efforts that

might be coming up.  Briner responded by e-mail later that evening to inform Cloutier

that he failed to respond to his question by the deadline.  On the morning of June 26,

Briner appears to have forwarded Cloutier's June 25 e-mail to Ryan and Bratcher, along

with the following message:

> I do not want you to reach out to this man again either via phone or e-mail.
> Let Randy [Bratcher] know the instant you are back in the office if he calls
> or sends an e-mail, so we can all discuss.  After his FML ends, our intent
> is to terminate his employment for noncompliance with the law.

Pl.'s Resp., Ex. 1.

Cloutier wrote back to Briner via e-mail on June 26.  He stated that he had "no

problem at all following what the contract says in paragraph 22A."  Cloutier Dep., Ex. 9

at 1.  Cloutier went on to state that the issue was "premature"; he could not return to

work on August 1 because he needed to be on the Metformin for at least sixty days

before he could get the necessary testing, and the results would have to be evaluated

by the FAA Aerospace Medical Certification Division before an FAA medical examiner

could issue him a first class medical certificate.  *Id.*  Cloutier estimated that the process

would take "about 2 more months minimum," and stated that only once that process

was complete would it be time to consider the application of Section 22A of the CBA.

*Id.*

At the end of July, crew scheduling contacted Cloutier regarding whether he

would be able to fly as of August 1.  Cloutier told them he would not be able to get his

first class medical certificate until the end of August or early September.  On July 31,

Cloutier e-mailed Ryan from his misterata@aol.com address to confirm that he hoped to

be back near the end of August.  Cloutier testified that, around 5:00 p.m. on August 1,

he checked his misterata@aol.com inbox for a response from Ryan, but he did not see

one. Approximately an hour and a half later, Ryan sent a response to Cloutier's misterata@aol.com address. In this e-mail, Ryan explained to Cloutier that, "[b]ecause you are requesting an extension of your FMLA, we will need re-certification FMLA paperwork to approve the extension." Cloutier Dep., Ex. 10. She requested that Cloutier provide her with the FMLA re-certification paperwork "no later than 5 p.m. CST on August 15, 2014." *Id.*

Cloutier did not submit his FMLA re-certification paperwork by August 15. He testified that he did not see or read Ryan's e-mail until August 19 and that he did not remember checking his misterata@aol.com inbox at any time between around 5:00 p.m. on August 1 and August 19. Cloutier explained that he went for long periods of time without checking that e-mail address "because it's all junk mail. It's usually nothing significant."[1] Cloutier Dep. at 163:10-163:12. On August 19, Cloutier responded to Ryan's e-mail, explaining that he "just saw" it and he would get her the requested documents in a few minutes. Cloutier Dep., Ex. 11. On August 21, Cloutier e-mailed Ryan again to let her know that he was still waiting for his doctor to fill out the FMLA recertification paperwork; he also noted that the FAA had all his testing results and that he did not think it would be long before the agency approved his medical certificate.

Cloutier submitted his FMLA recertification paperwork to GoJet on August 25, 2014. By then, it was too late. Bratcher sent out a "termination notification" regarding Cloutier on August 16; he changed it to a "resignation notification" on August 17. Pl.'s Resp., Exs. 26-27. An employee status form dated August 18, 2014 reports that GoJet

---

[1] Cloutier did, however, exchange e-mails with Paul Hart, the newly elected union steward, from his misterata@aol.com address during this time period; Cloutier sent e-mails to Hart from that account on August 10, 13, and 14. *See* Cloutier Dep., Ex. 18.

considered Cloutier to have resigned on August 15 due to his failure to return from FMLA leave. Def.'s SUMF, Ex. A (Bratcher Dep.), Ex. 4 at GO JET 000129. And, in an August 22, 2014 letter, Bratcher finally informed Cloutier, "Your voluntary resignation without notice from employment with GoJet Airlines was processed on August 15, 2014 for failure to return from leave." Bratcher Dep., Ex. 3.

Cloutier filed an EEOC charge in September 2014. He alleged that GoJet discriminated against him on the basis of age and disability (diabetes) and retaliated against him for engaging in protected activity. He also filed a union grievance against GoJet in October 2014, alleging violations of the CBA, the FMLA, and the ADA. In November 2015, Cloutier filed suit against GoJet and its holding company, Trans States Holdings, Inc.,[2] in the Circuit Court of Cook County, Illinois, alleging the following violations of the FMLA (counts 1-11), ADA (count 12), and Age Discrimination in Employment Act (ADEA) (count 13). The complaint describes these as follows:

1. FMLA interference – by terminating plaintiff from his job

2. FMLA interference – by only authorizing FMLA requested leave in an amount less than the minimum time that would be required before Cloutier could legally return to work

3. FMLA interference – by requiring medical certification sooner than the minimum allotted time under the law

4. FMLA interference – by failing to provide plaintiff with the required notice of possible consequences when requesting certification

5. FMLA interference – by failing to provide plaintiff with the required 'designation notice' and 'eligibility notices'

6. FMLA interference – by demanding a re-certification when defendants knew that there had been no change in the status of Captain Cloutier

_____

[2] Cloutier stipulated to the dismissal of Trans States Holdings in April 2017. *See* dkt. no. 77.

in violation of the FMLA

7. FMLA interference – by demanding the return of the illegally requested recertification after only 13 days when under the FMLA, even if the request was proper, the demand can be required to be returned no less than 15 days later

8. FMLA interference – by failing to provide plaintiff with the required notice of possible consequences when requesting the re-certification

9. FMLA interference – defendants['] demand that Captain Cloutier go to Saint Louis and be seen by their doctor before they would allow him to return to work was in direct violation of the FMLA

10. FMLA retaliation – by terminating Captain Cloutier in retaliation for his exercising his FMLA rights

11. FMLA interference – by terminating Captain Cloutier [sic] and his family's medical insurance on 7/31/2014

12. Disability discrimination – violation of the ADA as amended

13. Age discrimination – violation of ADEA

Compl. at 7-22. GoJet removed the case to federal court in January 2016, and counts 9 and 13 of the complaint have since been dismissed. *See Cloutier v. Trans States Holdings, Inc.*, No. 16 C 1146, 2016 WL 3181708 (N.D. Ill. June 8, 2016); dkt. no. 97 (Stipulation of Dismissal of Count XIII without Prejudice).

GoJet has moved for summary judgment on the remaining counts. GoJet argues that Cloutier's ADA discrimination claim fails because (1) he cannot establish that he is a qualified individual with a disability within the meaning of the ADA, (2) he cannot show that his disability was a but-for cause of his termination, and (3) he failed to participate in an interactive process with GoJet to find a reasonable accommodation for him while he was grounded from flying. GoJet also contends that Cloutier's FMLA claims fail as a matter of law because he was unable to return to work twelve weeks after his FMLA

leave began; according to GoJet, this means Cloutier is not protected under the FMLA. Additionally, GoJet argues that summary judgment is warranted on Cloutier's FMLA interference claims because he did not provide GoJet with adequate notice of his need to take FMLA leave.

GoJet also makes a number of arguments specific to particular counts in the complaint. First, GoJet asserts that counts 1 and 10 (FMLA interference and retaliation claims based on Cloutier's termination) should be dismissed because Cloutier was terminated for failure to submit his FMLA recertification paperwork by August 15, 2014 or return to work; GoJet argues that Cloutier cannot establish that his termination constituted interference or retaliation under the FMLA. Next, GoJet contends that summary judgment is warranted on count 11 (cancellation of Cloutier's medical insurance as of July 31, 2014) because Cloutier's protected leave ended on that date, due to his failure to timely submit an FMLA recertification form. Additionally, GoJet asserts that the Court should grant summary judgment on counts 3, 4, 5, 7, and 8 because Cloutier was not prejudiced by those alleged procedural violations of the FMLA. Finally, GoJet argues that counts 2 and 6 (relating to GoJet's request that Cloutier obtain FMLA recertification to extend his leave beyond July 31, 2014) fail as a matter of law because GoJet was entitled to rely on Dr. Pop's initial FMLA certification, which indicated Cloutier would be incapacitated only through July 31.

Although Cloutier did not move for summary judgment on any of his claims, he argues in his response to GoJet's motion that the Court can and should grant summary judgment in his favor on the remaining FMLA interference claims (counts 1-8 and 11) as

well as the ADA failure-to-accommodate claim.[3]  The Court declines Cloutier's invitation to grant summary judgment in his favor; as should be evident from the discussion below, a grant of summary judgment in favor of Cloutier on either claim is unwarranted.

## Discussion

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the Court construes factual disputes and draws reasonable inferences in favor of the nonmoving party.  *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895 (7th Cir. 2016).  Nonetheless, the nonmoving party cannot survive summary judgment simply by resting on the pleadings; it must set forth "specific facts" that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Mere speculation will not create a genuine issue of fact.  *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001).

## A.    ADA claims (count 12)

The ADA prohibits an employer from discriminating against a "qualified individual

---

[3] Cloutier states the following in a footnote on the first page of his response brief:  "As explained more fully herein, Cloutier is seeking summary judgment on some, but not all, of his FMLA interference counts in the Complaint.  He is not contesting Defendant's motion for summary judgment as it relates to Counts III (regarding medical certification) and VI (Re-certification when there was no change in status)."  Pl.'s Resp. at 1. Although this suggests an intent to abandon counts 3 and 6, the response brief goes on to characterize the violation alleged in count 3 as a "key violation[]" and to explain how Cloutier was harmed by it.  *See id.* at 22-25.  GoJet states in its reply brief that Cloutier "does not dispute that summary judgment is appropriate as to Counts III and VI," Def.'s Reply at 11, but it goes on to address the merits of Cloutier's argument with respect to Count 3.  *Id.* at 13-14.  The Court therefore addresses counts 3 and 6 on the merits.

on the basis of disability." 42 U.S.C. § 12112(a). To defeat summary judgment on an ADA discrimination claim that alleges disparate treatment, a plaintiff must point to evidence sufficient to establish that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) he suffered an adverse employment decision as a result of his disability. *Guzman v. Brown County*, 884 F.3d 633, 641 (7th Cir. 2018). Under the ADA, discrimination is not limited to disparate treatment; it also includes an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless the employer can demonstrate that the accommodation would impose an "undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A); *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018). To prevail on a failure-to-accommodate claim, a plaintiff must show that (1) he is a qualified individual with a disability; (2) his employer was aware of his disability; and (3) his employer failed to reasonably accommodate his disability. *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 682 (7th Cir. 2014).

Cloutier's ADA discrimination claim alleges both that he experienced disparate treatment because of his disability (diabetes) and that GoJet failed to accommodate his disability. GoJet first argues that Cloutier cannot show that he is a qualified individual with a disability because he experienced only thirst and weight loss as symptoms of untreated diabetes before his diagnosis, and his diabetes has been "well-controlled and

without complications" since he began taking Metformin. [4] Def.'s Mem. in Supp. of Mot. for Summ. J. (Def.'s Mem.) at 7. According to GoJet, this means that Cloutier's diabetes does not substantially limit any major life activities and thus does not qualify as a disability under the ADA. GoJet also points out that Cloutier's diabetes itself did not impair his ability to work as a pilot; instead, it was the FAA's requirement that pilots taking Metformin obtain a new medical certificate after being on the medication for sixty days that prevented him from flying. GoJet further argues that, to the extent that Cloutier's diabetes indirectly rendered him unable to work as a commercial airline pilot, his inability to work was only temporary, and he was only limited in his ability to perform that specific job—it did not substantially limit his ability to work in general. Cloutier responds that GoJet relies on outdated ADA case law and that the 2008 Amendments to the ADA and implementing regulations firmly establish that diabetes is a disability within the meaning of the Act because it is an impairment that substantially limits endocrine function.

An individual has a disability for purposes of the ADA if she has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Prior to the passage of the ADA Amendments Act of 2008 (ADAAA), courts applied a more stringent standard in determining whether an impairment substantially limited a major life activity such that it constituted a disability under the ADA. *See, e.g.*, *Scheerer v. Potter*, 443 F.3d 916, 920 (7th Cir. 2006) (plaintiff's diabetes did not qualify as a disability because he failed to show "that he was *prevented*

---

[4] Although Cloutier disputes GoJet's contention that his diabetes "did not prevent him from living a normal life and merely required that he take his prescribed medication, exercise more, and eat a healthy diet," he does not appear to deny that his diabetes was well-controlled and without complications. Pl.'s Resp. to Def.'s SUMF ¶ 23.

*from performing*, or was otherwise *severely restricted* in, any major life activities")
(emphasis added).  In passing the ADAAA, however, Congress reaffirmed its
commitment to establishing a "broad scope of protection" under the ADA and expressly
rejected as overly restrictive the Supreme Court's interpretations of what constituted a
disability under the Act.  ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat.
3553 (2008) (noting that as a result of the Supreme Court's decisions in cases like
*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), which
"interpreted the term 'substantially limits' to require a greater degree of limitation than
was intended by Congress," lower courts were defining "disability" too narrowly).  The
ADAAA went into effect on January 1, 2009.  *Id.*

As amended by the ADAAA, the ADA specifically defines "major life activities" to
include "the operation of a major bodily function," which, in turn, includes endocrine
function.  42 U.S.C. § 12102(2)(B).  Additionally, regulations promulgated by the Equal
Employment Opportunity Commission (EEOC) after the passage of the ADAAA state
that, "[c]onsistent with the [ADAAA's] purpose of reinstating a broad scope of protection
under the ADA, the definition of 'disability' in this part shall be construed broadly in favor
of expansive coverage to the maximum extent permitted by the terms of the ADA."  29
C.F.R. § 1630.1(c)(4).  Specifically, the regulations state that "[a]n impairment is a
disability within the meaning of this section if it substantially limits the ability of an
individual to perform a major life activity as compared to most people in the general
population."  *Id.* § 1630.2(j)(1)(ii).  "An impairment need not prevent, or significantly or
severely restrict, the individual from performing a major life activity in order to be
considered substantially limiting."  *Id.*  Although an individualized assessment is

required to determine whether a given impairment substantially limits a major life activity, 29 C.F.R. § 1630.2(j)(iv), "[g]iven their inherent nature," certain types of impairments "will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity." *Id.* § 1630.2(j)(3)(ii). The EEOC has specifically named diabetes as one such impairment, because it necessarily "substantially limits endocrine function." *Id.* § 1630.2(j)(3)(iii). Significantly, the determination of whether an impairment substantially limits a major life activity is to be made "without regard to the ameliorative effects of mitigating measures" such as medication. 42 U.S.C. § 12102(4)(E)(i)(I). Consequently, a number of courts have observed that, under the ADAAA and its implementing regulations, diabetes will generally qualify as a disability for purposes of the Act. *See, e.g.*, *Powell v. Merrick Acad. Charter Sch.*, No. 16CV5315NGGRLM, 2018 WL 1135551, at *5-6 (E.D.N.Y. Feb. 28, 2018); *Hensel v. City of Utica*, No. 615CV0374LEKTWD, 2017 WL 2589355, at *4 (N.D.N.Y. June 14, 2017); *Frazier v. Burwell*, No. 1:14-CV-3529-WBH-JKL, 2016 WL 10650814, at *8 (N.D. Ga. July 15, 2016), *report and recommendation adopted sub nom. TAJUANA FRAZIER, Plaintiff, v. SYLVIA MATTHEWS BURWELL, Defendant* (N.D. Ga. Aug. 2, 2016), *aff'd sub nom. Frazier v. Sec'y, Dep't of Health & Human Servs.*, 710 F. App'x 864 (11th Cir. 2017); *Tadder v. Bd. of Regents of Univ. of Wis. Sys.*, 15 F. Supp. 3d 868, 884 n.9 (W.D. Wis. 2014).

As an initial matter, although Cloutier's diabetes symptoms did not physically prevent him from performing his job as a commercial airline pilot, FAA regulations temporarily prohibited him from doing so solely because he began taking Metformin to treat his diabetes. GoJet's attempt to divorce Cloutier's temporary inability to fly from

his diabetes is unavailing. In any case, Cloutier need not show that his diabetes substantially interferes with his ability to work in order to establish that he has a disability within the meaning of the ADA; he may show that it substantially interferes with another major life activity, such as the functioning of his endocrine system. *See, e.g.*, *Powell*, 2018 WL 1135551, at *6. It is undisputed that Cloutier was diagnosed with diabetes in June 2014 and that he was prescribed Metformin to treat this condition. It is likewise undisputed that, prior to starting the Metformin, Cloutier experienced thirst and weight loss. The Court concludes that a rational trier of fact could find that Cloutier's symptoms—though certainly not the most severe symptoms associated with uncontrolled diabetes—nonetheless serve as an indication that his endocrine function is substantially limited by his diabetes. Because the ADAAA defines "major life activity" to include endocrine function, it follows that a reasonable jury could find that Cloutier's diabetes constitutes a disability within the meaning of the ADA.

GoJet's argument to the contrary relies almost exclusively on cases that either predate the ADAAA or apply the more restrictive pre-ADAAA disability determination standards. *See Price v. Mount Sinai Hosp.*, 458 F. App'x 49, 51 (2d Cir. 2012) (applying the pre-ADAAA version of the law); *Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 n.7 (7th Cir. 2011) (same); *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011) (same); *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 33 n.7 (1st Cir. 2010) (same); *Scheerer v. Potter*, 443 F.3d 916, 920 (7th Cir. 2006) (pre-ADAAA case); *Shultz v. Potter*, 142 F. App'x 598, 599 (3d Cir. 2005) (per curiam) (same); *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1156 (11th Cir. 2005) (same). The remaining district court cases cited by GoJet are likewise unpersuasive because they rely on cases that

apply the pre-ADAAA standard.  *See Gard v. Dooley*, No. 4:14-CV-04023-LLP, 2017 WL 782279, at *4 (D.S.D. Feb. 28, 2017) (relying on cases that either pre-date the ADAAA or apply the pre-ADAAA version of the law for the proposition that "diabetes, even when it requires medication and dietary restrictions, is not necessarily a disability under the ADA"); *Bonds v. S. Health Partners, Inc.*, No. 2:15-CV-209-WOB, 2016 WL 1394528, at *7 (E.D. Ky. Apr. 6, 2016) (relying on an unreported, pre-ADAAA Sixth Circuit case for the proposition that diabetes does not, per se, qualify as a disability under the ADA); *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 611 (W.D.N.Y. 2015) (relying on a Fifth Circuit case that applied the pre-ADAAA version of the law for the proposition that diabetes is not necessarily a disability under the ADA); *Dunbar v. Byars*, No. 2:11-CV-2243-JFA-BHH, 2013 WL 667930, at *3 (D.S.C. Jan. 30, 2013), *report and recommendation adopted,* No. CA 2:11-2243-JFA-BHH, 2013 WL 655913 (D.S.C. Feb. 22, 2013) (relying on an unreported Fourth Circuit case that applied the pre-ADAAA version of the law for the proposition that diabetes is not a per se disability under the ADA).  Because a rational trier of fact could find that Cloutier's diabetes constitutes a disability under the ADA as amended by the ADAAA, the Court denies GoJet's motion for summary judgment on this basis.

### 1.    ADA failure to accommodate

GoJet argues that even if Cloutier can show that he is a qualified individual with a disability for ADA purposes, summary judgment is warranted on his failure-to-accommodate claim because he failed to engage in an interactive process with GoJet to explore the possibility of accommodating him while he was grounded from flying.[5]

---

[5] GoJet does not contend that it was unaware of Cloutier's disability.

Specifically, GoJet contends that it was willing to provide Cloutier with additional leave but his refusal to see the company doctor (or at least to confirm that he would do so) and his failure to timely respond to e-mails or return his FMLA recertification paperwork resulted in a breakdown in the interactive process. Cloutier disputes that he was responsible for the breakdown in communication and instead contends that GoJet never attempted to discuss possible accommodations with him. According to Cloutier, had this breakdown in communication not occurred, the parties would have been able to identify a number of reasonable accommodations for him, to include (1) granting him additional leave after his initial period of FMLA leave expired; (2) allowing him to help with pilot recruiting; and (3) allowing him to help with pilot training.

The burden of exploring possible reasonable accommodations for an employee with a disability typically lies with the employer. *Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005); *see also* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."). If, however, the employee does not attempt to engage in the interactive process or is responsible for a breakdown in that process, the employee may not later claim that his employer failed to accommodate him. *See Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009); *Jackson*, 414 F.3d at 814. If it appears that a breakdown in communication between the parties did occur, it becomes necessary to attempt to "isolate the cause of the breakdown and then assign

responsibility." *Ekstrand*, 583 F.3d at 976 (citation omitted).

In this case, the evidence does not indisputably establish either party's responsibility for the breakdown in communication. On the one hand, Cloutier was undoubtedly slow in responding to e-mails from Briner and Ryan, and he did not submit his FMLA recertification paperwork by the deadline GoJet set for him. Additionally, he indicated to Ryan and Briner that he would be unwilling to see the company doctor when they requested that he do so prior to resuming his flying duties. On the other hand, Cloutier's statement in this regard reasonably could be read as simply indicating that it was premature to discuss this point some two months in advance. And Cloutier informed both Briner and Ryan that he would not be able to resume his pilot duties on August 1 because he was still waiting for the FAA approval, and he did offer to assist with pilot recruiting in the meantime. GoJet does not appear to have considered this suggested accommodation—no one responded to Cloutier's offer. In fact, just one day after Cloutier made that offer, Briner instructed Ryan and Bratcher not to contact Cloutier again (though Ryan did, in fact, continue to have contact with Cloutier, to include contacting him to find out if he would be returning to work on August 1 and requesting that he fill out FMLA recertification paperwork). Viewing the evidence in the light most favorable to Cloutier, a reasonable jury could find that the fault for this breakdown in communication lies with GoJet. Because there is a genuine issue of material fact regarding responsibility for the breakdown of the interactive process, the Court denies GoJet's motion for summary judgment. *See EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 808 (7th Cir. 2005).

In its reply brief, GoJet raises at least three new arguments concerning Cloutier's

failure-to-accommodate claim. First, it contends that the accommodations proposed by Cloutier—temporary placement in a non-flying position as a pilot trainer or recruiter and additional (non-FMLA) leave—are unreasonable because they would violate the collective bargaining agreement. GoJet alternatively suggests that, because the Court would have to interpret the relevant provisions of the CBA in order to determine whether the proposed accommodations violate the agreement, the Railway Labor Act precludes Cloutier from bringing an ADA claim based on those proposed accommodations. GoJet also argues for the first time in its reply brief that it reasonably accommodated Cloutier by granting him FMLA leave through July 31, 2014 and that Cloutier has not met his burden to prove that a further reasonable accommodation was, in fact, available, because he has not produced evidence that he was qualified for a non-flying position or that any such position was vacant at the time in question. GoJet forfeited these arguments for purposes of summary judgment by failing to assert them in its motion for summary judgment and opening brief.[6]  *See, e.g.*, *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").

## 2.    ADA disparate treatment

GoJet also has moved for summary judgment on Cloutier's ADA disparate treatment claim on the ground that he lacks sufficient evidence from which a reasonable

---

[6] The Court's decision to treat these arguments as forfeited is not inconsistent with the decision to address the merits of counts 3 and 6 rather than find that those claims were abandoned by Cloutier. Cloutier had no opportunity to address the arguments that GoJet raised for the first time in its reply brief. By contrast, GoJet had a full and fair opportunity to respond in its reply brief to Cloutier's argument regarding count 3.

jury could find that his diabetes was a but-for cause of his termination.[7]  GoJet contends that Cloutier was fired because he failed to return to work after the expiration of his FMLA leave or return the FMLA recertification paperwork in a timely manner and because of his apparent unwillingness to cooperate with GoJet's request that he see the company's own medical examiner before returning to work.

GoJet also makes much of the fact that Cloutier stated he believed he was terminated because Briner was angry that he was refusing to see the company doctor and because GoJet was concerned about potentially high medical costs Cloutier could cause the company to incur.  GoJet contends that his testimony reveals that even Cloutier does not believe that he was terminated because of his disability.  *See* Def.'s Mem. at 10; Def.'s Reply at 9.  So what?  Cloutier's opinion regarding GoJet's motivations is likely not even admissible—what foundation does one layperson have to opine regarding another's intention?—and it certainly does not carry the day.[8]

That aside, GoJet also argues that even if it did, as Cloutier suggests, terminate him out of concern that his diabetes would result in high medical costs or because he lacked a current medical certificate, he still cannot show that he was terminated because of his disability rather than because of a collateral consequence of his disability.  For his part, Cloutier contends that "but-for" cause need not be the sole

---

[7] The second element of the Cloutier's ADA disparate treatment claim—that he was qualified to perform the essential functions of his job with or without reasonable accommodation—is not in dispute.

[8] In any case, it is simply not true that Cloutier did not believe he was terminated because of his disability.  In addition to noting that he thought concerns about high medical costs and his challenge to the request to see the company doctor might have served as possible reasons for his termination, Cloutier specifically testified during his deposition that he believed his diabetes was a "major factor" in his termination.  *See* Cloutier Dep. at 246:22-247:1.

cause, and that Briner's June 26 e-mail, which expresses an intent to fire Cloutier after his FMLA leave ends, is evidence of a discriminatory motive.

In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit clarified that the proper way to assess employment discrimination claims on summary judgment is to ask whether the evidence, considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor [including disability] caused the discharge or other adverse employment action." *Id.* at 765; *see also Deacon v. Peninsula Chicago, LLC*, No. 16-CV-1464, 2017 WL 3531518, at *9 (N.D. Ill. Aug. 17, 2017) (applying *Ortiz* to ADA disparate treatment claim).

GoJet contends that it had two legitimate and nondiscriminatory reasons for terminating Cloutier:  he failed to either return to work or submit his FMLA recertification paperwork by the deadline, and he was "insubordinat[e] and uncooperative throughout the leave process" because he was unresponsive to e-mails and indicated that he would not see the company doctor as requested.  Def.'s Mem. at 9.  The problem with the first explanation, which was the one listed in the August 18 employee status form and given to Cloutier for his termination, is that Cloutier's purported failures occurred over a month *after* Briner wrote that he intended to terminate Cloutier.  Briner could not have known, on June 26, that Cloutier would fail to timely submit his FMLA recertification paperwork.  As for GoJet's second explanation, it was not mentioned in the letter to Cloutier informing him that the company considered him to have "voluntarily resigned" or in the August 18 employee status form.  The Seventh Circuit has long held that a factfinder "can reasonably infer pretext from an employer's shifting or inconsistent explanations for

the challenged employment decision." *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003).

In addition to GoJet's shifting explanations for his termination, Cloutier also points to Briner's June 26 e-mail to Bratcher and Ryan—in which he declares his intent "to terminate [Cloutier's] employment for noncompliance with the law" once he returns from FMLA leave—as evidence of a discriminatory motive. Pl.'s Resp., Ex. 1. GoJet argues that Briner's June 26 e-mail expresses no animus toward Cloutier because of his disability but instead reflects Briner's belief that Cloutier's refusal to see the company doctor violated the law. A reasonable jury could see it differently. Briner appears to have sent the June 26 e-mail in reaction to a June 25 e-mail from Cloutier in which he asserts "my condition grounds me from flying until the FAA approves my return" and offers to help with pilot recruiting in the meantime. *Id*. Because Briner's apparent decision to fire Cloutier may be interpreted as a direct reaction to Cloutier's e-mail—and because less than twenty-four hours passed between the two messages—a reasonable factfinder could conclude that Briner decided to terminate Cloutier because he had a disability for which he sought a temporary accommodation. *See, e.g.*, *Morgan v. SVT, LLC*, 724 F.3d 990, 998 (7th Cir. 2013) (although suspicious timing alone is rarely enough to survive summary judgment, it is relevant evidence that can raise a genuine issue of fact about discrimination). The Court therefore denies GoJet's motion for summary judgment on Cloutier's ADA disparate treatment claim.[9]

---

[9] Although, as GoJet points out, Cloutier has not identified any specific non-disabled comparators who were treated more favorably than he, he is not required to do so to survive summary judgment. Post-*Ortiz*, it is clear that what matters is whether the evidence, considered as a whole, would permit a rational trier of fact to conclude that

**B.     FMLA claims (counts 1-8, 10-11)**

Under the FMLA, an eligible employee who has a serious health condition that renders him unable to perform his job functions is entitled to twelve workweeks of leave during any twelve-month period. *Guzman*, 884 F.3d at 638 (citing 29 U.S.C. § 2612(a)(1)(D)). The FMLA prohibits an employer from interfering with an eligible employee's attempt to exercise his rights under the FMLA and from retaliating against an employee for exercising his FMLA rights. *Id.* (citing 29 U.S.C. § 2615). To prevail on a claim of FMLA interference, a plaintiff must show that:

> (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied [or interfered with] . . . FMLA benefits to which he was entitled.

*Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015) (alterations in original) (citation omitted). To prevail on an FMLA retaliation claim, a plaintiff must establish that he suffered an adverse employment action because he requested or took FMLA leave. *Guzman*, 884 F.3d at 640.

GoJet first contends that Cloutier is not protected by the FMLA because the FMLA only provides for twelve weeks of leave, and Cloutier was grounded from flying for more than twelve weeks. Specifically, GoJet argues that because Cloutier's twelve weeks of leave would have run out on September 3, 2014, but he did not receive his new FAA medical certificate until September 9, GoJet had no obligation under the FMLA to reinstate him.

Though it may be true that the FMLA does not require GoJet to reinstate Cloutier

---

his disability caused his termination. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017)    .

after the expiration of his twelve weeks of FMLA leave, the cases that GoJet cites do not support the proposition that Cloutier's inability to return to his job by September 3 retroactively stripped him of the FMLA protections to which he was entitled for those first twelve weeks. In *James v. Hyatt Regency Chicago*, 707 F.3d 775 (7th Cir. 2013), the plaintiff alleged that his employer interfered with his FMLA rights by not reinstating him to his position promptly after he submitted a doctor's note stating that he would soon be released to "light duty." *Id.* at 781. The Seventh Circuit affirmed the district court's grant of summary judgment to the defendant because the plaintiff's doctor's note indicated that, at the time in question, he remained restricted to light duty, and the FMLA does not obligate employers to reinstate an employee who is unable to perform the essential functions of his job. *Id. James* does not hold that an employee who is unable to return to work after twelve weeks of FMLA leave may not bring a claim for alleged FMLA violations that occurred within the twelve-week period. In *Breneisen v. Motorola, Inc.*, 656 F.3d 701 (7th Cir. 2011), also cited by GoJet, the Seventh Circuit held that an employee was not subject to FMLA protection for events that occurred *after* he exhausted his full twelve weeks of leave. *Id.* at 705. The court explained that "[s]ince the retaliatory conduct which [the plaintiff] alleges occurred . . . when he was *no longer* subject to the FMLA's clearly defined protections, he is not entitled to recovery for an FMLA violation." *Id.* (emphasis added); *see also LaPorte v. Bureau Veritas N. Am., Inc.*, No. 12 C 9543, 2015 WL 425825, at *10-11 (N.D. Ill. Jan. 30, 2015) (granting summary judgment for defendant on FMLA claim where conduct in question occurred after plaintiff had exhausted his twelve weeks of FMLA leave). In this case, by contrast, all of the events on which Cloutier bases his FMLA claims, including his termination,

occurred well before his twelve weeks of FMLA leave would have run out.

Another case cited by GoJet is more analogous to the case at hand. In *Franzen v. Ellis Corp.*, 543 F.3d 420 (7th Cir. 2008), the plaintiff alleged that his employer interfered with his FMLA rights by terminating him prior to the date by which he would have exhausted his twelve weeks of FMLA leave. *Id.* at 426. Although the Seventh Circuit upheld the district court's dismissal of the plaintiff's FMLA interference claim because he had not shown that he was able to return to work twelve weeks from when his FMLA leave would have commenced, it did not do so based on a conclusion that the plaintiff's inability to return to work after twelve weeks meant he was not entitled to any protection under the FMLA. *Id.* at 426-30. In fact, the court indicated that the plaintiff's employment *was* protected by the FMLA for the first twelve weeks that he was unable to work. *See id.* at 428 ("Mr. Franzen's only plausible argument with respect to damages involves the twelve-week period in which Mr. Franzen's employment was protected under the FMLA."). Nonetheless, it upheld the district court's dismissal on the ground that the plaintiff's inability to work for over twelve weeks meant he had no right to reinstatement under the FMLA at the end of that twelve-week period and therefore could not prove that he was entitled to damages under the statute. *Id.* at 426; *see also Kirchner v. Sunbelt Rentals, Inc.*, No. 09 C 7478, 2011 WL 1303997, at *6-9 (N.D. Ill. Apr. 1, 2011) (denying defendant's motion for summary judgment on FMLA interference and retaliation claims despite conclusion that plaintiff was not entitled to reinstatement or damages for lost wages because he would not have been able to return to work at the completion of a twelve-week FMLA leave).

The difference between this case and *Franzen* is that in *Franzen*, the plaintiff did

not allege that he had been prejudiced by other violations of the FMLA prior to his termination.  As explained further in Sections B.2.a and B.2.c of this opinion, there are genuine factual disputes regarding whether Cloutier would have been terminated or remained ineligible to fly beyond twelve weeks if GoJet had given him fifteen days to submit his original FMLA certification form and provided him with a FMLA designation sheet informing him of the amount of leave he had been granted, as the law required.  The Court therefore overrules GoJet's argument that summary judgment is warranted on all of Cloutier's FMLA interference claims simply because he was not able to resume flying until shortly after his twelve weeks of FMLA leave would have expired.

### 1.    FMLA retaliation claim (count 10)

GoJet also contends that summary judgment is warranted on Cloutier's FMLA retaliation claim.  GoJet argues, as it did with respect to Cloutier's ADA discrimination claim, that it legitimately terminated Cloutier's employment "for his failure to recertify [his FMLA leave] or return to work, amidst his continued lack of cooperation and unresponsiveness."  Def.'s Mem. at 20.  According to GoJet, the temporal proximity between Cloutier's FMLA leave and his termination, along with Cloutier's unsupported claim that GoJet also terminated another employee for use of FMLA leave, is insufficient to create a genuine issue of material fact.  Cloutier counters that Briner's June 26 e-mail expressing an intent to fire Cloutier once his FMLA leave was up is direct evidence of his retaliatory intent.  Cloutier also argues, once again, that a reasonable factfinder could conclude that GoJet's given reasons for his termination are pretextual because they are inconsistent and have shifted over time.

To survive summary judgment on a claim of retaliation under the FMLA, a plaintiff

must point to evidence that supports a reasonable inference that he was fired because he requested or took protected leave. *Tibbs v. Admin. Office of the Ill. Courts*, 860 F.3d 502, 505 (7th Cir. 2017).

GoJet asserts that its attempt to have Cloutier return to work on August 1 undercuts the contention that it fired him in retaliation for taking FMLA leave. GoJet further contends that approximately twenty pilots took FMLA leave "without issue or termination," Def.'s SUMF ¶ 7, but Cloutier disputes that number and notes that at least two pilots have filed lawsuits against GoJet for alleged FMLA violations that occurred during the same period. [10] Pl.'s Resp. to Def.'s SUMF ¶ 7. As for GoJet's proffered justifications for terminating Cloutier, they are not, as Cloutier suggests, internally inconsistent. Nonetheless, in light of Briner's June 26 e-mail and the way Cloutier's separation was actually characterized when it took place a month and a half later, for the reasons already outlined in the Court's discussion of Cloutier's ADA disparate impact claim, a rational trier of fact could conclude that these justifications are pretextual. Cloutier first informed GoJet of his need to take leave on June 10, and he submitted his FMLA leave paperwork on June 17. On June 25, Cloutier indicated in an e-mail to Briner that he would not be able to fly until the FAA approved his return, which implied that he would either need FMLA leave beyond July 31 or another reasonable accommodation while he was unable to fly. On June 26, apparently in reaction to

---

[10] Cloutier also has identified another pilot who he believes was terminated in retaliation for taking FMLA leave, but because he offers no admissible evidence on this point, the Court will not take it into consideration on the present motion. *See MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment.").

Cloutier's June 25 e-mail, Briner sent the e-mail to Ryan and Bratcher expressing his intent to fire Cloutier after his FMLA leave ended. Viewing the evidence as a whole in the light most favorable to Cloutier, just as Briner's e-mail could be interpreted as evidence of discrimination in the ADA disparate treatment context, it likewise could support a reasonable inference that he decided to terminate Cloutier in retaliation for exercising his right to take FMLA leave. Accordingly, summary judgment is not warranted on Cloutier's FMLA retaliation claim.

### 2. FMLA interference claims (counts 1-8, 11)

GoJet contends that summary judgment is warranted on all of Cloutier's FMLA interference claims because he failed to provide the company sufficient notice of his need to take FMLA leave. *See Guzman*, 884 F.3d at 638 (to prevail on FMLA interference claim, plaintiff must establish that he provided sufficient notice of his intent to take leave). Cloutier argues that he did provide sufficient notice because he notified the company of his intent to take leave as soon as he learned that his diagnosis might affect his work.

FMLA regulations provide that "[w]hen the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). "It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave." *Id.* If an employee fails to comply with his employer's notice requirements, and the failure is not otherwise justified by unusual circumstances, "FMLA-protected leave may be delayed or denied." *Id.* §

825.303(c).  According to GoJet's FMLA policy, "[i]n cases where the need for leave cannot be anticipated thirty (30) days in advance, the employee must give notice of the need for leave as soon as practicable (meaning the same or next business day)." Cloutier Dep., Ex. 5 at GO JET 000496.

GoJet argues that the undisputed facts show Cloutier knew he would need to take leave on June 2, 2014, the day he received his diabetes diagnosis.  According to GoJet, Cloutier did not give notice of his need for leave as soon as practicable because he waited until June 10 to inform the company (via his call to the scheduling department) that he could not fly and until June 12 to e-mail Ryan about taking leave.  It is undisputed that Dr. Pop informed Cloutier of his diabetes diagnosis and prescribed him Metformin on June 2, 2014.  It is also undisputed that Dr. Pop told Cloutier on June 2 that he should not fly.  What is not clear, however, is whether Cloutier understood on June 2 that FAA regulations prohibited him from flying for the first sixty days he was taking Metformin.  As previously explained, Cloutier testified during his deposition that he contacted Dr. Kitslaar, the FAA medical examiner, after learning of his diabetes diagnosis and that Dr. Kitslaar e-mailed him the FAA protocol for pilots taking Metformin.  Although Cloutier testified during his deposition that he "probably" contacted Dr. Kitslaar about his diagnosis on June 3, he later stated during the same deposition that he might not have called him until after his June 10 appointment with Dr. Pop, after he finished training in the simulator.  *See* Cloutier Dep. at 97:17-98:13; *see also id.* at 132:9-132:16 ("Q:  Is there any reason you didn't advise anybody at GoJet on June 3rd that you had been diagnosed with diabetes . . . ? A:  Well, I wasn't scheduled to fly, I was going to sim, and I didn't know the – exactly what this all meant, so I needed to

consult with the FAA and get it all figured out.").

If Cloutier did not learn of the FAA protocol until June 10, then his notice to the company of his need to take leave was timely under GoJet's policies. Because there exists a genuine factual dispute regarding when Cloutier became aware that he would need to take leave, GoJet is not entitled to summary judgment on Cloutier's FMLA interference claims on the basis of failure to provide sufficient notice.

### a. Counts 3, 4, 5, 7, and 8

Cloutier has alleged that GoJet failed to comply with a number of its procedural obligations under the FMLA and that these violations constitute FMLA interference. As GoJet points out, however, a plaintiff is not entitled to relief under the FMLA unless he was prejudiced by the violation at issue. *Harrell v. U.S. Postal Serv.*, 445 F.3d 913, 928 (7th Cir. 2006) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). GoJet argues that the Court should enter summary judgment in its favor on counts 3, 4, 5, 7, and 8 because Cloutier was not prejudiced by the FMLA violations alleged in those claims. Cloutier maintains that he was, in fact, harmed by the violations and is therefore entitled to the relief sought.[11]

If an employer requests a doctor's certification of the need to take FMLA leave, it must give the employee a minimum of fifteen days to provide the certification. *Rager v. Dade Behring, Inc.*, 210 F.3d 776, 777 (7th Cir. 2000) (citing 29 C.F.R. § 825.305). When requesting FMLA certification from an employee, the employer must advise the employee of the consequences of a failure to provide adequate certification. 29 C.F.R.

---

[11] Cloutier also argues that he should have been given fifteen days from when he actually read Ryan's August 1 e-mail requesting recertification because that is when he "received notice" of the request for recertification. This argument lacks merit, and neither 29 C.F.R. § 825.308(d) nor the cases Cloutier cites support such a contention.

§ 825.305(d). Additionally, whenever an employer "acquires knowledge that an employee's leave may be for an FMLA-qualifying reason," it must notify the employee of his eligibility to take FMLA leave and provide written notice of the employee's specific expectations and obligations under the FMLA, as well as any consequences of a failure to meet those obligations. *Id.* § 825.300(b)-(c).

The Court agrees that Cloutier cannot show he was prejudiced by the FMLA violations alleged in counts 4 (failure to provide notice of consequences of non-compliance with initial FMLA certification request), 7 (failure to provide a minimum of fifteen days to return requested FMLA recertification), and 8 (failure to provide notice of consequences of non-compliance with FMLA recertification request). Cloutier was not harmed by GoJet's alleged failure to notify him in writing of the possible consequences of failing to timely return the initial FMLA certification paperwork: he returned the paperwork by the deadline, and GoJet granted him FMLA leave, backdated to June 11, 2014. Nor was Cloutier prejudiced by GoJet's failure to give him at least fifteen days to submit the FMLA recertification paperwork. It is undisputed that Ryan e-mailed Cloutier the request for FMLA recertification on August 1, 2014. It is also undisputed that Cloutier did not read that e-mail until August 19. Even if GoJet had given Cloutier the full fifteen days to return the recertification, he still would have been required to return it before August 19. Cloutier would not have done so, given the fact that he did not read the e-mail requesting recertification until that date. The same goes for any failure to notify Cloutier of the consequences of failing to timely return his recertification—it would not have made any difference, because Cloutier did not become aware of GoJet's recertification request until after the deadline to return the paperwork had passed. The

Court therefore grants GoJet's motion for summary judgment on counts 4, 7, and 8.

Counts 3 (failure to provide a minimum of fifteen days to return requested FMLA certification) and 5 (failure to provide required FMLA designation and eligibility notices) are not as straightforward.  GoJet argues that Cloutier did not suffer any prejudice from being given less than fifteen days to submit his initial FMLA certification because he still managed to submit it by the deadline, and his leave was approved.  Cloutier alleges that he was harmed because if he had been given the full fifteen days to submit his initial certification, he might have reviewed the certification more carefully and had Dr. Pop adjust his anticipated return-to-work date beyond July 31, 2014.

Although the FMLA certification form did state that "[y]our employer must give you at least 15 calendar days to return this form," in Ryan's June 12 e-mail to Cloutier, she requested that he return the certification just five days later, by June 17.  Cloutier Dep., Ex. 8.  Cloutier testified that he "rushed" to get the certification back to Ryan by the June 17 deadline.  Cloutier Dep. at 118:5-118:15.  He stated that he "did not carefully read everything," because he wanted to get the certification submitted to GoJet as quickly as possible, but if he had "more time [to] read stuff, [he] might have looked at things more carefully."  *Id.* at 118:9, 119:17-119:18.  Specifically, Cloutier testified that as soon as he received the completed certification form, he sent it on to Ryan.  He said that if he had reviewed the form before sending it to her, he possibly would have had the July 31, 2014 date extended to "better reflect" the timetable for the FAA testing and clearance process.  *Id.* at 120:14-120:19.  Cloutier argues that GoJet would have approved an initial period of FMLA leave into late August if that was what his certification sought, and that if GoJet had approved his leave through late August, it is

not likely that the company would have terminated him in mid-August.  This is sufficient to permit a reasonable jury to find that Cloutier was prejudiced by being given less than fifteen days to review and submit his FMLA certification paperwork.  Accordingly, the Court denies summary judgment on count 3.

With respect to count 5, Cloutier argues that because GoJet never provided him with an FMLA designation notice for his first period of leave, he believed that leave had been approved for a period extending until he received a new FAA medical certificate. *See* Pl.'s Resp., Ex. 2 at 268:18-268:20.  An FMLA designation notice states whether an employee's FMLA leave has been approved and specifically informs the employee of amount of leave that that will be counted against his FMLA leave entitlement.  *See* Cloutier Dep., Ex. 5 at GO JET 000514.  GoJet concedes that it never sent Cloutier a designation notice.  Nonetheless, it is GoJet's position that Cloutier knew or should have known that his FMLA leave had only been approved through July 31, 2014 because Ryan's June 17 e-mail to Cloutier specifically stated "I will have your schedule updated for FMLA leave from 6/11/14 – 7/31/14."  Pl.'s Resp., Ex. 5.  Cloutier testified that he understood that e-mail to mean only that Ryan had updated his schedule through the end of July to reflect that he was out on FMLA leave—not that his FMLA leave was approved only through July 31.  *See* Pl.'s Resp., Ex. 2 at 267:2-267:5, 268:18-268:22.  Thus, Cloutier argues that he was "operating based on an incorrect timeline due to a lack of information."  Pl.'s Resp. at 25.  Cloutier contends that if he had been provided with sufficient notice as to when he was expected to return to work, he would have made sure to complete the FAA medical certification process earlier.  GoJet responds that this is unsupported speculation; it asserts that Cloutier would not have been able to

speed up the FAA's process. Cloutier testified, however, that he "probably could have had some of [the required] tests done a few days earlier and gotten the paperwork a few days earlier to the FAA." Pl.'s Resp., Ex. 2 at 196:11-196:15. He further stated that because he "did not know of any limitations from the FMLA or what the requirements were, . . . [he] did not put a rush on things." *Id.* 196:16-196:18. Cloutier received his new FAA medical certificate on September 9, 2014, less than a week after his twelve weeks of FMLA leave would have run out if he had been granted the full twelve weeks of leave in the first place.

The Court notes that Ryan's June 18 e-mail to Cloutier further indicated that his FMLA leave was not approved beyond July 31, 2014, because it asked "[a]re you going to see Dr. Miriani as directed, *prior to your return from FMLA on 8/1/14*?" Cloutier Dep., Ex. 9 at 3 (emphasis added). Nonetheless, drawing all reasonable inferences in Cloutier's favor, the Court concludes that on this claim, too, he has—if perhaps just barely—presented sufficient evidence to create a genuine factual dispute on the question of prejudice. A reasonable factfinder could conclude that if Cloutier had received the required FMLA designation notice, he would have understood that GoJet had only granted him FMLA leave through July 31, 2014, he would have sent his tests and paperwork to the FAA sooner, and he would have received his new medical certificate prior to September 3, 2014. The Court therefore denies summary judgment on count 5.

### b. Counts 2 and 6

GoJet contends that summary judgment is warranted on counts 2 (authorizing less FMLA leave than the minimum amount of time Cloutier needed to complete the

FAA clearance process) and 6 (requiring FMLA recertification despite knowledge that Cloutier's status remained the same) because it was entitled to rely on Dr. Pop's certification, which indicated Cloutier would need leave only through July 31, 2014. *See* 29 C.F.R. § 825.305(a) (an employer may require that FMLA leave be supported by a certification issued by the employee's health care provider). After that date, GoJet was entitled to request recertification before approving additional FMLA leave. *See* 29 C.F.R. § 825.308(b) ("If the medical certification indicates that the minimum duration of the condition is more than 30 days, an employer must wait until that minimum duration expires before requesting a recertification . . . ."). The Court agrees—and Cloutier does not appear to contest—that summary judgment is warranted on these claims.

### c. Counts 1 and 11

Finally, GoJet argues that summary judgment is warranted on count 11 (cancellation of Cloutier's medical insurance as of July 31, 2014) because, in light of Cloutier's failure to timely submit an FMLA recertification, he did not have protected leave after July 31. GoJet also contends that summary judgment is warranted on count 1 of Cloutier's complaint (termination as FMLA interference) because, as previously explained, the FMLA does not require an employer to reinstate an employee to his former position if that employee is unable to return to work after twelve weeks of FMLA leave. *See Breneisen*, 656 F.3d at 705.

If termination of his job and health care were the only FMLA violations claimed by Cloutier, the Court would be more inclined to agree with GoJet. But in this case, as the Court has discussed, Cloutier has alleged that he would have been able to obtain his FAA medical certificate and return to work before twelve weeks elapsed and that he

would not have been terminated if GoJet had not committed a number of additional FMLA violations prior to his termination. The Court has determined that Cloutier has presented sufficient evidence to survive summary judgment on three of those claims (counts 3, 5, and 10). Because the propriety of Cloutier's termination and the cancellation of his health care coverage is necessarily tied to those three claims, all of which present issues of fact that must be decided by a jury, the Court denies summary judgment on counts 1 and 11 as well.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment on counts 2, 4, 6, 7, and 8, but denies summary judgment on counts 1, 3, 5, 10, 11, and 12 [dkt. no. 100]. The case is set for a status hearing on May 23, 2018 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 15, 2018