**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN CLOUTIER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-cv-01146 |
| | ) | |
| v. | ) | Hon. Matthew Kennelly |
| | ) | |
| GOJET AIRLINES, LLC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM TO THE COURT REGARDING BACK PAY, BENEFITS, AND GOJET'S OFFER OF REINSTATEMENT**

**MAY IT PLEASE THE COURT:**

The Plaintiff, John Cloutier, through undersigned counsel, respectfully submits the following memorandum to the Court regarding the sole issue of whether the Defendant's April 25, 2017 offer of reinstatement should toll the accrual of back pay to which the Plaintiff is entitled under *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219 (1982). For the following reasons, the Plaintiff respectfully submits that the Defendant's offer should ***not*** toll the accrual of backpay, and that he is entitled to backpay from the date of his termination until the date of the jury's verdict.

**I.     APPLICABLE LAW**

The ***general rule*** is that a plaintiff's right to backpay ends when he rejects an offer of employment that is "substantially equivalent" to the job he was denied or lost. *Id.* The reasons

1

for this rule are that: (i) a plaintiff has a statutory duty to minimize his damages;[1] and (ii) "a claimant is no longer incurring additional injury if he has been able to find other suitable work that, all things considered, is at least as attractive as the defendant's." *Id.* at 236.

The Court summarized its finding as follows: "***absent special circumstances***, the simple rule that the ongoing accrual of backpay liability is tolled when a Title VII claimant rejects the job he originally sought comports with Title VII's policy of making discrimination victims whole." *Id.* at 238-39 (emphasis supplied).

Courts have used the "absent special circumstances" language from *Ford* to find numerous exceptions to the general rule. See, for e.g., *Smith v. World Ins. Co.*, 38 F.3d 1456, 1464 (8th Cir.1994) ("a 'reasonable rejection' is a special circumstance under *Ford*"). The United States Court of Appeals for the Seventh Circuit applies the following test:

> The accrual of damages for a discriminatory discharge is not terminated merely because the employee refuses an offer of reinstatement; instead, it is only "an *unreasonable* refusal ... [which] will preclude recovery of front pay." *McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 118 (7th Cir.1986) (emphasis added), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). Since the employer bears the burden of proof as to the adequacy of an offer of reinstatement, the employer must initially make an offer which is sufficiently specific to support a finding that the tendered employment is comparable to the employee's prior job. Only after receiving an appropriately detailed offer is the discharged employee required either to accept the offer or to provide specific reasons why it is inadequate.

*Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1203 (7th Cir.1989). An employee is ***not*** "required to accept unreasonable offers that are, for example, insufficiently specific or obviously inferior to the terms of her former employment." *Pickett v. Sheridan Health Care Ctr.*, 07 C

---

[1] While *Ford* addressed reinstatement in the Title VII context, a plaintiff asserting a cause of action under the FMLA has a duty to mitigate his damages as well. See, for e.g., *Franzen v. Ellis Corp.*, 03 C 641, 2007 WL 2566237, at *7 (N.D. Ill. Aug. 30, 2007).

2

1722, 2009 WL 2407736, at *6 (N.D. Ill. Aug. 4, 2009), *aff'd,* 610 F.3d 434 (7th Cir.2010), citing *Graefenhain,* 870 F.2d at 1203.

"In determining whether the right to relief extends beyond the date of an offer of reinstatement, the trial court must consider the circumstances under which the offer was made or rejected, including the terms of the offer and the reasons for refusal." *Claiborne v. Illinois Central R.R.,* 583 F.2d 143, 153 (5th Cir.1978), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979). As the United States District Court for the District of Maryland has explained:

> Factors showing a reasonable refusal include: (1) a long time between termination and the reinstatement offer, (2) refusal to expunge the employee's poor performance record, (3) continuing employment of the individuals responsible for the discrimination, (4) the employer's bad faith and overzealous attacks on the plaintiff's job performance, and (5) suspicious timing of the employer's offer.

*Blasic v. Chugach Support Servs., Inc.*, 673 F.Supp.2d 389, 403 (D. Md.2009), citing *Xiao-Yue Gu v. Hughes STX Corp.,* 127 F.Supp.2d 751, 754–55 (D. Md.2001).

"Once the employee has demonstrated entitlement to damages, the burden shifts to the employer to show that the employee's failure to mitigate damages should reduce the damages awarded." *Graefenhain,* 870 F.2d at 1213, n. 3, citing *Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228, 1234 (7th Cir.1986); *Nord v. U.S. Steel Corp.,* 758 F.2d 1462, 1470–71 (11th Cir.1985), *Hanna v. American Motors Corp.,* 724 F.2d 1300, 1307 (7th Cir.), *cert. denied,* 467 U.S. 1241, 104 S.Ct. 3512, 82 L.Ed.2d 821 (1984), and *Huegel v. Tisch,* 683 F.Supp. 123, 125 (E.D.Pa.1988). See also *Ortega v. Chicago Bd. of Educ.*, 280 F.Supp.3d 1072, 1081 (N.D. Ill.2017), *appeal dismissed,* 17-3542, 2017 WL 9538121 (7th Cir. Dec. 18, 2017) ("[t]he burden of proving lack of mitigation is on the employer"), citing *E.E.O.C. v. Ilona of Hungary, Inc.*, 208

F.3d 1569, 1580-81 (7th Cir. 1997). Thus, at this stage, GoJet bears the burden of showing that Cloutier's rejection of the offer was not reasonable, as a jury has already determined that he is entitled to damages.

## II. GOJET'S OFFER WAS INADEQUATE AND NOT UNCONDITIONAL

The Plaintiff respectfully submits that GoJet's offer of reinstatement was inadequate and *not* unconditional. At trial, Mr. Cloutier testified in detail about his reasons for rejecting the offer, including that acceptance of the offer would have required him to attend a seven (7) week training program in St. Louis, Missouri that would preclude him from caring for his disabled son. The Plaintiff anticipates that the Defendant will argue that the training program was necessary due to the fact that it has been approximately three (3) years since Cloutier has flown for GoJet. However, the jury has already determined that Cloutier was terminated for unlawful reasons. Thus, the 3-year gap was not caused by Cloutier's actions but by GoJet's actions. If GoJet had not terminated him, or had offered reinstatement much earlier, then the training program would not be necessary. To require him to accept an offer that would prevent him from caring for his disabled son, under these circumstances, would prevent him from being "made whole."

Further, GoJet's offer was not "sufficiently specific" for purposes of *Pickett v. Sheridan Health Care Ctr., supra*. Specifically, the offer did not state the proposed length of Mr. Cloutier's new employment and did not state what his status would be under the collective bargaining agreement if he accepted the offer (i.e., whether he would be an at-will or protected employee). Further, at the time of GoJet's offer of reinstatement, the Plaintiff maintained an active law practice and had begun a new career at SkyWest Airlines, where he had been employed for several months. Acceptance of the Defendant's offer would have required Cloutier to completely shut down his law practice, and to forfeit his job at SkyWest. Under these

circumstances, the Plaintiff respectfully submits that it was reasonable to decline GoJet's offer, which would require him to uproot himself from his newly established life to accept a job with unknown guarantees of security.

Moreover, the Defendant's offer was conditioned on the Plaintiff attending this training program. As the Seventh Circuit has held:

> The City next argues that, in any event, it should not be held liable for any damages incurred by the plaintiff subsequent to December 18, 1979, the date on which the City first offered to reinstate Orzel.[26] Defendant's offer to reinstate Orzel, however, was expressly conditioned upon Orzel's taking and passing a physical exam arranged by the City. Orzel refused to comply with this condition on the advice of his attorney, who believed that acquiescence in the demand for a physical exam might be detrimental to the prosecution of Orzel's discrimination suit. We agree with the magistrate that, under the circumstances, it was not unreasonable for Orzel to be concerned that acceptance of the City's conditional offer would jeopardize his legal position.

*Orzel v. City of Wauwatosa Fire Dep't*, 697 F.2d 743, 757 (7th Cir.1983).

GoJet's offer was ***not*** an "unconditional offer" under *Ford* and *Orzel*, and thus the *Ford* rule does not apply.

### III.    GOJET'S OFFER WAS NOT IN GOOD FAITH

This Honorable Court has found that an employer's "good faith" in making the offer of reinstatement is an important factual question in determining whether backpay is tolled under the *Ford* rule. *Dillon v. City of Chicago,* 85 C 5017, 1987 WL 10319, at *2 (N.D. Ill. Apr. 29, 1987) (***unreported decision***); see also *Smith,* 38 F.3d at 1464. Here, GoJet made the offer on April 25, 2017, over two-and-one-half (2 ½) years after Cloutier's termination on August 15, 2014, at which point this litigation was already well underway. The Plaintiff respectfully submits that this demonstrates that the "offer" was little more than a legal tactic to reduce GoJet's damages in the event of a jury verdict for Cloutier. If the offer was truly in good faith, common sense suggests

5

that GoJet would have presented it to Cloutier much earlier, and certainly before he had begun a new career with SkyWest. Instead, GoJet waited until after Cloutier had taken substantial steps toward building a new life, at which point GoJet surely did not expect him to accept the offer.

As the Eighth Circuit explained in *Smith v. World Ins. Co., supra.*, Smith discussed his rejection of the offer at length during his testimony, stating:

- that he had no faith in the offer, and that he was not comfortable with it;
- that he felt that there was nothing in the offer to prevent World from "turning the screws or doing whatever" to him if he returned;
- that he would make more money working for World, but that the risk of accepting the offer was not worth it- as World provided no guarantees of how long he would be employed with World;
- he understood that references to his poor work performance would not be expunged from his employment file;
- that he could not understand how there would be a change at World with Tom Eilers remaining President of World;

Smith also argued on appeal that the timing of the offer, nearly three years after he left World, indicated that World made the offer in bad faith. *Smith,* 38 F.3d at 1464. The court continued:

> Viewing the evidence in a light most favorable to Smith, we must assume the terms of the offer of reinstatement and the circumstances surrounding it are as Smith testified. We must determine on those circumstances whether a jury could find that "a reasonable person would refuse the offer of reinstatement." *Fiedler,* 670 F.2d at 808. We conclude that a jury could have found that Smith's rejection of the offer of reinstatement was reasonable. While many of the individual factors standing alone would not be sufficient to establish an objectively reasonable rejection of the offer, the totality of the circumstances would have allowed the jury to reach that conclusion.

*Smith,* 38 F.3d at 1464.

Similarly, the United States District Court for the Southern District of Texas, citing *Smith v. World Ins. Co., supra.* with approval held:

6

> Defendant did not offer Plaintiff a new position until November 2003, nearly a year after she began actively seeking reinstatement and nearly six months after her long term disability benefits ceased. These sort of allegations have been accepted by other courts considering a plaintiff's refusal to accept an offer of reinstatement. . .
>
> In her deposition, Plaintiff stated that she refused the offer of reinstatement because she did not feel like it was a good faith effort that she could trust. The only relevant inquiry for this Court is whether any reasonable jury could consider Plaintiff's proffered evidence, taken as a whole and in the light most favorable to Plaintiff, and determine that her refusal to accept Defendant's offer was objectively reasonable. The Court cannot state as a matter of law that Plaintiff's evidence is deficient. Therefore, the Court finds that the jury should consider the issue of mitigation of damages.

*Mahoney v. Ernst & Young LLP*, 487 F.Supp.2d 780, 786 (S.D. Tex.2006).

Here, as in *Smith*, Mr. Cloutier did not trust the Defendant's offer. At the time the offer was made, *Mr. Cloutier did not believe that, were he to accept GoJet's offer, he would ever be allowed to actually fly a plane.* In fact, he believed, because of the suspicious timing of the offer and his reasonable lack of trust in the company that unlawfully terminated him, that GoJet wanted to rehire them so that it would subject him to testing designed to established that he was incapable of flying in order to gain a strategic advantage in this lawsuit, just as in *Orzel*. Further, as discussed above, Mr. Cloutier did not know how long he would be employed by GoJet if he accepted the offer, just as the Plaintiff in *Smith*.

For these reasons, the Plaintiff respectfully submits that GoJet's offer was not in good faith and, therefore, that the Plaintiff was not required to accept it.

## IV. REINSTATEMENT WOULD NOT BE APPROPRIATE IN THIS CASE

The Seventh Circuit, in a pre-*Ford* decision, found that offers of reinstatement did not toll the accrual of backpay because of the defendant's improper motive and "animosity" toward the plaintiff:

7

> Since the Court herein specifically found that Respondent's *motive* in offering reinstatement on a staggered basis, as indicated by its 'animosity' to the Union, militated against a finding that such offers were valid, it seems clear that backpay cannot be tolled, even though several discriminatees insisted on returning as a group. Not only does the rule set forth in *Southwestern Pipe* and *O'Daniel Oldsmobile* require the absence of a discriminatory motive, but it is clearly inapplicable to a situation where, as here, a Court has found that Respondent made such staggered offers of reinstatement 'willfully and contumaciously with knowledge that they were not in compliance' with the Board's court-approved order.

In Title VII cases, courts frequently look to similar considerations in determining whether reinstatement is an appropriate remedy. See, for *e.g., Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1045–46 (7th Cir.1994) (the district court […] should not grant reinstatement 'where the result would be undue friction and controversy'"); *Tart v. Elementis Pigments, Inc.*, 191 F.Supp.2d 1019, 1026–27 (S.D. Ill.2001), citing *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001) ("reinstatement is inappropriate when there is substantial animosity between the parties and the relationship is unlikely to improve").

Here, Randy Bratcher, one of the primary decision makers with respect to the Plaintiff's termination, is still employed by GoJet and is now the Director of Flight Operations. There is no reason to believe that the animosity between the Plaintiff and Mr. Bratcher would end if Mr. Cloutier were reinstated. Further, the Plaintiff would be *afraid* to return to GoJet because of the culture of animosity against him among GoJet's employees, which is exemplified by an instance prior to Mr. Cloutier's termination in which a GoJet employee actually threatened him. These fears are strengthened by the suspicious timing of the offer of reinstatement and lack of specificity therein. Mr. Cloutier simply has no reason to trust GoJet, particularly on the date that reinstatement was offered, as this litigation was ongoing and trial had not yet commenced.

In *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1055 (7th Cir.1990), *holding modified on other grounds by Price v. Marshall Erdman & Associates, Inc.*, 966 F.2d 320 (7th Cir.1992), the Seventh Circuit found that reinstatement was inappropriate because (i) the judge determined that the offer of "reinstatement" was not to a "comparable" or "equivalent" position; (ii) the plaintiff had been away from his position for approximately four (4) years; (iii) there was "substantial hostility between Hybert and Hearst management"; and (iv) reemployment would only have been required for a "relatively short period of time."

Here, as in *Hybert*: (i) the Defendant's offer was not to a "comparable" or "equivalent" position, as it would require seven (7) weeks of training; (ii) the Plaintiff has been away from his position for approximately four (4) years; and (iii) there is substantial hostility between Cloutier and GoJet employees, including Mr. Bratcher, who holds a superior position.

For these reasons, the Plaintiff respectfully submits that reinstatement would simply not be appropriate in this case and that, therefore, his rejection of the offer of reinstatement was reasonable.

### V. CONCLUSION

For the foregoing reasons, the Plaintiff respectfully submits that GoJet cannot meet its burden of showing that his rejection of its offer of reinstatement was unreasonable. Accordingly, the Plaintiff respectfully submits that he is entitled to backpay through the date of the jury's verdict, as his rejection of GoJet's bad-faith, conditional offer of reinstatement was reasonable.

Respectfully submitted;

*/s/ J. Arthur Smith, III*
J. Arthur Smith, III (La. #07730)
(*pro-hac vice*)
**SMITH LAW FIRM**
830 North Street
Baton Rouge, Louisiana 70802
(225) 383-7716
jasmith@jarthursmith.com

Aaron B. Maduff Atty. No. 6226932
**MADUFF & MADUFF, LLC**
205 N. Michigan, Ave., Suite 2050
Chicago, Illinois 60601
(312) 276-9000

*Counsel for Plaintiff, John Cloutier*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing was this day electronically filed with the U.S. District Court for the Northern District of Illinois, Eastern Division, and that a copy of this filing has been sent to all counsel by operation of the court's ECM/ECF filing system.

Baton Rouge, Louisiana, this 21st day of August, 2018.

*/s/ J. Arthur Smith, III*
J. Arthur Smith, III