# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN CLOUTIER, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> GOJET AIRLINES, LLC, ) <br> ) <br> Defendant. ) | Case No. 16 C 1146 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

John Cloutier, an airline pilot, sued his former employer GoJet Airlines for violating the Family and Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA). After the Court granted summary judgment in GoJet's favor on some of Cloutier's claims, *see Cloutier v. GoJet Airlines, LLC*, 311 F. Supp. 3d 928 (N.D. Ill. 2018), his remaining claims were tried before a jury. Specifically, the jury considered Cloutier's claims that GoJet had interfered with his exercise of his rights under the FMLA and had terminated him in retaliation for exercising his FMLA rights and his claims that GoJet had violated the ADA by failing to accommodate his disability and terminating him because of his disability.

The jury found in favor of Cloutier on both of his FMLA claims and in favor of GoJet on both of Cloutier's ADA claims. The relief available under the FMLA consists of lost compensation and benefits and other actual monetary losses, interest on these amounts, liquidated damages consisting of an amount equal to the monetary award

unless the employer acted in good faith with reasonable grounds to believe that its act or omission did not violate the law; and equitable relief. 29 U.S.C. § 2617(a)(1)(A), (B). Front pay is a form of equitable relief, essentially given in place of an injunction when reinstatement is not a viable option. *See, e.g., Traxler v. Multnomah County*, 596 F.3d 1007, 1011-12 (9th Cir. 2010); *see generally Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001) (Title VII case). Cloutier seeks back pay and front pay (GoJet does not suggest that reinstatement is a viable option), as well as liquidated damages. These matters were tried to the Court following the jury's verdict. This constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(1).

## Facts

The Court's instructions to the jury regarding what Cloutier had to establish to prevail on his FMLA retaliation claim stated:

> To succeed on his FMLA interference claim, Mr. Cloutier must prove each of the following propositions by a preponderance of the evidence:
>
> 1.  Mr. Cloutier had diabetes mellitus.
>
> 2.  Mr. Cloutier's condition was a serious health condition.
>
> 3.  GoJet had appropriate notice of Mr. Cloutier's need for leave.
>
> 4.  GoJet interfered with Mr. Cloutier's right to take FMLA leave by doing one or more of the following:
>
>    • giving him less time to complete his initial FMLA certification paperwork than the law requires, which prevented him from taking leave he was entitled to take, or contributed to his termination; or
>
>    • failing to provide him with notice of his rights and responsibilities under the FMLA, which prevented him from taking leave he was entitled to take, or contributed to his termination; or

> • not allowing him to return to his job or an equivalent position when
> his leave expired, if he was able at that time to perform the
> functions of his job or an equivalent position; or
>
> • terminating him because he had requested or had taken FMLA
> leave, if he was able at that time to perform the functions of his job
> or an equivalent position.

Instructions to the Jury (dkt. 139) at 11. The Court notes that the instruction on the interference claim gave the jury at least four and possibly six alternative ways in which Cloutier could establish liability. Neither side asked for or submitted special interrogatories to require the jury to specify which of these grounds was the basis for a finding in Cloutier's favor on the claim.[1]

The Court's instructions regarding what Cloutier had to establish to prevail on his FMLA retaliation claim stated:

> To succeed on his FMLA retaliation claim, Mr. Cloutier must prove by a preponderance of the evidence that his taking of FMLA leave was a motivating factor in GoJet's decision to terminate his employment.
>
> The term "motivating factor" means a reason why GoJet took the action that it did. It does not have to be the only reason.
>
> If you find that Mr. Cloutier's taking of FMLA leave motivated GoJet to terminate his employment, then you must find for Mr. Cloutier on this claim, unless you find that GoJet has proved by a preponderance of the evidence that it would have terminated Mr. Cloutier's employment even if he had not taken FMLA leave, in which case you must find for GoJet on this claim.

*Id.* at 15.

---

[1] The parties' proposed jury instructions in the final pretrial order did include a proposed special interrogatory form, *see* Final Pretrial Order (dkt. 123) at 75-76, but on the interference claim the proposed interrogatory would have asked the jury only to say whether it had found that GoJet interfered with Cloutier's right to take FMLA leave, *see id.* at 75, question 3, not the particular basis on which it made such a finding.

3

The jury, as indicated earlier, found in Cloutier's favor on both his interference and retaliation claims under the FMLA. But it found good faith on GoJet's part only on the retaliation claim, not on the interference claim. This means that on the retaliation claim, Cloutier is entitled to recover lost compensation but not liquidated damages. On the interference claim, however, he is entitled to recover both lost compensation and liquidated damages. In addition, the jury's finding of a lack of good faith on the interference claim but good faith on the retaliation claim indicates that it must have found GoJet's interference with Cloutier's FMLA rights to involve conduct other than—or in addition to—terminating him because he had asked for or taken FMLA leave, i.e., the fourth bullet point under element 4 of the jury instruction on the interference claim. The Court will return to this point later in this decision.

1.   **Back pay**

It is undisputed that, as a general rule, recoverable back pay consists of the amount that the plaintiff would have earned had he not been unlawfully terminated, less amounts earned between the termination and entry of judgment that the plaintiff would not have earned but for the unlawful termination. *See generally Chesser v. State of Illinois*, 895 F.2d 330, 337 (7th Cir. 1990). In addition, as a general rule, "a discharged employee must mitigate damages by using reasonable diligence in finding other suitable employment," *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1202 (7th Cir. 1989) (internal quotation marks and emphasis omitted); *see also Franzen v. Ellis Corp.*, 543 F.3d 420, 429-30 (7th Cir. 2008), and if he fails to do so, amounts that he would have earned with reasonable diligence must be deducted from any award. On the question of recoverable back pay and front pay, the burden of persuasion lies with the plaintiff; on

4

mitigation, the burden of persuasion lies with the defendant. *See, e.g., Gaffney v. Riverboat Serv. of Ind.*, 451 F.3d 424, 460 (7th Cir. 2006); *Hanna v. Am. Motors Corp.*, 724 F.2d 1300, 1306-07 (7th Cir. 1984); *Ortega v. Chi. Bd. of Educ.*, 280 F. Supp. 3d 1072, 1119-20 (N.D. Ill. 2017).

In this case, there are five issues relating to back pay, three of which are disputed:

- the number of hours Cloutier would have worked at GoJet had he not been terminated (this is disputed);
- the appropriate per-hour rate for Cloutier's lost work time at GoJet (this is not disputed)
- the amount Cloutier earned from employment at SkyWest that should be deducted (this is not disputed);
- whether Cloutier's potential earnings for a position at Republic Airways that he turned down should be deducted on the basis of failure to mitigate (this is disputed);
- whether an offer of reinstatement that GoJet made in May 2017, a little under 17 months after Cloutier first filed this lawsuit, cuts off back pay at that point (this is disputed).

The Court addresses the disputed issues below.

    a. **Cloutier's GoJet hours**

GoJet proposes to calculate back pay using the minimum amount of flight hours per month that GoJet pilots were entitled to under the applicable collective bargaining agreements during the relevant period. Cloutier contends that he would have worked

much more than this in overtime, citing pilot shortages and his interest in making more money. Cloutier's argument is unpersuasive. Given his other commitments and his side law practice, he has failed to show by a preponderance of the evidence that he would have worked more than the amount that was guaranteed to him under the collective bargaining agreement. On this point, the Court adopts GoJet's proposed figures.

  b. **The Republic Airways job**

In 2014, Cloutier applied for and was offered a pilot position at Republic Airways. He turned it down. GoJet contends this constituted an unreasonable failure to mitigate damages. As a result, it argues, the amounts Cloutier would have earned from Republic in 2014-15 (before he took the position at SkyWest) should be deducted from back pay. The Court disagrees. The offer from Republic required Cloutier to sign a promissory note agreeing to pay the airline $25,000 if he left the company for any reason before completing two years of work. Given the risks inherent in taking this job, including Republic's perceived financial instability and the possibility of job loss, as well as the modest amount Cloutier expected to be able to earn from the position, GoJet has not shown by a preponderance of the evidence that it was unreasonable for him to turn down the job.

  c. **GoJet's offer of reinstatement**

On April 25, 2017, about 17 months after Cloutier filed this lawsuit (he filed it in state court in November 2015) and at a point when discovery was near completion, GoJet made the following written offer, signed by the company's chief pilot:

Dear Mr. Cloutier:

> GoJet Airlines ("GoJet") hereby makes you this unconditional offer of immediate reinstatement. The details of this offer are as follows:
>
> You would return to your position as a Captain for GoJet, with the exact same responsibilities and seniority as prior to your termination. Your compensation and benefits will also be the same as your previous employment with GoJet, as dictated by the Collective Bargaining Agreement. If you choose to accept this offer, your start date will be May 22, 2017. You are expected [to] report to GoJet Headquarters, Flight Operations Office located at 11485 Navaid Road, Bridgeton, Missouri at 8:00 a.m. on this date.
>
> You are free to pursue any and all claims outlined in your Grievance and Complaint against GoJet. You are **not required to discontinue or dismiss your Grievance or Complaint** in order to return to employment with GoJet.
>
> Although not anticipated to be of any issue, GoJet will ensure you return to work is handled in a professional and respectful manner that would not involve any harassment or retaliation. GoJet would also protect you from any harassment or other inappropriate conduct by co-workers or supervisors during your employment.
>
> If you have any questions or concerns about this offer, plead contact me immediately. Since there is pre-return paperwork required as well as travel arrangements which will need to be made for your travel from Chicago to St. Louis I will need to know no later than 5 p.m. central on May 12, 2017 if you accept this offer. I look forward to your return to work on May 22, 2017.

Def.'s Ex. HH. Cloutier did not accept the offer. GoJet contends that the non-acceptance was unreasonable and that under *Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982), any entitlement Cloutier might have to recover to back pay cuts off as of May 22, 2017, and he is not entitled to front pay.

Under *Ford Motor Co.*, when a plaintiff unreasonably rejects an unconditional offer of reinstatement, the defendant is not liable for lost wages after that point. *Id.* at 230-31; *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1203 (7th Cir. 1989). This is so, however, only if the offer "affords the claimant virtually identical promotional

7

opportunities, compensation, job responsibilities, working conditions and status" as his previous position. *Graefenhain*, 870 F.2d at 1203.

GoJet has failed to establish by a preponderance of the evidence that that the offer was truly unconditional or that Cloutier's non-acceptance was unreasonable. After receiving the offer, Cloutier, through counsel, inquired about whether he would have to undergo training if he returned to work at GoJet. The response, through GoJet's counsel, was as follows:

> Looks like he would need to complete the entire FAA approved training program unless there are certain portions he may be exempted from per the program. The program is approved by the FAA so they will need to comply with its requirements, which would be no different than if he is reinstated in an arbitration. You can certainly feel free to check with Gary and [the union] on how the process works.

E-mail of May 8, 2017. Testimony at trial established that the "ground school" portion of the training would have lasted three to four weeks, followed by a short period (a day or two) in a simulator. GoJet made no offer at the time to waive the ground school. In short, GoJet's offer of reinstatement was not unconditional; it was conditioned on completion of a weeks-long training program.

At trial, GoJet offered evidence that it would have recommended a reduction of the ground school portion of the training to a two-day stint. But this was not conveyed to Cloutier at the time of the offer: GoJet's attorney's e-mail said only that Cloutier *may* be exempted from *certain portions* of the training program. And in any event, Cloutier had ample reason to doubt whether any exemption actually would be offered, as this would be up to GoJet Captain Randy Bratcher, a key decision maker in Cloutier's termination whose decision was directly challenged as discriminatory in the present litigation and who, Cloutier reasonably believed, harbored animosity toward him.

8

Even if GoJet's offer is appropriately viewed as unconditional, GoJet has not shown that Cloutier's non-acceptance was unreasonable. Based on the information that Cloutier had at the relevant time, he would have had to spend three to four weeks doing training away from home, where he was responsible for caring for his disabled son.[2] Under these circumstances, it was reasonable for Cloutier not to accept the offer. This fact alone defeats the contention that Cloutier's non-acceptance was unreasonable. In addition, however, GoJet's offer was made after nearly a year and a half of contested litigation, *which would have continued*, and Cloutier—who had been away from GoJet for about four years at that point—would have been under supervision, at least indirectly, by Bratcher, whose decisions were directly at issue in the litigation and who, as noted above, appeared to have significant animosity toward Cloutier. Under the circumstances, Cloutier reasonably doubted that the statement that GoJet would not retaliate would carry any weight.

In sum, GoJet has failed to carry its burden of persuasion on the matter of the offer of reinstatement.

### d. Back pay summary

Based on the findings made above, and on the figures provided by the parties, Cloutier is entitled to back pay through the time of trial in the amount of $174,864.23 ($299,280.12 in anticipated GoJet wages, less $124,415.89 earned at SkyWest). Cloutier has also shown that he is entitled to recover $13,041 in lost health insurance benefits. The total is $187,905.23.

---

[2] At the time, Cloutier was living in the Chicago metropolitan area, but the training would have taken place in or near St. Louis, Missouri.

2.  **Front pay**

GoJet's only argument against an award of front pay is Cloutier's failure to accept the offer of reinstatement, a point the Court has rejected. The Court concludes that Cloutier is entitled to front pay through June 2023, his date of mandatory retirement as a pilot. The recoverable amount is to be based on the same calculation used to determine back pay—specifically, the amount of pay for the minimum hours guaranteed to GoJet pilots at the contractual hourly rate, less Cloutier's anticipated earnings from SkyWest for the same period. Unfortunately, the Court does not have the necessary information for the first figure.[3] The Court reopens the evidence for this sole point. The parties are to confer immediately and are to file a short, to-the-point status report providing the necessary information and its source(s) by no later than January 8, 2019. The Court will enter judgment promptly upon reviewing the submission.

3.  **Liquidated damages**

As indicated earlier, the jury found that GoJet's interference with Cloutier's FMLA rights was not in good faith but that its retaliation for his exercise of his FMLA rights was in good faith. This makes determining the amount of a monetary award simple for the retaliation claim; Cloutier is entitled to damages equal to the base amount of back pay found by the Court, as well as front pay, but no liquidated damages.

Matters are a bit more complicated for the interference claim. The jury's finding of a lack of good faith entitles Cloutier to liquidated damages equal to the back pay

---

[3] The only figures that the Court has for Cloutier's projected GoJet earnings from the time of trial through June 2023 are the figures offered by Cloutier's counsel, which are based on a much higher number of hours worked than is appropriate, as the Court found earlier in discussing back pay.

10

recoverable on this claim. But the Court first has to determine what the base monetary award should be. In the abstract, an FMLA interference violation does not necessarily entitle a plaintiff to recover back pay. In this case, the interference claim offered multiple bases upon which the jury could find in Cloutier's favor, not all of which involved the termination of his employment. Some of the grounds on which the jury could have found interference required only a showing that Cloutier was prevented from taking the full amount of FMLA leave that he was entitled to take. *See* Instructions to the Jury at 11, element 4, bullet points 1, 2. A finding of liability on this basis would not entitle Cloutier to recover back pay.

The case on interference liability, however, was not argued to the jury that way. In closing argument, Cloutier's counsel made no contention that Cloutier was shorted on his FMLA leave—as GoJet's own counsel specifically noted during his own closing argument. So it is not likely that the jury found in Cloutier's favor on the interference claim based on a determination that GoJet's interference caused only a loss of available FMLA leave. Rather, the primary focus of Cloutier's closing argument on the interference claim involved the first bullet point in the elements instruction, specifically GoJet's failure to give him sufficient time to obtain the necessary medical certification. And counsel contended that this started a cascade of events that led to Cloutier's termination. It is most likely that the jury found for Cloutier on the basis that GoJet interfered with his FMLA rights as just described and that this contributed to his termination. (The Court does not intend by this to rule out other possibilities.)

There is also the matter of the difference between the finding on GoJet's good faith on the retaliation claim and the finding of no good faith on the interference claim.

11

The Court's obligation under the circumstances is to make a reasonable attempt to reconcile the jury's verdict both internally and with the evidence that was presented. *See, e.g., Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119 (1963); *Deloughery v. City of Chicago*, 422 F.3d 611, 617 (7th Cir. 2005).

Interpreting the jury's findings on the retaliation claim is a relatively straightforward matter. The jury necessarily found that Cloutier established that his taking of FMLA leave was a reason—perhaps among other reasons—why GoJet terminated his employment, but that GoJet had not shown that it would have terminated Cloutier even had he not taken FMLA leave. *See* Instructions to the Jury at 15 (elements of FMLA retaliation claim). The jury's finding of good faith on the retaliation claim means that the jury concluded that that GoJet had reasonable grounds to believe that it was not violating the FMLA in making the decision to terminate Cloutier's employment. The liability and good faith findings on the retaliation claim are easily reconcilable. First, not every violation of the law amounts to a deliberate flouting of known legal obligations. That aside, the jury could have found that the taking of FMLA leave was one, but only one, of multiple reasons for terminating Cloutier and, perhaps, that GoJet believed that if it had multiple reasons to terminate Cloutier, it was not precluded from acting even if one of its reasons was legally prohibited.

The next question is how to reconcile the finding of good faith on the FMLA retaliation claim with the finding of no good faith on the FMLA interference claim. Part of this is relatively easy, as the Court suggested earlier in this decision. *See supra* at 4. Specifically, of the four bases for liability set forth in the Court's instruction on the interference claim, it is readily apparent that the jury's verdict could not have been

12

based upon, or at least could not have been based exclusively upon, a finding that GoJet "terminat[ed] [Cloutier] because he had requested or had taken FMLA leave . . . ." See Instructions to the Jury at 11 (elements of FMLA interference claim). If the contrary were true, it would make the good faith/no good faith findings on the two claims inconsistent, and a court "should be slow to impute to juries a disregard of their duties." *Am. Cas. Co. of Reading, Pa. v. B. Cianciolo, Inc.*, 987 F.2d 1302 1306 (7th Cir. 1993). Rather, consistent with how Cloutier's counsel argued the case to the jury, the likely best reading of the verdict on the interference claim is that the jury found that GoJet did not give Cloutier enough time to obtain his medical certification and that this ultimately led to his termination. On this theory of liability, there was an ample basis for the jury to find that in shorting Cloutier on the time to submit the certification, GoJet had reason to believe that it was violating the law and thus did not act in good faith.

In sum, the most reasonable interpretation of the jury's verdict, in the Court's view (without any significant input from the parties, who essentially bypassed this question in their arguments following the bench trial) is that the jury found as follows:

- FMLA interference claim: GoJet interfered with Cloutier's FMLA rights by failing to give him sufficient time to get his medical certification, and this—through a series of events—contributed to his termination. GoJet's interference was not in good faith because it lacked reasonable grounds to believe that it was not violating the FMLA in shorting Cloutier on the time he had to submit his medical certification.

- FMLA retaliation claim: Cloutier's taking of FMLA leave was one of the reasons, but not the only reason, motivating GoJet's termination of his employment.

GoJet acted in good faith, however, because it had reason to believe that its other motivating factors legally authorized it to terminate Cloutier's employment irrespective of the single prohibited motivating factor.

With this in mind, the Court concludes that on the FMLA interference claim, as on the retaliation claim, Cloutier is entitled to liquidated damages equal to the full amount of his back pay.

## Conclusion

For the reasons stated above, the Court rules that plaintiff John Cloutier is entitled to back pay in the amount of $187,905.23 and front pay in an amount to be determined after submission of additional information. The Court also rules that Cloutier is entitled to liquidated damages in amounts equal to the total of the back pay, or $187,905.23. Information to determine front pay, as described earlier in this decision, is to be submitted via a joint status report to be filed by no later than 4:30 p.m. on January 8, 2019. The Court will enter judgment promptly thereafter.

Date: January 4, 2019

```
_____
MATTHEW F. KENNELLY
United States District Judge
```