# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN CLOUTIER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 16 C 1146 |
| GOJET AIRLINES, LLC, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

John Cloutier prevailed at trial against his former employer, GoJet Airlines, LLC, on claims that GoJet interfered with his exercise of rights under the Family and Medical Leave Act (FMLA) and terminated him in retaliation for exercising his FMLA rights. Cloutier has moved to recover attorneys' fees and costs. For the reasons set forth below, the Court grants the motion but reduces the amount of the requested award.

## Background

Cloutier, an airline pilot, sued GoJet for violations of the FMLA, Americans with Disabilities Act (ADA), and Age Discrimination in Employment Act (ADEA). Cloutier asserted 13 claims, all related to his leave and eventual termination from his job after he was diagnosed with, and began taking medication for, diabetes. The Court dismissed one FMLA claim, *Cloutier v. Trans States Holdings, Inc.*, No. 16 C 1146, 2016 WL 3181708, at *1 (N.D. Ill. June 8, 2016) (Der-Yeghiayan, J.), and later granted summary judgment in favor of GoJet on some of Cloutier's other FMLA claims, *Cloutier v. GoJet*

*Airlines, LLC*, 311 F. Supp. 3d 928, 930 (N.D. Ill. 2018). The parties jointly stipulated to dismissal of the sole ADEA claim.

At trial, a jury considered Cloutier's remaining claims for interference and retaliation under the FMLA and for failure to accommodate a disability and termination due to that disability under the ADA. The jury found in Cloutier's favor on both FMLA claims and in GoJet's favor on both ADA claims. With respect to the FMLA claims, the jury found that GoJet acted in good faith only on the retaliation claim; it did not find good faith on the interference claim. *Cloutier v. GoJet Airlines, LLC*, 357 F. Supp. 3d 675, 679 (N.D. Ill. 2019). Consequently, Cloutier was not entitled to liquidated damages on the retaliation claim. *Id.* at 677. The Court awarded him damages in the amount of $426,493.46. *Cloutier v. GoJet Airlines, LLC*, No. 16 C 1146, 2019 WL 316807, at *1 (N.D. Ill. Jan. 24, 2019). Both parties filed post-trial motions, which the Court denied. *Cloutier v. GoJet Airlines, LLC*, No. 16 C 1146, 2019 WL 1762899, at *1 (N.D. Ill. Apr. 21, 2019)

Cloutier was represented at trial by two law firms: Maduff & Maduff, LLC, which is based in Chicago, Illinois, and Smith Law Firm, which is based in Baton Rouge, Louisiana. Sixteen attorneys and paralegals from those firms worked on his case. Five attorneys did most of the work: Aaron B. Maduff and Walker R. Lawrence of Maduff & Maduff, and Joseph Arthur Smith, III ("Smith"), Joseph Arthur Smith, IV, and Rob Schmidt of Smith Law Firm.

Cloutier now seeks an award of attorneys' fees and expenses. He originally requested $488,941.26 in attorneys' fees but later reduced his request to $474,312.76. This figure is based on 988.17 of the 1,116.20 hours that attorneys and paralegals

2

spent on the litigation; they have waived fees as to remainder of the time. GoJet objects to that award and contests Smith's hourly rate, the reasonableness of certain hours expended by Cloutier's attorneys, and the appropriate overall amount of fees based on Cloutier's level of success at trial. Cloutier also seeks to recover $1,765.96 in costs related to the litigation, and GoJet does not object to those costs.

## Discussion

The prevailing party in a case under the FMLA shall recover "a reasonable attorney's fee." 29 U.S.C. § 2617(a)(3); *see also Franzen v. Ellis Corp.*, 543 F.3d 420, 430 (7th Cir. 2008). "The award's size is a function of three numbers: the hours worked, the hourly rate, and any overall adjustments up or down." *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017). "Although there is no precise formula for determining a reasonable fee," a district court generally begins by multiplying the hourly rate by the hours worked to calculate a "lodestar" amount. *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The district court may then adjust the lodestar figure to account for various considerations, including the degree of success obtained by the plaintiff. *Hensley*, 461 U.S. at 434 ("[The degree of success] is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief.")

 A. **Lodestar amount**

   1. **Hourly rates**

GoJet initially disputed Maduff's and Smith's requested hourly rates of $675, but it has since dropped its objections to Maduff's requested hourly rate. GoJet argues that

3

Smith is entitled to $350 per hour, which is his established rate in his regular practice in Baton Rouge, Louisiana. Cloutier contends that an out-of-town lawyer's rate should be commensurate with the rate charged by similarly-experienced attorneys practicing in the forum where the litigation occurred. He argues that a Chicago-based attorney with Smith's experience would charge $675 for a similar case.

An attorney's reasonable hourly rate is "based on the local market rate" for his services. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). "The best evidence of the market rate is the amount the attorney actually bills for similar work." *Id.* If a district court cannot determine the attorney's typical billing rate, then the "court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id.*

The Court concludes that Smith is entitled to the rate he charges clients for employment cases: $350 per hour. Cloutier has shown no reason, such as Smith's use of contingent fee agreements, for the Court to depart from the presumption that his standard hourly rate is his market rate. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (when an attorney uses contingent fee agreements, courts may rely on evidence other than his standard hourly rates due to "the difficulty of determining the hourly rate of an attorney who uses" such agreements); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993) ("A judge who departs from this presumptive rate must have some reason other than the ability to identify a different average rate in the community."); *see also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999) (the fee applicant bears the burden of establishing his attorney's market rate). Because the Court presumes that Smith's standard rate is his market rate, the Court

declines to give any significant weight to the affidavits discussing a reasonable rate for someone of his skill, experience, and reputation. *Cf. Pickett*, 664 F.3d at 641 (discussing the use of affidavits to establish market rates for contingent-fee-earning attorneys).

Cloutier cites to only two cases applying a forum's rate to an out-of-state attorney who charges a lower standard rate; neither is binding precedent. *See Garmong v. Montgomery County*, 668 F. Supp. 1000, 1007 (S.D. Tex. 1987); *Donnell v. United States*, 682 F.2d 240, 251 (D.C. Cir. 1982). The cases in this Circuit addressing out-of-state attorneys' fees generally involve the inverse scenario: an out-of-state attorney with a standard rate higher than the forum's average rate seeking fees based on the attorney's standard rate. *E.g., Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982). In *Chrapliwy*, the Seventh Circuit found that courts may award an out-of-state attorney's higher rate where doing so would encourage talented attorneys to take on complex or specialized cases for which local attorneys lack the requisite availability or skills. *Id.* The court did not approve of giving out-of-state attorneys more than their standard rates. *See id.* Further, *Chrapliwy*'s rationale for allowing higher rates does not apply to this case because there is no indication that local attorneys lack the availability or skills to take on cases such as Cloutier's. Indeed, applying Smith's typical hourly rate to his work in this litigation aligns with the purpose of fee-shifting statutes by ensuring that he does not receive a windfall. *See City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986) (Congress intended for fee-shifting statutes in civil rights litigation to give litigants access to competent counsel without producing windfalls to attorneys).

Because GoJet no longer challenges Aaron Maduff's requested rate of $675, the

Court need not address the point. The Court adopts that rate based on GoJet's implicit concession that it is appropriate.

In sum, the Court concludes that Smith's reasonable hourly rate is $375. Applying that rate to Cloutier's fee request, the Court finds that the baseline amount for Cloutier's fee request is $423,893.06.

### 2. Hours reasonably expended

In calculating the lodestar amount, a court must exclude hours that were not "reasonably expended," including "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. GoJet contests particular categories of attorneys' hours that it contends are not reasonably expended. The Court discusses each such category below.[1]

#### a. Internal conferences

GoJet objects to over 175 of Cloutier's billing entries for conferences between multiple timekeepers as excessive and inefficient. Cloutier contends that conferences involving multiple attorneys can enable the delegation of tasks, promote efficiency, and provide for better quality work. He has waived some time and reduced the amount of requested fees for certain conferences and meetings. After those waivers and reductions, GoJet objects to 126.47 hours, or 12.8% of the total time for which Cloutier seeks fees, due to the excessive attendance of timekeepers.

---

[1] In his fee motion, Cloutier responds to certain objections from GoJet that GoJet does not raise in its brief or the corresponding exhibits: whether Cloutier had an unnecessary number of attorneys working on the case and whether Cloutier's attorneys spent an excessive amount of time responding to GoJet's Motion for Summary Judgment. The Court presumes that GoJet has dropped these objections and therefore does not address them.

6

A "blanket rule" limiting communication or conferences by multiple timekeepers would be "totally unrealistic," as the practice of law often entails consultation and collaboration. *Tchemkou v. Mukasey*, 517 F.3d 506, 511. (7th Cir. 2008). "Talking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's trying to wade through the issue alone." *Id.* at 511–12. That said, because calls and meetings "are not always the model of efficiency," attorneys "seeking reimbursement for internal meetings should identify explicitly the subject matter of their discussions" so that a court "may assess whether the amount of time recorded was 'reasonably expended.'" *Id.* at 512 (affirming a district court's reduction of requested time.) Further, where an excessive amount of time is spent on internal communications, a court may conduct "appropriate trimming . . . to bring the billed hours within a reasonable range." *Gautreaux v. Chicago Hous. Auth.,* 491 F.3d 649, 661 (7th Cir. 2007).

The Court concludes that a partial reduction of the requested fee award is appropriate. First, Cloutier's billing entries for 15.25 hours of phone conferences between multiple timekeepers include no information about the conferences' subject matter. Applying *Tchemkou*, the Court reduces the requested fee award for those hours by half, resulting in a reduction of $3,705.[2] Additionally, the Court finds that the overall amount of time spent on internal communications warrants a reduction. *See Ruggles v. Annett Holdings, Inc.*, No. 17 C 5981, 2019 WL 95156, at *2 (N.D. Ill. Jan. 3, 2019) (reducing fees sought for internal communications by half where the time spent on

---

[2] In calculating all reductions to the fee award, the Court has applied Smith's hourly rate of $350, as discussed above, rather than his requested rate of $675.

7

those communications constituted approximately 18% of the total time for which fees were sought). The Court will cut the award for that time in half. Therefore, Cloutier's requested fee award for this category is reduced by a total of $28,983.60, which includes the aforementioned reduction of $3,705.

### b. Clerical and/or paralegal tasks

GoJet argues that fees should be disallowed for approximately 39.9 hours that Cloutier's attorneys spent on administrative tasks. Cloutier asserts that this time is compensable because it was spent on legal or paralegal work. In calculating the number of hours reasonably expended on a case, courts "should disallow time spent on what are essentially 'clerical' or secretarial tasks." *Spegon*, 175 F.3d at 553. Courts may allow for requested paralegal fees if "the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996).

Cloutier argues that certain challenged entries billed at attorneys' rates are reasonable, even if the work could have been done by a paralegal, because it can be more efficient for attorneys to complete tasks than to delegate those tasks. That argument misses the mark. When paralegal-type tasks are completed by attorneys, a court may apply a paralegal's fee to the corresponding time. *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 989 (N.D. Ill. 2012); *Morris v. BNSF Ry.*, No. 15 C 2923, 2019 WL 4393047, at *2 (N.D. Ill. Sept. 13, 2019).[3] Similarly, when clerical work is completed by

---

[3] Despite making this argument, Cloutier reduced four of the time entries billed by attorneys to paralegal rates.

8

an attorney, it is not compensated. *See Gibson*, 873 F. Supp. 2d at 988. Courts do not consider whether the time expended on paralegal and clerical work materially affects the overall requested fee amount, as Cloutier suggests in his reply brief; rather, courts assess whether the work is sufficiently complex to be compensable. *See People Who Care*, 90 F.3d at 1315.

Additionally, Cloutier argues that time spent organizing and preparing documents required an understanding of the legal issues of the case and, therefore, constituted non-clerical work. But those billing entries are too vague and poorly documented for the Court to assess the work's complexity. *Montanez*, 755 F.3d at 556 (courts may reject time that is "vague or poorly documented"). For example, in his fee motion Cloutier highlights a paralegal's billing entry dated October 17, 2016, which states that the paralegal made telephone calls with attorneys, reviewed a motion to compel, uploaded documents for production, and read an e-mail from an attorney. Pl.'s Mem. in Supp. of Fee Mot., dkt. no. 207-7 at 21; *see also* Spreadsheet of Attorneys' Time, Ex. A, Tab 1 to Pl.'s Reply in Supp. of Fee Mot. (Spreadsheet of Attorneys' Time), dkt. no. 220-2 at 8 l. 151. Without more detail, this entry is too vague to permit a finding that any of this work required paralegal skills. Similarly, a July 16, 2018 billing entry by a paralegal stating only that the paralegal "[a]ssisted in [the] preparation of documents" is too vague for the Court to find that the paralegal analyzed documents to prepare exhibits for a pre-trial order, as Cloutier suggests in his fee motion. Pl.'s Mem. in Supp. of Fee Mot., dkt. no 207-7 at 21; Spreadsheet of Attorneys' Time, dkt. no 220-2 at 42 l. 875. The Court finds that those vague entries, and others like them, do not warrant compensation at attorneys' or paralegals' rates.

The Court disallows Cloutier's requested fees for 18.1 hours spent organizing files, setting up video conference systems, or copying, formatting, processing, or preparing documents. *Spegon*, 175 F.3d at 553 (disallowing time spent organizing file folders and preparing and copying documents). The Court also applies a paralegal rate to 9.2 hours spent by attorneys on paralegal tasks such as updating the docket or formatting exhibits for depositions.[4] Accordingly, the Court finds that the lodestar award should be reduced by $6,736.66.

### c. Fee petition

GoJet next objects to approximately 12.2 hours that Cloutier's attorneys spent on work relating to the fee petition as excessive because, according to GoJet, preparing billing entries for a fee petition simply entails running a report.[5] In response, Cloutier first argues that his attorneys needed to dedicate this time to preparing the fee petition because Local Rule 54.3 requires an interactive process. Local Rule 54.3 requires the parties litigating a fee petition to confer and requires the movant to provide the respondent with time and work records, hourly rates for timekeepers, and evidence of expenses. Indeed, many of the entries to which GoJet objects involve conferences and meetings about the fee petition. The Court finds it could be reasonable for attorneys

---

[4] Although several other time entries also entail paralegal- or clerical-type work, the Court will not address those entries because GoJet did not object to them. *Cf. Montanez*, 755 F.3d at 555 ("A district court may strike billing entries so long as the party requesting fees has an opportunity to respond to any objections.").

[5] Although GoJet did not address this issue in its brief, throughout this opinion, the Court considers arguments and objections provided by the parties on the spreadsheet of bills they created, in addition to the arguments raised in their briefs. *See id.* (line-by-line objections on a billing spreadsheet can be "more practical and economical than a long memorandum detailing each objections").

10

who litigate a fee petition to confer about the petition.

Cloutier then argues that his attorneys spent a reasonable amount of time on the fee petition. A party may collect a reasonable fee for the time spent preparing and litigating a fee petition. *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir.2001). In determining whether attorneys' time on work related to a fee petition is reasonable, a court should determine "whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits." *Id.* (internal quotations omitted); *see also Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (finding it unreasonable for attorneys to spend nearly 25% of their litigation time on the fee petition).

In this case, Cloutier's attorneys spent 47.5 hours on work related to the fee petition, and 1,116.2 hours litigating the entire case; that is, they spent 4.3% of their time working on the fee petition.[6] The Court has reviewed each of those entries and finds that the attorneys expended an excessive number of hours on the fee petition. Although it was appropriate for Cloutier's attorneys to confer about the fee petition, it was unreasonable for them to spend over 14 hours discussing it. Therefore, the Court reduces the time spent on fee petitions by one-third, which reduces the lodestar award for this time by $1,255.

### d. Post-trial motions

GoJet also objects to 22.7 hours that Cloutier's counsel spent on post-judgment motions. As indicated above, both parties filed post-trial motions, and the Court denied

---

[6] In his reply brief, Cloutier states that his attorneys spent only 0.43% of their time on the fee petition. That calculation is incorrect.

those motions. Cloutier has waived the fees relating to the post-trial motions that he filed and requests fees only for work relating to his defense against GoJet's post-trial motions. GoJet argues that Cloutier is not entitled to fees for defending against its motions because Cloutier was not the prevailing party with respect to those motions. Cloutier argues that, because the Court denied GoJet's motions, he prevailed.

A party may appropriately seek attorneys' fees for post-trial motions that it successfully opposed. *See, e.g.*, *Johnson v. G.D.F., Inc.*, No. 07 C 3996, 2014 WL 463676, at *6 (N.D. Ill. Feb. 5, 2014) (awarding fees for time spent responding to a motion for judgment as a matter of law). Having reviewed the relevant billing entries, the Court concludes that Cloutier's time spent defending against GoJet's post-trial motions should be allowed in full.

    e.  **Change in counsel**

GoJet objects to time that it contends is duplicative of time billed by Cloutier's prior counsel. Cloutier waived 11.4 of the at-issue hours and contends that the work on the remaining 20.1 hours was necessary because the prior counsel had not performed the work claimed in that time. When a party switches attorneys, it is "virtually certain" that the new attorney will require some time "to get up to the speed" that the prior attorney "already would have had if he had continued with the case." *Urnikis-Negro v. Am. Family Prop. Servs., Inc.*, No. 06 C 6014, 2009 WL 212122, at *3 (N.D. Ill. Jan. 26, 2009). The Court may use its discretion to reduce that duplicative time. *Id.*

After reviewing each relevant billing entry, the Court finds that work by a paralegal in September 23, 2016 is allowable because it involved tasks that the prior counsel did not complete, such as work on discovery responses. Spreadsheet of

Attorneys' Time, dkt. no. 220-2 at 4 l. 81.  The Court, however, disallows 16.3 attorney hours as duplicative of the work done by Cloutier's counsel.  These entries describe attorneys researching, reviewing, and summarizing Cloutier's case file.  Because this work would have been unnecessary but for the change of counsel, the Court reduces the award by $6,520.

### g.  Vague billing entries

GoJet also objects to Cloutier's attorneys' descriptions for 9.5 hours as overly vague.  "[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage."  *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000).

In its reply brief, Cloutier argues that these entries are largely for short intervals of time—6 to 12 minutes—and that writing descriptive billing entries could as much as double the amount of time spent on those entries.  That argument is baseless.  Many of the vague entries contain no subject matter at all; for instance, they state only that an attorney wrote an e-mail, "[d]rafted thoughts," or participated in a phone conference.  Spreadsheet of Attorneys' Time, dkt. no. 220-2 at 33 l. 661.  It takes only a moment for an attorney to jot down a task's subject matter.  Without more information, it is impossible for the Court to know whether attorneys expended this time reasonably. *Montanez*, 755 F.3d at 555 (affirming a district court's decision to reject "time billed for vaguely described phone calls; hours billed as 'call to client,' without more, were disallowed").

Additionally, Cloutier argues that attorneys recorded vague entries in order to

avoid disclosing information covered by privilege. Again, that is no excuse for failing to provide any information at all about the subject matter of a billing entry. Cloutier's attorneys could provide generalized descriptions about the subject matter of an e-mail or conference without disclosing privileged information.

The Court concludes that the time billed for the vague entries should be reduced by two-thirds. After accounting for Smith's adjusted hourly rate, the Court deducts $3,210 from the lodestar amount.

### h. Other excessive time

GoJet objects to an additional 95.4 hours as excessive, including time spent on depositions, discovery, and the review of notices from the Court. Cloutier argues that this time was necessary for his attorneys to litigate effectively.

Courts should exclude fees for attorney time that is excessive. *Hensley*, 461 U.S. at 434. Although this is "a factual determination that depends heavily on the district court's greater familiarity with the case," a court "cannot simply eyeball the fee request and cut it down by an arbitrary percentage because it seemed excessive to the court." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (internal quotations omitted).

After reviewing each of the at-issue entries, the Court excludes as excessive 3 hours Smith spent reviewing various notices from the Court. The Court also excludes 1.5 hours charged by Maduff for a mediation preparation meeting because an associate attending the same meeting did not bill the same time as Maduff. *Compare* Spreadsheet of Attorneys' Time, dkt. no. 220-2 at 4 l. 398 *with id.* at 5 l. 399. In addition, Cloutier incorrectly attributes Smith's time for participation in the jury trial to

14

Maduff, so the Court adjusts the rate for that billing entry based on Smith's rate. *Id.* at 52 l. 1068. The Court concludes that the other challenged entries are not excessive. After adjusting for Smith's billing rates, the Court reduces the award by $3,037.50.

In sum, for the reasons stated above, the Court concludes that a total of $49,742.76 should be deducted from Cloutier's requested fee.

**B.      Adjustments to the lodestar amount**

As indicated above, after calculating the lodestar amount, a court may adjust the fee award "upward or downward" to reflect considerations such as "the degree of success" obtained by the prevailing party. *Hensley*, 461 U.S. at 434. In doing so, a court must consider (1) whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded" and (2) whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* at 434.

With respect to the first consideration, GoJet argues that the hours Cloutier billed for work on his unsuccessful claims—namely, his unsuccessful ADA and ADEA claims—should be excluded from the fee award. In lawsuits where a plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories," a court may exclude the hours expended on the unsuccessful claims. *Id.* GoJet argues, citing *Sommerfield*, 863 F.3d 645, that Cloutier's ADA and ADEA claims involved facts unrelated to his FMLA claims. In *Sommerfield*, a police officer alleged discrimination in the form of verbal abuse and claimed that he experienced retaliation in the form of undesirable assignments and suspensions for complaining about that abuse. *Id.* at 652. GoJet characterizes the Seventh Circuit as finding in *Sommerfield* that the

15

plaintiff's successful discrimination claims were unrelated to his unsuccessful retaliation claims. But the Seventh Circuit did not reach such a definitive conclusion; the court stated that a connection between the facts underlying the retaliation and discrimination claims was "questionable, at best" and indicated that a reduction to the lodestar could be made regardless. *Id.*

Unlike the plaintiff in *Sommerfield*, Cloutier's claims clearly involved a core set of interrelated facts: GoJet's handling of his leave and his eventual termination soon after his diagnosis with diabetes. The ADEA claim related to Cloutier's age, as GoJet argues, but it nonetheless involved allegations arising from GoJet's treatment of Cloutier after his diagnosis of diabetes—facts related to his other claims. Similarly, the alleged disability in the ADA claim related to his diabetes. Nor is Cloutier's case analogous to cases involving facts that are "sequential" or "causally related," and thus "not related for purposes of *Hensley*." *Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir. 1987) (false arrest and excessive force claims were unrelated where the claims were sequentially connected because the plaintiff "wouldn't have been beaten if he hadn't been arrested" but did not depend on the same facts). Because Cloutier's successful and unsuccessful claims are based on related facts, the Court does not exclude the hours expended on his unsuccessful claims.[7]

With respect to the second consideration from *Hensley*, however, the Court finds that Cloutier's fee award should be reduced to reflect the degree of his success at trial. "A plaintiff who achieves 'excellent results' should receive the entire lodestar, but where

---

[7] Consequently, the Court need not address the parties' arguments regarding whether a court may exclude time spent on unsuccessful claims and then further reduce the lodestar amount due to the plaintiff's limited success at trial.

16

'a plaintiff has achieved only partial or limited success,' the lodestar 'may be an excessive amount.'" *Montanez*, 755 F.3d at 556 (quoting *Hensley*, 461 U.S. at 435–36). In *Montanez*, the Seventh Circuit approved of a district court's decision to reduce a lodestar by half where the plaintiff failed to prevail on 4 of his 6 claims, which foreclosed all damages against one defendant and punitive damages against another defendant. *Id.*

In his complaint, Cloutier sought relief based on 13 claims. By trial, the issues had been narrowed to 4 claims; he prevailed on both FLMA claims and failed to prevail on both ADA claims. His failure to prevail on the ADA claims foreclosed additional compensatory damages (and indeed, he asked the jury to award such damages at trial). The jury's finding of good faith on his retaliation claim foreclosed liquidated damages on that claim, as indicated above. Like the plaintiff in *Montanez*, Cloutier "did *not* get all that he asked for," and therefore a reduction of the full lodestar amount is appropriate. *Id.*; *see also Spegon*, 175 F.3d at 558 (affirming a reduction of a lodestar where the damages the plaintiff received were less than the amount of recovery he sought). In this case, the Court developed a great deal of familiarity with the claims and evidence based on the parties' summary judgment briefings, the jury and bench trial, and the parties' post-trial motions. The Court applies its "broad discretion," *id.*, and finds that a one-sixth reduction of the otherwise compensable time is appropriate to reflect the degree of Cloutier's success at trial. This is admittedly an estimate, but the Court believes that it represents a reasonable estimate given the foreclosure of additional compensatory and liquidated damages.

**Conclusion**

For the foregoing reasons, the Court grants Cloutier's petition for attorneys' fees [dkt. no. 207] to the extent set forth in this opinion. The Court awards Cloutier a total of $313,557.88, which comprises $311,791.92 in fees and $1,765.96 in costs.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 17, 2019